# EXHIBIT A

# EXHIBIT A-1

9/8/2020 4:41 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 46053452
By: Cecilia Thayer
Filed: 9/8/2020 4:41 PM

# 2020-54452 / Court: 215

| | | |
|---|---|---|
| **GARRY DILLARD,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **INTERCONTINENTAL TERMINALS** | § | **HARRIS COUNTY, TEXAS** |
| **COMPANY, LLC; INTERCONTINENTAL** | § | |
| **TERMINALS MANAGEMENT** | § | |
| **COMPANY INC.; and CIMA SERVICES,** | § | |
| **LP.,** | § | |
| *Defendants.* | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION, JURY DEMAND, AND REQUESTS FOR DISCLOSURE

NOW COMES Plaintiff, GARRY DILLARD, filing this Original Petition, Jury Demand and Requests for Disclosure against Defendants, INTERCONTINENTAL TERMINALS COMPANY, LLC ("ITC"); INTERCONTINENTAL TERMINALS MANAGEMENT COMPANY ("ITC MANAGEMENT") and CIMA SERVICES, LP ("CIMA"), and respectfully shows the Court as follows:

### I.      Discovery Control Plan

1.      Plaintiff intends to conduct discovery in this case under Level III pursuant to Rule 190.4 of the Texas Rules of Civil Procedure.

### II.      Parties

2.      Plaintiff, GARRY DILLARD, is an individual who resides in Galveston County, Texas.

3.      Defendant, INTERCONTINENTAL TERMINALS COMPANY, LLC is a corporation formed under Delaware law with its principal place of business in Harris County, Texas, and is thus subject to jurisdiction in Texas. ITC operates a facility in Harris County, Texas in or around the City of Deer Park, Texas, along the Houston Ship Channel (the "ITC Facility"). According to Texas Secretary of State records, ITC maintains its corporate office at 1021 Main

Street, Suite 1150, Houston, Texas 77002-6508. ITC may be served with process through its

registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

4.      Defendant, ITC MANAGEMENT is a Texas corporation doing business in Texas and

may be served with process by and through its registered agent for service of process, Mr. Norman T.

Reynolds, who offices at 800 Bering Drive, Suite 201, Houston, Texas 77057.

5.      CIMA SERVICES, LP (hereinafter "CIMA") is a limited partnership engaged in

business in the State of Texas, with its principal place of business at 790 W. Sam Houston Parkway

North, Suite 202, Houston, Texas 77024. Consequently, it is a Texas citizen for both diversity and

removal jurisdiction purposes. It may be served through its registered agent, Loren R. Cook &

Associates Ltd., LLP, 790 W. Sam Houston Pkwy. N, Suite 202, Houston, Texas 77024. The

general partner of CIMA is CIMA Services Management, Inc., a Texas corporation with its

principal place of business in Houston, Texas. CIMA Services Management, Inc.'s registered

agent for service is also Loren R. Cook & Associates Ltd., LLP, 790 W. Sam Houston Pkwy. N,

Suite 202, Houston, Texas 77024.

### III. Venue and Jurisdiction

6.      Plaintiff seeks monetary relief within the jurisdictional limits of this Court, and this

Court has subject matter jurisdiction of this case. Plaintiff seeks exemplary damages over

$1,000,000.

7.      The Court has jurisdiction over ITC. Plaintiff has suffered personal injuries as a result

of an explosion at the ITC Facility, which is located in Harris County, squarely conferring specific

jurisdiction in this case. Furthermore, because ITC's corporate headquarters and principal place of

business is in Harris County, Texas, and because ITC has purposely availed itself of the privilege of

conducting business and activities within Harris County and the State of Texas in a

continuous and systematic way, and was continuing to do so at the time of the incident that forms the basis of this lawsuit, there is also general jurisdiction over ITC in Harris County.

8.      The Court has specific and general personal jurisdiction over Defendant ITC MANAGEMENT. As explained below, ITC MANAGEMENT committed acts and omissions constituting negligence under Texas law, and that negligence proximately caused Plaintiff to suffer damages. *See* TEX. CIV. PRAC. & REM. CODE § 17.042(2). This confers specific jurisdiction over CIMA in this case. In addition, ITC MANAGEMENT's principal place of business is in Harris County, and ITC MANAGEMENT was doing continuous and systematic business in Harris County, Texas. This confers general jurisdiction over ITC MANAGMENT in this case, in addition to specific jurisdiction.

9.      The Court has specific and general personal jurisdiction over Defendant CIMA. As explained below, CIMA committed acts and omissions constituting negligence under Texas law, and that negligence proximately caused Plaintiff to suffer damages. *See* TEX. CIV. PRAC. & REM. CODE § 17.042(2). This confers specific jurisdiction over CIMA in this case. In addition, CIMA's principal place of business is in Harris County, and CIMA was doing continuous and systematic business in Harris County, Texas. This confers general jurisdiction over CIMA in this case, in addition to specific jurisdiction.

10.     Venue is proper in Harris County, Texas, pursuant to TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1), because it is the county where all or a substantial part of the events or omissions giving rise to the claim occurred. Venue is also proper as to Plaintiff and Defendants under TEX. CIV. PRAC. & REM. CODE § 15.005.

## IV. <u>Facts</u>

11.     The ITC Facility is a petrochemical terminal located on the Houston Ship Channel, covering approximately 265 acres as of Sunday, March 17, 2019. The Facility received products

by various forms of transportation, including ship, barge, pipeline, rail and truck, and stored them in large, above-ground tanks. The ITC Facility contained 242 of these tanks with a total storage capacity of 13 million barrels.

12.     On March 17, 2019, a chemical fire started at the ITC Facility, ultimately resulting in a significant explosion. There were extensive investigations into the cause and spread of the fire and explosion, and Plaintiff has attached three of these investigations as exhibits to this petition.[1][2][3]

13.     Based on these reports, Tank 80-8 at the ITC Facility was an 80,000 barrel, above-ground storage tank in the middle of the tank farm. Tank 80-8 was used to store a flammable fuel product called Naptha, and to blend Naptha with butane in order to increase the octane level of the fuel product. This was done by injecting butane into a tank containing Naptha. The ITC Facility had a fixed butane injection system that originated at the truck loading rack, located southwest of the tank farm, and terminated at an injection point in the circulation line (called a "piping manifold") at Tank 80-8. The control system was designed so that the butane injection operation could not be started unless the Tank 80-8 pump was turned on. This ensured that product was circulating during the blending process. Once the pump was on, an ITC operator could open an actuator valve by pressing the ON button at the truck loading rack, which would allow the butane injection process to begin. The butane would be unloaded from the cargo tank truck and would travel through 4-inch piping, which reduced to 2-inch piping, and into the product circulation line, where it was blended with the Naptha in the storage tank. The tank pump would remain on throughout the unloading activity and would remain on for several hours afterward in order to facilitate the blending of Naphtha and butane.

---

[1] Exhibit 1 Harris County Fire Marshall's Report
[2] Exhibit 2 United States Chemical Safety and Hazard Investigation Board
[3] Exhibit 3 United States Occupational Safety and Health Administration Citations and Notifications of Penalties.

14.     The butane injection system at the ITC Facility was installed in August 2014. Subsequently, ITC wanted to reduce the time required to offload butane from delivery trucks. In or around January 2016, ITC hired CIMA to upgrade the butane injection system. CIMA demolished the existing 2" butane piping feeding into Tank 80-8 and replaced it with up to 350 feet of new 4" piping. Rather than using all new piping for the job, however, CIMA utilized a section of the old Aniline wash line from Tank 80-8. This old line was inadequate to safely serve as a butane injection line, as it was below the minimum required thickness needed to inject and mix butane with Naphtha.

15.     Additionally, as part of its work, CIMA was responsible for obtaining all required work permits and for inspection and testing of the newly installed butane injection line. This included requirements that CIMA: (1) have piping welds 10% x-rayed, (2) perform a 150 lb. air pressure test, and (3) inspect and test Tank 80-8's cargo pump discharge circulation piping and injection point process piping. CIMA failed to adequately conduct these inspections and tests.

16.     On the evening of Saturday, March 16, 2019 -- the day before the incident upon which Plaintiff bases this claim -- two loads of butane were delivered and injected into Tank 808. The first truck began unloading at approximately 7:23 P.M. It was completed unloading by circa 8:15 P.M., adding approximately 170 barrels of butane to Tank 80-8. The second truck unloaded approximately 193 barrels of butane between 9:29 P.M. and 10:29 P.M. After both trucks were unloaded, the pump on Tank 80-8 remained on in order to continue the blending process. ITC expected a ship to arrive the following day and planned to transfer all contents of Tank 80-8 to the ship.

17.     On the morning of Sunday, March 17, 2019, data from the control room at the ITC Facility show that approximately 9000 gallons (220 barrels) of butane-enriched Naptha was released for approximately 26 minutes before the fire started. Subsequent to the release, there was

a mechanical failure. A fire started at the power frame of the manifold of Tank 80-8, somewhere between the electric motor and the impeller of the pump. According to an eyewitness, there were flames shooting straight up from the manifold of Tank 80-8, and fire coming from the butane injection piping, engulfing the injection lines and the manifold in flames.

18.     Of grave consequence to the subsequent spread of the fire, there was no foam fire suppression system in place and no access to dry chemical fire suppression or foam. If there had been, these critical and fundamental safety systems could have quickly extinguished the blaze. Because there was no system in place to put out the fire quickly, it continued to burn and eventually spread to several adjacent tanks.

19.     Fueled by chemicals contained in multiple storage tanks that were already compromised by fire and smoke, the fire continued to spread. The result was a dark black cloud of smoke that engulfed the surrounding area for miles. As the fire burned, more tanks caught fire and approximately 11 tanks were burning and releasing toxic contaminants into the air throughout March 18 and 19. The additional burning tanks contained gasoline blend stocks and components, such as xylene, toluene and pyrolysis gasoline (which contains the carcinogen benzene), all toxic and hazardous chemicals. Fire and rescue workers battled the blaze around the clock for three days. The fire was extinguished on March 20, although there was a subsequent ignition thereafter.

20.     n the following days, March 21 and 22, 2019, public officials issued shelter-in-place bulletins for residents of Deer Park and La Porte, and local school districts were closed due to benzene emissions from the fire. Air quality tests revealed benzene and other volatile organic compound ("VOCs") readings in excess of the action levels set by the Occupational Safety and Health Administration ("OSHA"). Specifically, an air monitoring report revealed 51 benzene detections with an average concentration of 2.71 ppm, with a peak detection of 10.55 ppm near the intersection of Highway 225 and Independence Parkway on March 21, 2019.

21.     On March 22, 2019, two ITC tanks re-ignited and spewed forth yet another black plume of toxic chemicals. To further compound matters, a containment dike that had been established around the tanks collapsed. This dike failure led to substantial discharge of toxic industrial waste and firefighting foam into a nearby ditch. From there, this toxic chemical brew made its way into Tucker Bayou, and eventually the Houston Ship Channel. This discharge ignited and burned for an hour, releasing yet more black smoke and contaminants into the air.

22.     As a result of the above incident, Plaintiff has suffered significant exposure to toxic chemicals released in this series of fires. Plaintiff suffered injuries that required medical care and damages as a proximate result of the negligent actions and inactions of the Defendants.

23.     Even more troubling, ITC has a long history of state and federal environmental violations. According to the Texas Commission on Environmental Quality, ITC has been fined for multiple infractions that could have been avoided:

- In **2008,** ITC was fined when a relief valve failed, causing 6,745 pounds of unauthorized butadiene to be released into the atmosphere due to the facility's failure to prevent an increase in pressure. The Commission found that the event was "avoidable by better operational practices."

- In **2009,** ITC was fined for failing to "prevent the overloading of a railcar resulting in the unauthorized release of 1,452 pounds of toluene, a hazardous air pollutant, during a four-hour emissions event." This event was also found to be avoidable.

- Additionally, ITC has been the subject of repeated water violations. In **2017,** The Texas Commission on Environmental Quality fined ITC for releasing cyanide into the San Jacinto River basin in an amount more than ten times the permitted levels. In **2016,** ITC released more than three times the limit for sulfide, and in **2015** ITC was found over the limit for chlorine discharge. Since July 2017, ITC has also failed to file monitoring reports on its chemical services, as required by federal regulations.[4]

---

[4] See Exhibit 4 ITC Past TCEQ Violations.

24.     Since the fire and explosion that form the basis of this lawsuit, both Harris County and the State of Texas ("City and the State") have instituted suits against ITC. Their petitions have sought Temporary Restraining Orders and Temporary and Permanent Injunctions for, among other things, unauthorized outdoor burning and air emissions as well as the discharge or the causing of a discharge of industrial waste into the waters of the State.

25.     Specifically, the City and State alleged violations of the Texas Clean Air Act ("TCAA") whose purpose is to safeguard the State's air from pollution and the emission of harmful contaminants. Sections of the TCAA, which the City and State also alleged that ITC violated, prohibit any person or entity from discharging from any source whatsoever one or more contaminants in such concentrations and of such duration as are or may tend to be injurious to, or to adversely affect the human health or wealth, animal life, vegetation or property.

26.     The City and the State also alleged that ITC violated sections of the Texas Water Code when it discharged or caused waste to be discharged into nearby water ways in close proximity to the ITC tank farm. Specifically, when the previously mentioned containment dike surrounding the ITC tanks breached, the discharge of firefighting foam and other industrial waste leaked into nearby ditches and eventually into Tucker Bayou. These contaminants were hazardous and harmful, as demonstrated, *inter alia*, by the fact that they caused the ditch to ignite and to burn.

27.     As a result of its investigation, OSHA issued four new citations to ITC, based on violations that it characterized as "serious." The first addressed ITC's failure to have fire-protection foam systems in place.[5] The remaining three addressed primarily deficiencies in the butane injection system, and included the following bases for the violations:

---

[5] Exhibit 3 at Page 6

On or about March 17, 2019, in the 2nd 80s tank farm, the employer failed to implement written procedures, including those outlined in the ITC Mechanical Integrity Program, to maintain the ongoing fitness for service of Tank 80-8 injection/recirculation piping and components. This condition exposes employees to fire hazards.

* * *

On or about March 17, 2019, and times prior thereto, at the Intercontinental Terminals Company facility located in La Porte, Texas, the employer failed to perform inspections and test in accordance with Recognized and Generally Accepted Good Engineering Practices (RAGAGEP), such as but not limited to API 570 "Piping Inspection Code" [a]nd API RP 574 "Inspection Practices for Piping System Components". The employer failed to perform inspection and tests on Tank 80-8 cargo pump discharge circulation piping and injection point process piping.

* * *

On or about March 17, 2019, at the Intercontinental Terminals Company facility located in La Porte, Texas, the employer failed to correct deficiencies on process equipment, when process piping that was below its minimum required thickness was used to inject and mix Butane with Naphtha in order to raise the octane levels in Tank 80-8.[6]

28.     ITC has conceded that over just the first 24-hour period following initiation of the fire, the fire emitted approximately 6,287,543 pounds of carbon monoxide; 957,116 pounds of naphtha (a flammable liquid hydrocarbon mixture); 889,906 pounds of gasoline blend stock; 460,243 pounds of lube oil; 111,758 pounds of toluene (a water-insoluble liquid predominantly used as an industrial feedstock); 73,824 pounds of nitrogen dioxide; and 3,314 pounds of sulfur dioxide. Moreover, at least ten 80,000-barrel tanks containing different petrochemicals burned, and there were weeks of elevated benzene levels, resulting in closures to schools, businesses, and infrastructure.

Upon information and belief, ITC Management participated in the development of ITC's operating procedures leading up to the subject incident, its plans for preventing accidental releases, and the training of ITC employees that resulted in the conduct complained of in this case. The President of ITC Management

---

[6] Exhibit 3 at Pages 7, 8, and 9.

is Stephen Miles, who is also the former president of ITC. According to a letter written in November 2006 by counsel for ITC Management, ITC Management is "a management company that contracts management and consulting services to . . . ITC. . . that operates a bulk chemical liquid storage facility at Deer Park, Texas." [7] Additionally, ITC Management's Texas Commission on Environmental Quality (TCEQ) filing, states that, beginning on December 17, 2017, ITC Management is an "owner operator" of an "Intercontinental Terminals Terminal," another "bulk liquid storage terminal").[8]

According to its Articles of Incorporation, ITC Management was formed "[t]o engage in the business of leasing as Lessee, and operating, a storage terminal in Harris County, Texas and any facilities used or useful in connection therewith or related thereto and in the business of loading, unloading, packaging and storing liquids and gases at such terminal of facilities.").[9]

According to affidavits filed in 2008 and 2009 on behalf of both a plaintiff and co-defendant in another litigation matter involving ITC Management:[10]

> 3.     Intercontinental Terminals Management Co. operates the facility and land owned by Mitsui as described above for hire bulk liquid storage facility that stores a variety of chemicals and petro chemicals.  Defendant, Intercontinental Terminals Management Co. is an agent of Mitsui & Co. (U.S.A.), Inc. wherein they provided for Mitsui among other things a systematic, proactive approach to prevention of accidental releases of hazardous chemicals.  Their system includes but is not limited to the following:
>
> a.     A process hazard analysis;
> b.     Operating procedure;
> c.     Training;
> d.     Management of Claim;
> e.     Prestart up review;
> f.     Compliance audit; and
> g.     Accident investigation.

Moreover, a 2006 TCEQ compliance history report lists ITC Management as an owner of the ITC Facility:[11]

---

[7] Exhibit 5 ITC Management's Representation of Responsibilities
[8] Exhibit 6 ITC management TCEQ affiliation Filing
[9] Exhibit 7 ITC Management Articles of Incorporation
[10] Exhibit 8-10 Affidavits form Salas, Edmonson, and Schriber.
[11] Exhibit 4, at page 8,

Site Compliance History Components

| | |
|---|---|
| 1. Has the site been in existence and/or operation for the full five year compliance period? | Yes |
| 2. Has there been a (known) change in ownership of the site during the compliance period? | Yes |
| 3. If Yes, who is the current owner? | Mitsui & Co USA Inc. |
| | Intercontinental Terminals Management C |
| | Intercontinental Terminals Company |

To date, ITC Management remains an active entity conducting business in the state of Texas.[12] According to public filings Stephen Miles is the President of ITC Management.[13] Additional public filings evidence Mr. Miles is also the President of the entity Intercontinental Bulk Systems, Inc.[14] Intercontinental Bulk Systems, Inc. is wholly owned by ITC Management.[15] Mr. Miles states on his LinkedIn professional page that, as the President of Intercontinental Bulk Systems, he currently researches and develops tank terminal infrastructure and manages existing commercial properties.[16]

29.     Thousands of southeast Texas residents, including Plaintiff, were caught completely by surprise and were essentially rendered helpless to the dangers of the toxic smoke and chemicals that were released as a result of the ITC fire and explosion. Help from city officials and first responders was limited to school closings and shelter-in-place mandates, primarily due to the nature of the dangerous event – the release of toxic and dangerous material into the air and the ground water.

30.     Based on the damages Plaintiff has suffered, she seeks legal redress in this Court of law.

## V.     Causes of Action

31.     Plaintiff incorporates by reference all preceding paragraphs as if fully stated herein and further states as follows:

---

[12] Exhibit 11, 2018 ITC Management Public Information Report.
[13] Id.
[14] Exhibit 12 Intercontinental Bulk Systems, Inc. Public Information Report
[15] Id.
[16] Exhibit 13 Stephen Miles LinkedIn Bio.

## A.   ITC and ITC MANAGEMENT

32.    As discussed above, ITC and ITC MANAGEMENT committed acts of omission and commission, which collectively and separately constitute negligence and gross negligence. Defendants had a duty to exercise ordinary care, meaning that degree of care that would be used by any company of ordinary prudence under the same or similar circumstances, and Defendants breached that duty, including but not limited to one or more of the following ways:

a.    Defendants failed to maintain equipment, including the Tank 80-8 manifold and seals;

b.    Defendants failed to have in place a fixed foam fire suppression system for fire prevention, control or direct extinguishment of any flammable or combustible liquid fire within their tanks;

c.    Defendants failed to ensure that foam generating equipment, including the foam concentrate tank and pump were constructed to resist fire and heat, and/or failed to locate the equipment in an area that would be protected from exposure to fire;

d.    Defendants failed to have access to dry chemical and/or foam fire suppression materials to extinguish the fire after it started;

e.    Defendants failed to adequately train workers regarding the hazards of injecting butane into tank manifolds;

f.    Defendants failed to implement written procedures to maintain the ongoing fitness for service of Tank 80-8 injection/circulation piping components;

g.    Defendants failed to use ordinary care in developing and implementing a safety and fire prevention program;

h.    Defendants failed to supervise and train workers to ensure that any safety guidelines in place would be enforced to protect against leaks when injecting butane into tank manifolds;

i.    Defendants caused and permitted the release of volatile organic compounds and chemicals resulting in a continuous toxic cloud over La Porte, Deer Park and other parts of Harris County, Texas;

j.    Defendants failed to use ordinary care in monitoring the release of air contaminants and providing adequate warnings to the community of the release of volatile organic compounds and chemicals, including benzene;

k.     Defendants failed to perform inspections and tests on the Tank 80-8 cargo pump discharge circulation piping and injection point process piping;

l.     Defendants used process piping on Tank 80-8 that was below the minimum required thickness to support safe injection and mixing of butane with Naptha; and

m.     Defendants failed to properly disclose and to warn the public in general and specifically, Plaintiff, of the high levels of dangerous chemicals and carcinogens being released into the atmosphere as a result of the burning tanks at the ITC facility.

33.     Defendants' breaches were a direct and proximate cause of the occurrence in question and the injuries and damages sustained by the Plaintiff herein.

34.     Defendants unconscionably and wantonly neglected to take the actions reasonably required to correct its past mistakes and omissions and unconscionably and wantonly neglected to reasonably protect the citizens of Harris County, Texas and surrounding communities (including, but not limited to Deer Park, Pasadena, Sheldon, Channelview, Galena Park and Jacinto City) from the unreasonably dangerous condition it created. The acts or omissions of Defendants involved an extreme degree of risk of which they had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.

35.     ITC Management had a duty to exercise ordinary care, meaning the degree of care that would be used by any chemical company of ordinary prudence under the same or similar circumstances. ITC Management breached that duty, including but not limited to, in one of the following ways:

a. Failing to develop a reasonable and prudent plan for preventing the accidental release of chemicals;

b. Failing to implement, follow and enforce proper operational and safety procedures;

c. Failing to develop and implement a proper hazard analysis; and

d. Failing to properly train ITC's staff to avoid the failures listed above.

-13-

36.     Despite the fact that Defendants have a long history of incidents involving the release of toxic chemicals, as well as citations and fines by regulatory agencies, they continued to operate the subject tank farm in a haphazard, intentional and dangerous fashion. To that end, Defendants committed acts of omission and commission, which collectively and severally, constituted malice under Chapter 41 of the Texas Civil Practices & Remedies Code, and proximately caused the incident that forms the basis of this lawsuit. Plaintiff seeks exemplary damages as allowed by law in an amount to be determined at trial. These acts of malice involved an extreme degree of risk considering the probability and magnitude of harm to others; and of which Defendants had actual, subjective awareness of such risks involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.

**B. CIMA**

37.     The acts and omissions of Defendant CIMA constitute negligence and gross negligence which, separately and collectively with the acts and omissions of ITC and ITC Management, were proximate cause of the incident that forms the basis of this lawsuit. These acts and omissions were also a proximate cause of the injuries and damages suffered and sustained by Plaintiff. The negligent acts and omissions of Defendant CIMA include the following:

   a.     CIMA failed to install piping of adequate quality and thickness to safely inject and mix butane with naphtha within the Tank 80-8 manifold and seals; and

   b.     CIMA failed to adequately inspect and test the piping installed on Tank 808 to ensure that it was properly installed and safe for its intended use.

40.     As evidenced below, CIMA was contracted for the mobilization and demobilization of personnel and equipment:

CIMA Services, L.P. (CIMA) is pleased to present the following pricing for the demolition of a 2" butane line along with installation of a new 4" replacement line. Our scope of work includes mobilization and demobilization of personnel and equipment to the job site to perform the work. CIMA personnel will obtain work permits and perform tailgate safety meetings daily prior to starting any work.

CIMA will install up to 350 linear feet of new 4" carbon steel piping at the locations and routes observed at the site visit (80's Truck Rack and Tank 80-8 Manifold). The new 4" piping will tie into the existing 2" pipes using 4x2 welded reducers. The new piping will run on the existing sleeper racks at the tank and the existing overhead rack at the truck dock. Pricing is based on performing all elevated work using a man lift and scaffolding. Once new piping is in place, CIMA will require a one day shutdown to perform the tie-ins. Pricing is based on piping welds being 10% x-rayed and a 150# air pressure test being performed for the new line. Our pricing includes all materials and labor for painting of the piping and scaffolding for installation.

17

Each of the foregoing acts and omissions, among others, when taken separately or together, constitute negligence. Such acts were a direct and proximate cause of the injuries and damages sustained by Plaintiff.

38.    The acts or omissions of Defendant CIMA involved an extreme degree of risk of which it had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.

39.    The forgoing actions and inactions of Defendant CIMA, and/or its respective employees or agents, whether taken separately or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct or malice resulting in the damages sustained by Plaintiff. These acts or omissions satisfy both the objective and subjective elements of gross negligence which is governed by TEX. CIV. PRAC & REM. CODE § 41.001(11), 41.003(a). Indeed, Defendant CIMA had actual awareness of the extreme degree of risk associated with the release of toxic chemicals and fires, and nevertheless proceeded with conscious indifference to the rights, safety, and welfare of Plaintiff by failing to act to minimize or eliminate these risks. Therefore, Defendant CIMA is guilty of gross negligence for which it should be held liable in punitive and exemplary damages to Plaintiff.

---

[17] Exhibit 14 CIMA Butane Injection Line Replacement.

C.     **All Defendants - Negligence** *Per Se.*

40.     Defendants' conduct described herein constitutes an unexcused breach of duty imposed by law. Plaintiff is a member of the class that the law was designed to protect. Defendants' unexcused breach of the duty imposed by the law proximately caused Plaintiff's injuries and damages described herein.

## VI. <u>Damages</u>

41.     As a direct and proximate result of Defendants' negligence, Plaintiff suffered severe bodily injuries, and incurred the following damages:

   a.     Reasonable medical care and expenses in the past. These expenses were incurred by Plaintiff for the necessary care and treatment of the injuries resulting from the accident complained of herein and such charges are reasonable and were usual and customary charges for such services in Harris County, Texas;

   b.     Reasonable and necessary medical care and expenses which will in all reasonable probability be incurred in the future;

   c.     Physical pain and suffering in the past;

   d.     Physical pain and suffering in the future;

   e.     Physical impairment in the past;

   f.     Physical impairment which, in all reasonable probability, will be suffered in the future;

   g.     Loss of earning capacity which will, in all probability, be incurred in the future;

   h.     Disfigurement in the past;

   i.     Disfigurement in the future;

   j.     The cost of future medical monitoring;

   k.     Mental anguish in the past; and

   l.     Mental anguish in the future.

## VII. <u>Preserving Evidence</u>

42.     Plaintiff hereby requests and demands that Defendants preserve and maintain all evidence pertaining to any claim or defense related to the incidents made the basis of this lawsuit or the damages resulting therefrom, including statements, photographs, videotapes, audiotapes, surveillance or security tapes or information, business or medical records, incident reports, tenant files, periodic reports, financial statements, bills, telephone call slips or records, estimates, invoices, checks, measurements, correspondence, facsimiles, email, voicemail, text messages, any evidence involving the incident in question, and any electronic image or information related to the referenced incident or damages. Failure to maintain such items will constitute "spoliation" of the evidence.

## VIII. <u>Requests for Disclosure</u>

43.     Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendants are requested to disclose the information and material described in Rule 194.2 within fifty (50) days of the service of this request.

## IX.     <u>Prayer and Jury Demand</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that:

a.      Defendants be cited to appear and answer herein;

b.      Plaintiff be awarded damages from Defendants herein, jointly and severally;

c.      Plaintiff be awarded costs of suit;

d.      Pre-judgment and post-judgment interest on all applicable amounts be awarded to Plaintiff at the maximum non-usurious rate as allowed by law;

e.      Plaintiff be awarded exemplary damages; and

f.      Plaintiff be awarded such other and further relief, both at law and in equity, to which he may be justly entitled.

Respectfully submitted,

**FARRAR & BALL, LLP**


*/s/ William R. Ogden*
William R. Ogden
Texas Bar No. 24073531
1117 Herkimer Street
Houston, TX 77008
Telephone: 713.221.8300
Facsimile: 713.221.8301
Email: bill@fbtrial.com


*/s/ Chance A. McMillan*
Chance A. McMillan
Texas Bar No. 24078981
Federal Bar No. 1902653
McMillan Firm, P.L.C.
440 Louisiana, Ste. 1200
Houston, TX 77002-1691
Telephone: 281.888.2131
Facsimile: 832.831.2175
Email: cam@mcmillanfirm.com

**ATTORNEYS FOR PLAINTIFF**

2020-54452 / Court: 215 Dillard_Exhibit 1



# EXHIBIT A

# HCFMO FINAL REPORT

## Intercontinental Terminals Company Tank Farm Fire

1943 Independence Parkway
La Porte, TX 77571

Harris County Fire Marshal's Office
Case Number 1903-00046
Investigator Jim Hargraves, Jr.  95F33 – IAAI-FIT, ECT



Bureau of Alcohol, Tobacco, Firearms and Explosives
Case Number 782035-19-0029
Special Agent Eric Evers – IAAI-CFI

Unofficial Copy Office of Marilyn Burgess District Clerk



# HCFMO | FINAL REPORT

## Intercontinental Terminals Company
## Tank Farm Fire

1943 Independence Parkway
La Porte, TX 77571

Harris County Fire Marshal's Office
Case Number 1903-00046
Investigator Jim Hargraves, Jr.  95F33 – IAAI-FIT, ECT



Bureau of Alcohol, Tobacco, Firearms and Explosives
Case Number 782035-19-0029
Special Agent Eric Evers – IAAI-CFI

# TABLE OF CONTENTS

**Final Report** ................................................................ pg. 5-11
Lead Investigator J. Hargraves 95F33

**Initial Report** .............................................................. pg. 12-19
Original Investigator Response by D. Lee 95F24

**Supplement Reports and follow up investigations ... pg. 20-138**

**March 18, James Menger, et al** ............................... pg. 21-22

**March 19, Timothy Guidry** ...................................... pg. 23-24

**March 19, Jeremy Dickerson** ................................... pg. 25-26

**March 20, Rodney Reed, et al** ................................. pg. 27-28

**March 21, Chief Petrilla, et al** ................................ pg. 29-31

**March 20, Frank Weido, et al** .................................. pg. 32-33

**March 22, John Burdett** .......................................... pg. 34-35

**March 22, Subpoena service** ................................... pg. 36-37

**March 23, Cindy Williams** ....................................... pg. 38-39

**March 26, Russell Lewis** .......................................... pg. 40-41

**March 26, Cindy Williams** ....................................... pg. 42-43

**March 27, John Burditt, et al** .................................. pg. 44-50



# TABLE OF CONTENTS

March 27, Video of tank fire ........................................ pg. 51-52

March 28, Derek Walker, et al ..................................... pg. 53-59

March 26, Cindy Williams .......................................... pg. 60-61

March 28, Cindy Williams .......................................... pg. 62-63

March 29, Cindy Williams .......................................... pg. 64-65

March 29, Steve Mathias, et al ................................... pg. 66-71

March 30, Digital media ............................................ pg. 72-73

April 1, Aaron Baquet, et al ....................................... pg. 74-76

April 3, Carlton Homfeld, et al ................................... pg. 77-83

April 3, Carlton Homfeld ........................................... pg. 84-85

April 4, Tom Kajander ............................................... pg. 86-87

April 4, Michael Parker, et al .................................... pg. 88-91

April 2, Nelson Waggoner, et al ................................. pg. 92-94

April 4, David Wascome, et al .................................... pg. 95-96

April 5, Nathan Stone, et al ...................................... pg. 97-100

April 5, Maintenance Building Examination ........... pg. 101-102



# TABLE OF CONTENTS

April 7, Lt. Schoonover, Command Post ..................pg. 103-104

April 6, Michael Parker, digital media ...................pg. 105-106

April 9, Second 80s Tank Farm Examination ..........pg. 107-110

April 9, Second 80s Tank Farm Examination ..........pg. 111-113

April 9, Digital media from HCSO .........................pg. 114-115

April 10, Maintenance Building Examination ..........pg. 116-117

April 10, Maintenance Building Examination ..........pg. 118-119

April 10, Review of "ITC HCFM 613" ....................pg. 120-121

April 11, Michael Parker ....................................pg. 122-123

April 11, ITT PRO Facility...................................pg. 124-125

April 11, John Ball, et al....................................pg. 126-129

April 11, James Hickey ......................................pg. 130-132

May 14, Demolition fire at 80s tank farm...............pg. 133-134

September 10, Stress Engineering Services ............pg. 135-136

March 19, HCFMO Canine Report .........................pg. 137-138

ATF Origin and Cause Report ...............................pg. 139-202



# Final Report

HCFMO Lead Investigator
J. Hargraves 95F33

## CASE SUPPLEMENTAL REPORT

Printed: 11/20/2019 13:43

*Harris County Fire Marshal's Office*                                OCA: **190300046**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

**Case Status:** *ACTIVE*          **Case Mng Status:** *ACTIVE*          **Occurred:** *03/17/2019*

**Offense:** *FIRE (UNDETERMINED)*

**Investigator:** *HARGRAVES, J. (F09168)*          **Date / Time:** *11/18/2019 14:00:00, Monday*

**Supervisor:** *SINGLETON, J. (F09130)*          **Supervisor Review Date / Time:** *11/18/2019 17:12:34, Monday*

**Contact:**          **Reference:** *Follow-up*

Jim Hargraves, Jr. - 95F7
Lieutenant
Fire/Arson Investigations
Harris County Fire Marshal's Office
2318 Atascocita Road
Humble, TX 77396

Final Report - Intercontinental Terminals Company Tank Farm Fire

ABSTRACT:

An initial report was written and submitted by Investigator Dennis Lee (95F24), but due to the size and scope of the incident a report detailing what occurred after Sunday March 17, 2019 would need to be written by the Lead Investigator who was assigned to complete the investigation. That task fell to Investigator Jim Hargraves, Jr. (95F33) who with the assistance of Special Agent Eric Evers with the Bureau of Alcohol, Tobacco, Firearms, and Explosives conducted an investigation, determining the origin and cause of the fire. Investigator Hargraves was also assisted by Lieutenant Gustavo Lopez and Investigator John Ledford in conducting interviews of the employees of ITC. Through those interviews it was determined that the pump for Tank 80-8 had been replaced in December of 2018. Documents were requested through subpoenas and thorough the examination of those documents it was determined that a large leak occurred 30 minutes prior to the fire, thus releasing a large amount of product. Subsequent to the release there was a mechanical failure of equipment. The hypothesis at this point of the investigation was that the failure of equipment and the product release caused the fire that occurred on March 17, 2019. The hypothesis was confirmed once investigators were allowed to enter the "hot zone" on April 9, 2019. The manifold area of tank 80-8 was photographed in place and great care was taken to not disturb any of the components of the manifold, but to photograph them in place. This task took four insertions to the hot zone with Investigator Hargraves and Special Agent Evers conducting two insertions. The interviews that were conducted are in the interview section of this document and the Supplements that were written are in the Supplements tab of this document.

This report will detail those events. It should be noted that the Harris County Fire Marshal's Office and Bureau of Alcohol, Tobacco, Firearms and Explosives worked very closely in completing the work products needed to make this final report possible.

ASSIGNMENT:

On Sunday, March 17, 2019 at approximately 10:33 hours, a fire occurred at petrochemical facility commonly known as Intercontinental Terminals Company. The address provided is 1943 Independence Parkway, which is in La Porte, unincorporated Harris County, Texas. A secondary address for the facility is 2621 Tidal Road, which

Investigator Signature                                        Supervisor Signature

## CASE SUPPLEMENTAL REPORT

Printed: 11/20/2019 13:43

*Harris County Fire Marshal's Office*

OCA: **190300046**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE*          Case Mng Status: *ACTIVE*          Occurred: *03/17/2019*

Offense: *FIRE (UNDETERMINED)*

Investigator: *HARGRAVES, J. (F09168)*          Date / Time: *11/18/2019 14:00:00, Monday*

Supervisor: *SINGLETON, J. (F09130)*          Supervisor Review Date / Time: *11/18/2019 17:12:34, Monday*

Contact:          Reference: *Follow-up*

is in Deer Park, unincorporated Harris County, Texas. The chemicals involved along with the difficulty in extinguishing the fire prevented entry into the fire scene for approximately one week. Another obstacle to the investigation of the fire was the fact that the scene had to be deemed safe and that the chemicals involved had to be sufficiently remediated so that an investigation could occur.

On Wednesday, March 20, 2019 at approximately 03:03 hours, the fire was extinguished. This was done with the assistance of personnel from ITC, CIMA, and other industrial fire companies that had been requested to assist with firefighting operations. It should be noted that due to the volatile nature of the chemicals involved, entry into the tank farm was delayed until the area was deemed safe by safety officials.

The Houston Ship Channel is a large, commercial waterway used for interstate and international transportation of goods. The waterway is a vital artery for these goods, especially the oil and gas industry. Any interruption in transportation of goods could cause significant financial impact.

Special Agent Eric Evers with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) assisted the Harris County Fire Marshal's Office with the origin and cause investigation of the fire. Special Agent Evers authored the origin and cause section of this report with input from participating HCFMO Investigators.

SCENE DESCRIPTION:

The tank farm where the fire occurred is known throughout the company as the Second 80's. This is because the tanks located within the tank farm are 80,000 barrel tanks. They are approximately 120' tall and 40' in diameter. The tanks are of welded construction and have a wall thickness of approximately 1-1/2". The tank farm itself is approximately 328,000 square feet with piping and equipment throughout. The Second 80's contained 15 tanks in a 3 x 5 construction. Tank 80-8 the focus of this investigation was in the middle of the tank farm.

The Legal Description of the property is as follows: TRS 4F-2 & 4G-1 (IMPS ONLY) (LAND*0440990010032) (POLLUTION CONTROL) ABST 646 G ROSS. The complex is located within the Houston Ship Channel Industrial Complex and is located on Independence Parkway which runs in a north to south direction. Independence Parkway is a concrete two-way road surface in good condition.

The weather conditions for the day of the fire was reported at Ellington Field on March 17, 2019 at approximately 09:53 hours is as follows was that the air temperature was 55°F, the humidity was 38%, the winds were out of the East North East at 8 MPH, and the skies were mostly cloudy.

The weather conditions for the day that the fire was extinguished was reported at Ellington Field on March 20, 2019 at approximately 02:50 hours is as follows was that the air temperature was 52°F, the humidity was 82%, the winds were Calm at 0 MPH, and the skies were fair.

Investigator Signature                    Supervisor Signature

## CASE SUPPLEMENTAL REPORT

Printed: 11/20/2019  13:43

*Harris County Fire Marshal`s Office*　　　　　　　　　　　　　　OCA: *190300046*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

| | | |
|---|---|---|
| **Case Status:** *ACTIVE* | **Case Mng Status:** *ACTIVE* | **Occurred:** *03/17/2019* |
| **Offense:** *FIRE (UNDETERMINED)* | | |

**Investigator:** *HARGRAVES, J. (F09168)*　　　　　　**Date / Time:** *11/18/2019 14:00:00, Monday*

**Supervisor:** *SINGLETON, J. (F09130)*　　**Supervisor Review Date / Time:** *11/18/2019 17:12:34, Monday*

**Contact:**　　　　　　　　　　　　　　　　　　　　**Reference:** *Follow-up*

The weather conditions for the day of the examination was reported at Ellington Field on April 9, 2019 at approximately 09:50 hours, is as follows was that the air temperature was 75 °F, the humidity was 61%, the winds were out of the West at 9 MPH, and the skies were fair.

SCENE SAFETY / AIR MONITORING:

Proper personnel protective equipment was used by investigators during the fire scene examination including Class B HAZMAT suits, multi-gas detectors, Rubber boots and rubber gloves with nitrile inner gloves.

Air Quality readings were provided by on site monitoring and the Harris County Fire Marshal`s Office HAZMAT team. Constant monitoring of the scene was conducted and once it was determined that entry into the hot zone could be made, HAZMAT personnel were attached to the investigative team as well as third party air monitoring. Due to the chemicals present, it was determined that Class B HAZMAT suits along with canister type air filters with Full Face masks would be utilized while operating in the hot zone.

FIRE SUPPRESSION SYSTEMS/ALARMS:

Fire Sprinkler System - No automatic system present - The tank farm did have large diameter fire monitors present to provide firefighting capabilities. A low pressure malfunction with the fire pump prevented it from being utilized to assist in controlling the fire during the incipient stage.

Fire Alarm System - No automatic fire alarm system was present. Witnesses reported a radio system was used. Once the fire was observed, notifications for the fire team to respond were made and employees responded to their assigned stations. The tanks are monitored via SCADA in the Control Room, and have notifications programmed by the operators to alert if any abnormalities are detected.

ELECTRICAL AND NATURAL GAS DISTRIBUTION SYSTEMS:

Location of Power Meter - Power is supplied to the tank farm via a transformer bank located near the rail car and truck manifold. The power is supplied by a 7kV transformer and all wiring is run underground in conduit and all connections are made up in Class 1 vapor and dust explosion proof junction boxes. Circuit breakers are variable in nature and are rated at 1200 amps. The power supplied is three phase and is used to power large, high horsepower electrical motors used to drive the pumps located on the manifolds of the tanks.

Location of Gas Meter - The gas shut off for each tank is located at the tank manifold. There are intakes at the docks to allow product to be moved from the ship dock to the tanks. There are also intakes at the truck manifold and rail car yard manifold that allow product to be moved from tank trailers and rail cars to the tank farm as well.

Investigator Signature　　　　　　　　　　　　　　Supervisor Signature

## CASE SUPPLEMENTAL REPORT

Printed: 11/20/2019  13:43

*Harris County Fire Marshal's Office*                                                OCA: **190300046**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE*               Case Mng Status: *ACTIVE*                    Occurred: *03/17/2019*

Offense: *FIRE (UNDETERMINED)*

Investigator: *HARGRAVES, J. (F09168)*          Date / Time: *11/18/2019 14:00:00, Monday*

Supervisor: *SINGLETON, J. (F09130)*     Supervisor Review Date / Time: *11/18/2019 17:12:34, Monday*

Contact:                                                        Reference: *Follow-up*

The levels for the tanks are monitored in a control room and the levels are recorded using SCADA data. Data provided to the Harris County Fire Marshal's Office from a subpoena served to ITC shows that product was being released from tank 80-8 for approximately 30 minutes.  Approximately 9,000 gallons or 220 Barrels of Butane enriched Naphtha would have been released during this time period. A barrel according to the American Petroleum Institute is approximately 42 U.S. gallons for reference.

ORIGIN AND CAUSE OF THE FIRE:

Investigator Hargraves took over as Lead Investigator on Tuesday, March 26, 2019 and conducted multiple on scene interviews as well as on site and off site inspections.  Investigators with the HCFMO and ATF were present for the fire scene examination that occurred on April 9, 2019.  Investigators agree, that based on the interviews conducted, the data collected, scene examination and the site visits the fire is accidental in nature.  The ATF case number is 782035-19-0029. See the comprehensive, co-authored ATF/HCFMO Origin and Cause Determination report for further details.

Injuries or Fatalities:
Two medics with Clear Lake Medical Corps were evaluated at Houston Methodist St. John's hospital.  Lt. Weido and Morgan were evaluated after being exposed possibly to Benzene. This occurred on Wednesday, March 20, 2019.  A supplement was completed by Investigator S. Keesier.

Scene Documentation:
Images were captured at various times during the scene.  Digital cameras, drones, and video recorders were utilized to capture the scene and provide a true representation of the scene as scene on the many dates mentioned above in the report.  The images were captured directly to an internal memory card in the device and transferred to the Harris County Fire Marshal's Office Foray Digital Evidence System on the Harris County computer network.

Evidence:
All items from the manifold were left in place and were not disturbed during the scene examination that occurred on April 9, 2019.  All of the items were later transported from the scene to a business called Stress Engineering Services, Inc. and is located at 42403 Old Houston Highway in Waller, Waller County, Texas.  The items were photographed by Investigator Hargraves and are a true representation of the scene as observed on September 10, 2019.  The photos were saved to an internal memory card and later transferred to the Harris County Fire Marshal's Office Foray Digital Evidence System on the Harris County computer network.

Canine Usage:
See their supplement for further information.

INTERVIEWS:

Investigator Signature                                    Supervisor Signature

## CASE SUPPLEMENTAL REPORT

Printed: 11/20/2019  13:43

*Harris County Fire Marshal's Office*

OCA: *190300046*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE*          Case Mng Status: *ACTIVE*               Occurred: *03/17/2019*

Offense:  *FIRE (UNDETERMINED)*

Investigator: *HARGRAVES, J. (F09168)*         Date / Time: *11/18/2019 14:00:00, Monday*

Supervisor: *SINGLETON, J. (F09130)*     Supervisor Review Date / Time: *11/18/2019 17:12:34, Monday*

Contact:                  Reference: *Follow-up*

Numerous interviews were conducted by Investigators with the Harris County Fire Marshal's Office. They were overseen by Lieutenant G. Lopez and were audio recorded and supplements were completed for each interview that occurred. Interviews were conducted starting on March 18, 2019 and continued until the scene was released by HCFMO. A site visit was conducted at Stress Engineering Services, Inc. on September 10, 2019 to photograph parts belonging to the manifold of Tank 80-8. All of the interviews conducted along with site visits and the scene examination were completed as supplements and uploaded to the reporting system of the Harris County Fire Marshal's Office.

NARRATIVE:

Investigators explored the hypothesis that the fire was the result of a mechanical failure near the pump, seal pot and coolant assembly within the manifold of Tank 80-8, thus causing a leak and subsequent ignition of the fire. The reason for the belief for a mechanical failure was that the data collected from the SCADA system showed a product release for approximately 30 minutes prior to the fire. Employees were interviewed and were asked about their knowledge of any issues in and around the tank farm on the day of the fire. Some of the employees remembered that shortly before seeing the smoke cloud there was a noise like "rail cars coupling". This would be a sound familiar to most of the employees as there is a railyard within their property. This sound would indicate a moving part that was in motion and then suddenly stopping that motion. The instant stopping of the moving part would or is likely to produce friction, heat and sparks from the metal to metal contact. This would be the primary ignition source and the sequence would be that the leaking vapor product from the tank was ignited by the failure of the equipment from suddenly coming to a stop. With the hypothesis of mechanical failure formed, the data had to be tested and unfortunately that would have to wait until the hot zone was deemed safe to enter. Investigators continued to explore the mechanical failure hypothesis through the interview of process control operators and determine the validity of the processes involved in monitoring, repairing and replacement of field products. That led investigators to speak to the process operators, control room manager and repair personnel. This included millwrights, electricians, as well as operators, and anyone that was responsible for the equipment.

The site was examined on April 9, 2019 and was conducted with representatives from ITC, Harris County Fire Marshal's Office Investigations, Harris County Fire Marshal's HAZMAT, and Bureau of Alcohol, Tobacco, Firearms, and Explosives along with Harris County Fire Marshal's Office Safety. Upon taking pictures, it was observed by myself and Special Agent Evers what appeared to be studs laying in the pump housing. It appeared to be three of the four studs that would be used to hold the seal face to the flange using nuts and washers. The nuts were not located as there was a blanket of firefighting foam on the ground surrounding the manifold. The nuts could also have been mixed in the debris that was on the concrete pad of the manifold. In any case they were not located visually by this entry team. It was also observed that the seal pot was dislodged and was sitting at approximately a 45° angle. It was also observed that the metal coolant lines that were attached to the seal pot had wrapped around the seal pot. A final hypothesis of mechanical failure within the manifold of the tank was

Investigator Signature                    Supervisor Signature

## CASE SUPPLEMENTAL REPORT

Printed: 11/20/2019  13:43

*Harris County Fire Marshal's Office*                                            OCA: *190300046*

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE*          Case Mng Status: *ACTIVE*                    Occurred: *03/17/2019*

Offense:  *FIRE (UNDETERMINED)*

Investigator: *HARGRAVES, J. (F09168)*          Date / Time: *11/18/2019 14:00:00, Monday*

Supervisor: *SINGLETON, J. (F09130)*    Supervisor Review Date / Time: *11/18/2019 17:12:34, Monday*

Contact:                                        Reference: *Follow-up*

agreed upon by Investigators.

MISCELLANEOUS:

A site visit was performed at Stress Engineering Services, Inc., located at 42403 Old Houston Highway, Waller, Texas 77484.  This is where the manifold items were moved from Tank 80-8 to be stored for future testing and examination. I, Investigator Hargraves took a series of photographs using a Canon EOS Rebel digital camera with an internal flash.  The images were captured directly to an internal memory card in the camera and transferred to the Harris County Fire Marshal's Office Foray Digital Evidence System on the Harris County computer network.  The photographs were of items of interest particularly the seal pot flange and the studs that were observed from the site examination of the tank farm on April 9, 2019.  One stud remained in the flange and two were able to be photographed and one was heavily damaged and appeared melted.  These photographs along with the examination of parts support the hypothesis of a mechanical failure within the manifold of Tank 80-8.  An overview picture of the entire plant and the location of the tank farm and tank of origin has been uploaded as a reference to this supplement.

SUMMARY:

The fire that occurred at the Intercontinental Terminals Company on March 17, 2019 was the result of a failure within the manifold power frame of Tank 80-8.  The failure within the power frame resulted in an uncontained release of Naphtha enriched with Butane.  Foul play and malicious intent along with other unintentional causes were ruled out by investigators.  Investigators were unable to rule out various other failure scenarios within the seal pot and coolant assembly, along with failures involving the electric motor of the power frame or the potential ignition of the free flowing, ungrounded ignitable liquid.  Based upon the interviews of the employees, witnesses and the field examination the nature of this fire is classified as Accidental, per the description in NFPA 921.

--EOR--
JOH

Investigator Signature                                    Supervisor Signature

# Supplement

March 20, 2019
Interview with Rodney Reed
Interview with Chris Collier
Interview with David Capetillo



## CASE SUPPLEMENTAL REPORT

Printed: 11/20/2019 13:43

*Harris County Fire Marshal's Office*

OCA: **190300046**

THE INFORMATION BELOW IS CONFIDENTIAL - FOR USE BY AUTHORIZED PERSONNEL ONLY

Case Status: *ACTIVE*          Case Mng Status: *ACTIVE*          Occurred: *03/17/2019*

Offense: *FIRE (UNDETERMINED)*

Investigator: *LOPEZ, G. (F09081)*          Date / Time: *03/20/2019 16:00:00, Wednesday*

Supervisor: *HILTON, T. (F09136)*          Supervisor Review Date / Time: *03/25/2019 19:38:15, Monday*

Contact:          Reference: *Follow-up*

On March 20, 2019 I, Lieutenant Gustavo Lopez, was at Trans Star due to a meeting and Chief Rodney Reed with HCFMO, stated that Chris Collier, with SETRAC, informed him that Chief Petrilla, Fort Bend County EMS, informed him (Chris) that personnel in the rehab had stated something about a generator on fire that had spread to the tank. I obtained Chris Collier's contact number of 

At 17:48 hours, I called Chris Collier and informed him of what Chief Reed had told me. She stated that firefighters had stated that a generator that workers were working with had caught on fire. Also that the firefighters were not allowed to put it out due to the procedures of the plant. Chris stated that he will send me an email with Chief Petrilla's information. End of supplement.................

D. Lee
Unit 95F24
Harris County Fire Marshal's Office
Supplemental Report

On Wednesday March 20, 2019 at 1022 I, Dennis Lee unit 95F24 along with Investigator Lieutenant G. Lopez unit 95F7 of the Harris County Fire Marshal's Office drove to 1030 Ethyl Corp Road in unincorporated Harris County Texas to conduct follow-up information gathering. Units arrived on scene at 1059.

Investigators identified and interviewed a witness, Mr. David Joseph (Joe) Capetillo DOB ▓▓▓▓▓▓▓ ▓▓▓▓▓▓ who stated he is employed by International Terminals Company as an Area Pumper.

Mr. Capetillo stated he was making his rounds and that everything appeared to be operation routinely when he heard a call on the radio that there was a fire and that everyone needed to respond. Mr. Capetillo stated he got his gear and went to the North side of the plant on Tidal Road. He stated he saw fire at or near the manifold on tank 80-8. He stated the flame was shooting straight up from the manifold. He further stated there is a butane injection line on the piping and that he saw fire coming from the injection line piping. He stated the injection line and the entire manifold were engulfed in flame.

Mr. Capetillo used the monitor located at the north side of the tank yard to spray water in the direction of tank 80-8. He stated he could see paint starting to peel on tank 80-11 but stated tank 80-11 was not on fire at the time. The investigation continues.

End
DPL

Investigator Signature                    Supervisor Signature

Unofficial View of Official Marilyn Burgess District Clerk

# ITC Tank Farm Fire



Harris County Fire Marshal

Incident #1903-00046



ATF Case Number 782035-19-0029

Unofficial Copy Office of Marilyn Burgess District Clerk

| U.S. Department of Justice | Report of Investigation |
|---|---|
| Bureau of Alcohol, Tobacco, Firearms and Explosives | |

| Title of Investigation | | |
|---|---|---|
| ITC Tank Farm Fire | 782035-19-0029 | 2 |

## CAUSE AND ORIGIN REPORT

**DESCRIPTION OF ACTIVITY:**

ATF Certified Fire Investigator (CFI) and Harris County Fire Marshal's Office Origin and Cause Determination, 782035-19-0029.

**SYNOPSIS:**

1. On March 17, 2019 a fire occurred at the Intercontinental Terminals Company, LLC, located at 2621 Tidal Road, Deer Park, Texas 77536, Harris County, Southern Judicial District of Texas. A secondary address for ITC is 1943 Independence Parkway, La Porte, TX 77571. This fire burned for well over a week with intermittent flare ups. Entry by fire scene origin and cause investigators was substantially delayed by hazardous materials remediation efforts. Between product loss, infrastructure loss, environmental cleanup, and impact upon international shipping as a result of water runoff into the Houston Ship Channel, the dollar loss will be substantial. The fire is classified as *ACCIDENTAL*.

| Prepared by: Eric E. Evers | Title: Special Agent, Houston III Field Office | Signature: | Date: 8-14-1 |
|---|---|---|---|
| Authorized by: Alfred L. Parker II | Title: Group Supervisor, Houston III Field Office | Signature: | Date: 8/14/19 |
| Second level reviewer (optional): Frederick J. Milanowski Jr | Title: Special Agent in Charge, Houston Field Division | Signature: | Date: |

ATF EF 3120.2 (10-2004)
For Official Use Only

| Title of Investigation | Investigation Number: | Report Number: |
|---|---|---|
| ITC Tank Farm Fire | 782035-19-0029 | 2 |



Google Earth Pre-Fire Overview of Intercontinental Terminals Company, LLC

## STATUTORY AUTHORITY:

2.  The Harris County Fire Marshal's Office is typically the lead investigative agency for all fire related incidents in the unincorporated areas of the county that are not overlapped by a municipality.

LOCAL GOVERNMENT CODE

TITLE N. PUBLIC SAFETY

SUBTITLE B. COUNTY PUBLIC SAFETY

CHAPTER 352. COUNTY FIRE PROTECTION

SUBCHAPTER B. COUNTY FIRE MARSHAL

Sec. 352.013.  INVESTIGATION OF FIRES.  (a)  The county fire marshal shall:

(1)  investigate the cause, origin, and circumstances of fires that occur within the county but outside the municipalities in the county and that destroy or damage property or cause injury;  and

(2)  determine whether a fire was the result of negligent or intentional conduct.

(b)  The commissioners court of a county, with the advice of the county fire marshal, shall adopt rules and procedures for determining which fires warrant investigation by the county fire marshal.  The county fire marshal shall begin an investigation within 24 hours after the receipt of information regarding a fire that warrants investigation under commissioners court rules and procedures.  The 24-hour period does not include a Sunday.

ATF EF 3121-2 (10-2004)
For Official Use Only

| Title of Investigation<br>ITC Tank Farm Fire | Investigation Number<br>782935-19-0029 | Report Number<br>2 |
|---|---|---|

(c)  In the performance of official duties. the county fire marshal, at any time of day, may enter and examine a structure where a fire has occurred and may examine adjacent premises.

3.  The United States Department of Justice, specifically the Bureau of Alcohol, Tobacco, Firearms and Explosives derives statutory authority from:

United States Code › Title 18 › Part I › Chapter 40 › § 844

(i) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both, and if personal injury results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection. shall be imprisoned for not less than 7 years and not more than 40 years, fined under this title, or both; and if death results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment.

## NARRATIVE:

4.  On March 17, 2019, at approximately 1000 hours, employees of Intercontinental Terminals Company, LLC (ITC) reported a fire in an area of fifteen storage tanks identified as The Second 80's and specifically, on the manifold of tank 80-8.  Witnesses stated that low water pressure hampered initial efforts to suppress the fire. The Deer Park Fire Department along with Channel Industries Mutual Aid (CIMA) responded to the fire.

5.  The fire proved extremely difficult to extinguish and burned for approximately one week with additional flare ups.  Tank 80-8 was near capacity containing 75,000 barrels of Naphtha or roughly 3,150,000 gallons of product.  The initial tank fire spread into neighboring tanks containing Toluene. Gas Blend, Xylene. Pyrolysis Gasoline (Pygas), and base oils.

6.  On March 17, 2019, the Harris County Fire Marshal's Office (HCFMO) commenced initial investigative activities under the legal authority of exigent circumstances.  This transitioned to written consent provided by Russel Lewis of Baker Botts. LLC, and Lead Counsel for ITC.

7.  On March 21, 2019, the Harris County Fire Marshal's Office requested the assistance of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Houston Group III.  As a result of the anticipated delay to gain entry into the scene and the number of interviews thus far conducted by HCFMO, investigators deemed that the ATF National Response Team would not be needed.

8.  On April 9, 2019, initial scene entry was made and the onsite fire scene examination began.  These efforts concluded on April 10, 2019.  As this was a hazardous materials scene, activities by the investigators were restricted and cumbersome thus limiting time in the scene and the types of tools and electronic equipment that could be taken into the general area of origin.



ATF EF 3120.2 (10-2004)<br>For Official Use Only

| Title of Investigation | Investigation Number | Report Number |
|---|---|---|
| ITC Tank Farm Fire | 782035-19-0029 | 2 |

## PARTICIPATING FIRE INVESTIGATORS:

9. HARRIS COUNTY FIRE MARSHAL'S OFFICE:

- Chief James Bolton
- Captain Mitch Weston
- Lieutenant Gustavo Lopez
- Investigator Jim Hargraves Jr.
- Investigator Dustin Ledford

10. HARRIS COUNTY HAZARDOUS MATERIALS RESPONSE TEAM:

- Sign in sheet available upon request

11. BUREAU OF ALCOHOL, TOBACCO AND FIREARMS:

- Special Agent Eric E. Evers, CFI

12. INTERCONTINENTAL TERMINALS CORPORATION, LLC:

- Jesus Bravo
- Hector Cadena
- Rafa Garcia

## WITNESS STATEMENTS:

13. The following are synopses of interviews conducted by the HCFMO as a part of the origin and cause investigation. Only relevant facts that relate to the origin and cause investigation have been included. Complete reports related to these interviews can be found in the files of the HCFMO and are identified by name, date and recording number. Multiple interviews may be included in a synopsis.

14. Employee – Jesus Bravo, 03-28-19, #WS400100. Mr. Bravo stated that he is the Safety Specialist and has been employed by ITC for four years. All work orders must go through him as he has to issue a permit and tools to conduct repairs. There was no maintenance being conducted on the day of the fire.

15. Employee – John Burditt, 03-27-19, #WS400095. Mr. Burditt stated that he is a Shift Manager for Crew 1 of the Operations Division and has been employed by ITC for fourteen years. He had worked the night shift and been relieved by Tim Guidry. The tank structure contains an internal floating roof with a solid roof over that. Pipeline Intervention Gadgets (PIGs) are only used when a tank is taken out of service. They are made of foam and are disposable. None were in use at tank 80-8.

16. Employee – Tim Guidry, 03-27-19, #WS400096. Mr. Guidry stated that he was the Supervisor on duty for the weekend and has been employed by ITC for ten years. He relieved Mr. Burditt on Friday. There were no repairs being done in the terminal the day of the fire. The weather was not significant. Safety practices ensure that any employee can shut down an entire action if that employee deems the situation unsafe. On Saturday March 16, 2019, at 2230 hours, tank 80-8 was almost filled to capacity at 75,000 barrels of Naphtha leaving an estimated head space of 5,000 barrels. A second batch of Butane was being mixed into the Naphtha which requires that the pump continuously run for at least eight hours. Mr. Guidry was on the

ATF FF 3120.2 (10-2004)
For Official Use Only

| Title of Investigation | | Investigation Number: | Report Number: |
|---|---|---|---|
| ITC Tank Farm Fire | | 782035-19-0029 | 2 |

80's tank farm doing chores. He heard a sound like two rail cars coupling, a sound that is not normal in or around the tanks. He was at ground level with a concrete wall approximately 7' tall blocking his view. He heard a loud pop and almost instantaneously saw fire at the manifold system to tank 80-8. He then began firefighting operations with stationary fire equipment.



Early Photograph of Fire at Manifold Tank 80-8

17. Employee – David Joseph Capetillo, 03-27-19, #WS400097. Mr. Capetillo stated that he has been employed by ITC for four years. He had been informed that product was being moved at tank 80-21. He began to program the stops related to this activity. Tank 180-143 was not communicating with the control room so the tank had to be physically inspected every two hours. There were no scheduled blendings, reported problems, PIGs in use, or injections scheduled in the 80's for the weekend. He heard Tim Guidry on the radio state that there was a "real bad fire" in the 80's. After retrieving his firefighting bunker gear from the firehouse, he made his way to the area in a company truck. He did not see anyone in the area to include Tim Guidry. He observed fire at the manifold and pump station of tank 80-8. He attempted to utilize the firefighting monitors at tank 80-10 and 80-7. He saw the insulation on tank 80-11 begin to burn from radiant heat exposure and then the escaping vapors at the top of the tank ignite. He thinks he was the first person on scene and did not see anyone else. There was a whistling sound emanating from tank 80-8. He did not hear a pinging sound which would have been indicative of boiling liquids.

18. Employee – Jeremy Dickerson, 03-18/21/28-19, #WS400100. Mr. Dickerson stated that he is a Pumper and has been employed by ITC for eighteen years. He was in the Control Room with Steve Mathias when the fire started. When there is an issue in the tank farm, the monitoring screens will flash and ring to indicate a problem. There were no such warnings signaled via the control system. He heard over the radio about the fire when Tim Guidry reported it. He went to the 80's to help fight the fire. He observed some fire at 80-11 but mostly at 80-8. He utilized the fire monitor at tank 80-9 but the water stream would not reach so he attempted to bank the water off of 80-11 to reach 80-8. He did not observe anyone else in the area while attempting to fight the fire. At the time of the fire, he was not aware of any reported mechanical issues related to tank 80-8. He stated that back in December of 2018, the pump had been taken out of service for making noise. There were no alarm communications from tank 80-8 to the control room. No PIGs were being used. He was aware that a pump repair had been completed on 80-8 within the last few months.

19. Employee – Steve Mathias, 03-29-19, #WS400103. Mr. Mathias stated that he is a Control Room Operator and has been so employed for thirty-four years. He was in the Control Room with Jeremy Dickerson. He was watching five computer screens which indicated everything was normal and there were no alarms activating. He was alerted to the fire by means of the radio as was Mr. Dickerson. He looked at the control screen for tank 80-8 which was green and indicated that everything was in a normal operational mode. A

ATF EF 3120.2 (10-2004)
For Official Use Only

| Title of Investigation | Investigation Number | Region Number |
|---|---|---|
| ITC Tank Farm Fire | 782035-19-0029 | 2 |

pump for any particular tank is set to be considered in the normal range up to 130°F. The pump should set off alarms when in between 130°F and 150°F. It should shut off at 150°F. The data as related to this incident and elsewhere on the facility is captured by the "Trend System".

20. Employee – Sam Kerr, 04-01-19, #WS400114. Mr. Kerr stated that he is the Marine Coordinator and has been employed by ITC for forty years. He was in the Traffic Building when he heard the fire reported over the radio. He took actions to shut down all pumping operations to ships in the Houston Ship Channel. Upon his questioning, no one remembered turning off the pump at tank 80-8 so he gave the order to do so.

21. Employee – Carl E. Holley, 03-28-19, #WS400101. Mr. Holley stated that he is the Vice President of Safety, Health and Operations and has been employed by ITC for thirty-eight years. He was alerted to the fire by a telephone call while he was at home. Upon his arrival to the tank farm, he observed copious amounts of smoke and a pool fire at 80-8. He also observed a flange fire above the pool fire approximately 3' to 6' above the ground. He believes the cause of the fire to be an equipment failure at either a flange or a gasket.

22. Employee – Matthew Anders, 04-01-19, WS#400120. Mr. Anders stated that he works on pumps and has been employed by ITC for four years. He worked on the pump for tank 80-8 in December 2018. He typically replaces bearings and seals and if the parts are out of tolerance they are discarded. At the time of the performed maintenance, he inspected the pump, ran it and did not hear any noise. So he only replaced the two stage seal and did so on site. He did not have to remove and replace the power frame (electric motor, coupling and pump affixed to a skid) in order to complete the repair. He then spins the shaft by hand to feel for any problems which he did not detect. The system was charged to 100 psi with no leaks at any flanges or connection points. There are heat sensors before and after the pump which were not disconnected to perform the maintenance. While the repairs were being made, the data continues to transfer with a constant flow of information to the Control Room. He identified the pump as being an XLTX/Gould.

23. Employee – Chris Robles, 04-01-19, #WS400120. Mr. Robles stated that he works as an Area Technician in maintenance and has been employed by ITC for approximately eight months. He assisted Mr. Anders with the repair of the pump at tank 80-8 in December. He did not recall much about the repair conducted of the pump other than no heavy equipment was utilized. The power frame remained in place with the repair being conducted on site.

24. Employee – Carleton Homfeld, 04-03-19 and 04-10-2019, WS#400118, WS#400119. Mr. Homfeld stated that he is Director of Maintenance and has been employed by ITC for thirty-nine years. He is aware that maintenance had been performed on the pump for tank 80-8 in December of 2018 for what he believed to be noise resulting in an imminent bearing failure and subsequent replacement. However, he is not aware of any recent issues with the pump.

25. On April 10, 2019 Mr. Homfeld provided investigators with a tour of the Maintenance Building and of the surrounding yard containing various power frames, pumps, motors and other items associated with the manifold systems. Mr. Homfeld stated the following to investigators. A power frame consists of an electric motor with a coupler and a pump attached to a skid. There are various power frames as spares to replace units at various tanks when major maintenance is necessary. The electric motor is typically rated at 200 horsepower with a 15" impeller in the pump housing. The motor and wires are sealed from vapors with a Class 1 rating which is explosion proof for both dust and vapor. A coolant system is over the seal to the pump. There is an oil inlet with a return line to a tank affixed to the manifold system. The coolant system is what keeps the seal within temperature ratings while the shaft rotates inside the seal kit. When

ATF RF 3120.2 (10-2004)
For Official Use Only

| Title of Investigation:<br>ITC Tank Farm Fire | Investigation Number:<br>782035-19-0029 | Report Number:<br>2 |
|---|---|---|

maintenance is conducted, the seal and bearing are provided in a kit supplied by Chesterton®. The surfaces are cleaned but typically not in need of resurfacing. Anti-seize is placed on the connection points. The old assembly is then placed back into the box, which has a label that specifically states "Place Used Seal in This Box". The used kit is then sent back to the company for refurbishing. Various specifications can be assigned to the old parts in need of refurbishing. Typically they require Chemraz® quality as this withstands the exposure to the majority of chemicals the unit will be exposed to. ITC adheres to a "Like-Kind" replacement which means replacing old parts with identical new parts. During the tour, investigators were shown the parts room which contained numerous shelves filled with new parts in boxes and old parts on the shelves mixed in with the new parts. When asked about determining which old parts were sufficient for re-use, Mr. Homfeld stated that decision was done primarily by a visual inspection. In the yard, were numerous power plants, electric motors, pumps etc. that varied from complete units ready for use to parts in need of re-assembly.



Exemplar Power Frame, Electric Motor, Coupler and Pump

26. ITT Pro Services – Farruk Hafeez and others, 04-11-2019, WS#400134, telephone number 281-504-6300. Mr. Hafeez is an Engineer for ITT Pro Services which services and sells Goulds Pumps. The following information was conveyed: The seal clamp bolts to the face plate of the casing. The studs are 5/8" 18UNC and do have torque specifications. The stud should stick past the nut by at least a two thread minimum. The MT and XLT parts are not physically interchangeable as they have different shafts. In their rebuild or pump maintenance system, there is a part number and a place for each item and part during the process. A torque wrench will not fit into the space to torque the studs or nuts so it is done by feel.

## BUILDING CONSTRUCTION:

27. The tank yard construction was established by post-fire examination as well as information provided by ITC. The fire affected tank farm was one of many in a large industrial complex and referred to as the "80's". This name reflects that the tanks in the yard would contain 80,000 barrels of product when filled to capacity. This particular yard consisted of 15 tanks arranged in three rows of five. The area was earth covered with gravel and contained within an approximately 7' high concrete retaining wall. Metal steps and bridges granted access into the 80's over the walls as well as passage over routed pipelines within the barriers.

28. The tanks in the 80's are welded in place of 1 ½" plate steel. They measure 120' across by 40' tall.

| Title of Investigation | Investigation Number | Report Number |
|---|---|---|
| ITC Tank Farm Fire | 782035-19-0029 | 2 |

29. A tank in the 80's would hold 80,000 barrels of product if filled to capacity. A barrel holds 42 gallons of product. Therefore, one tank filled to its maximum level would hold 3,360,000 gallons of liquid.

30. The fire originated at the manifold of tank 80-8. This tank was the most centrally located tank in the second row of five, and third from the west and third from the east. The manifold faces in a southeasterly direction.

**UTILITIES:**

31. Three-phase electrical distribution entered the 80's at the main distribution line near the semi-truck manifold located to the southwest. This also housed the variable 1200 A breakers with 7kv main electrical feed with a transformer bank directly below the main. Electrical distribution was then routed below grade. Where rising out of the earth to connect to the electric motors of the power frames, the conductors were encased in explosion proof housings



Explosion/Vapor Proof Electrical Connection at Motor

**SCENE PROCESSING:**

32. The fire occurred on Sunday March 17, 2019. As a result of fire load, extension, duration and suppression difficulties; as well as hazardous materials remediation efforts, investigators had to wait three and a half weeks to make scene entry.

33. On Tuesday April 9, 2019, investigators with the HCFMO and ATF were able to enter the fire scene. Agreements made between ITC and the Harris County Attorney's Office required all activity within the hot zone to be videotaped by means of a hand held camera on the ground and by means of a drone flying overhead. Level B hazardous materials protection was utilized with full face respirators. The nature of the hazardous materials personal protective equipment severely limited time in the scene and the level of work

ATF FF 3120.2 (10-2004)
For Official Use Only

| Title of Investigation: | Investigator Number: | Report Number: |
|---|---|---|
| FTC Tank Farm Fire | 782035-19-0029 | 3 |

that could be performed.  In this particular scene, there was minimal physical labor necessary as there was no traditional fire scene excavation necessary.

34. An exterior scene examination was first conducted via camera footage provided by means of an aerial drone.  This platform allowed investigators to observe the 80's tank farm before suiting up to make entry. The aerial overview along with initial interviews provided explicit detail as to where the fire originated, specifically at the manifold on tank 80-8.

35. There was extensive damage to twelve of the fifteen tanks.  Tanks 80-1 (Base Oil) and 80-4 (Base Oil) at the northwest corner of the tank farm were upright without distortion but oxidized from thermal assault. Tanks 80-10 (Py Gas) and 80-13 (Toluene) at the northeast corner of the property were upright, not distorted and retained their white pre-fire appearance.  Tank 80-11 (Base Oil) in the second row second tank over from the east was similar to the tanks in the northwest corner.  All of the other tanks exhibited oxidation and collapse to varying degrees.  Tanks 80-2 (Gas Blend) second row to west and tank 80-6 (Gas Blend) south row second from east were in similar condition to the area of origin tank 80-8.  These three tanks exhibited the most severe fire damage and structural collapse to near ground level.  There was also no discernable means of analyzing the fire patterns of the tanks alone to explain the fire dynamics of how the fire spread through the tank farm.



Pre-Fire Photo of 80's Tank Farm Labeled with Contents

36. Tank 80-8 was the focus of the investigation upon entry.  Tank 80-8 was completely destroyed by the fire. The tank exhibited severe oxidation.  The steps affixed to the wall of the tank rising upwards to the west, had come loose and fallen to the ground.

ATF EF 3120.2 (10-2004)
For Official Use Only



Tank 80-8 and Manifold, Origin of Fire

37. The manifold of tank 80-8 was severely damaged. All surfaces exhibited severe oxidation indicative of long term thermal exposure. The damage observed is described from left to right while facing the tank and manifold with the power frame noted first.



Overview of Tank 80-8 Manifold and Power Frame

38. The motor was stamped with "US Motor" and the pump was stamped with "Gould XLT-X Pump 68146". The heavy steel electric motor housing was severely oxidized and had thick cracks on both sides emanating from the rear of the motor or non-shaft side.

ATF EF 3120.2 (10-2004)
For Official Use Only

| Title of Investigation | Investigation Number | Report Number: |
|---|---|---|
| ITC Tank Farm Fire | 782035-19-0029 | 2 |



Electric Motor of Power Frame with Cracks to Housing



39. The metal coupler cover between the pump and the electric motor was askew but not oxidized like all of the other metal in the manifold. An attempt to lift the coupler protective housing was not successful as there was still at least one bolt securing it to the skid. The cover was left in place. Just past the cover was the shaft into the pump. The seal pot on the shaft was dislodged and resting at an angle away from the pump. The coolant supply and seal pot return lines had been mechanically sheared from the coolant tank and wrapped around the seal pot and shaft. This indicates that the motor had been working and the shaft was revolving shortly before ignition.

ATF EF 3120.2 (10-2004)
For Official Use Only

| Title of Investigation: ITC Tank Farm Fire | Investigation Number: 782035-19-0029 | Report Number: 2 |
|---|---|---|



Dislodged Seal Pot and Bent Coolant Supply Lines

40. There were no nuts visible on the studs to secure the seal pot in place. The studs themselves appeared to have worked loose and were resting in the housing below the shaft. Because of the limiting factor of the hazardous materials personal protective/safety equipment, it could not be determined if the nuts worked free during operation or if they were sheared off when the seal pot came loose.



Seal Pot Mounting Studs Worked Loose from Mounting Surface

ATF EF 3120.2 (10-2004)
For Official Use Only

| Title of Investigation ITC Tank Farm Fire | Investigation Number: 782035-19-0029 | Report Number: 2 |
|---|---|---|

41. Past the seal pot, the shaft was pulled free of the pump and resting in the connection point. The interior of the pump and the pulled free connective surface retained a clean shiny silver metal appearance with absolutely no oxidation. Directly on the ground below the seal pot and pump were metal pieces and debris scattered about. These items were not moved but appeared to be directly related to the damage observed at the shaft, seal pot and connection point to the pump.



Dislodged Seal Pot Connection to Pump

42. Around the power frame were numerous pipes associated with the manifold. A vertical 6" to 8" in diameter pipe, located between the tank and pump and in direct proximity to the pump, was consumed on the side aligned with the pump. The damage was very similar in appearance to electrical arcing of conduit although there was no electrical associated with this pipe. The damage was from ground level to several feet above grade. Behind the power frame and to the right were two elevated and perpendicular to the ground; round valve handles which were partially consumed towards the pump. The PIG trap to the far right of the power frame and associated piping had bolts and nuts on the ground below. It appeared that the end plate had been removed and then reattached. This was done by mitigation crews in order to drain remaining Naphtha and water from tank 80-8. On top of the power frame were the remains of consumed pipes.

ATF EF 3120.2 (10-2004) For Official Use Only

| Title of Investigation | Investigation Number | Report Number: |
|---|---|---|
| ITC Tank Farm Fire | 782035-19-0029 | 2 |



Overview of Power Frame with Damaged Pipe in Foreground

43. The oxidation and metal consumption patterns in the manifold provided a somewhat inverted conical pattern coming back to the dislodged seal pot from the main pump housing.



Overview of Damaged Handles Pointing Back to Power Frame

ATF EF 3120.2 (10-2004)
For Official Use Only

| Title of Investigation: | Investigation Number: | Report Number: |
| ITC Tank Farm Fire | 782035-19-0029 | 2 |

44. Other power frames and manifolds within the tank farm were examined as comparisons to tank 80-8. The power frame and manifolds at tank 80-7, 80-10 and 80-11 were viewed and documented. These units did sustain some thermal damage and exhibited minor to moderate oxidation but nowhere nearly as severe as tank 80-8. The electric motor housings were not cracked. There was no misalignment of the pump shafts. The shafts were all properly inserted into the pump housing. The coolant system, seal and bearings were all in place with the coolant supply and return lines properly routed and affixed to the oil tank. The nuts and studs were in place. All piping and valves of the manifolds were intact without any misalignments, separations or consumption. There was no debris field below the coupler and pump as was at tank 80-8.



Close Ups of Seal Pots on Fire Damaged Pumps with Studs in Place.
Note Left Has Studs Extended Past Nut and Right Does Not



Close Up of Exemplar Seal Pot with Unbent and Properly Affixed Coolant Supply Line

| Title of Investigation<br>ITC Tank Farm Fire | | Investigation Number<br>762035-19-0029 | Report Number<br>2 |
|---|---|---|---|

## WORK ORDERS:

45. Work orders for the manifold and power frame for tank 80-8 were obtained.  These documents dated back approximately one year to March 21, 2018.  They were thoroughly reviewed on April 10, 2019 the day after fire scene processing.

46. Relevant maintenance to the power frame are noted as written and in italics from both ITC computer printouts and hand written notes.  Investigator observations in parentheses:

47. *July 4, 2018, 80-8 Pumper started up 80-8 pump then it turned off and the 80-10 pump.  Found tripped breaker at transformer.  Megged both 80-8 and 80-10 motor leads, they megged good.* (Megged is a motor insulation test)  *Reset breaker 80-10 got going and test 80-8 as well and they ran.*

48. *September 16, 2018, Came out for 80-8, 80-10.  Found tripped breaker at transformer bank. Had to reset it.*

49. *November 12, 2018, Daily action repairs.*
    - *Zach Everett – 80-8 pump running loud, inspected, no issues found, changed oil, flushed seal pot.*
    - *John Ball – 80-8 pump was making noise.*
    - *Jimmy – Looked at 80-8 with mechanical, no electrical issues found.  Pumper said it was wound too tight.  Didn't know what that meant, it is on a starter, pump runs.*

50. *December 4, 2018, 80-8 pump making loud nois.* (sic)
    - *Matthew Anders – 80-8 pump bearing are* (sic) *going out. Valves are leaking by Supposed to be blind flange.  Cleaning up spare in shop to swap out bearing housing.  Incomplete.*
    - *John Ball and Chris Robles – 80-8 tank, the pump was making noise. The pump needs bearings.  Called operation Chad to LOTO pump.*  (LOTO is Lock Out Tag Out, a safety procedure)  *Valves were leaking by.  Shop, getting a spare power end to install 80-08.*
    - *Zach Everett – Shop, disassemble spare MTX to replace power end at 80-8.*  (Power end is the shaft to the other side of the pump)
    - *Mathew Anders and Chris – 80-8 Cargo Pump. Called out to change power frame with bad bearings.  Finished building spare pump in shop.  Removed pump from manifold and brought to shop.  Installed spare pump, set mechanical seal, pressure tested, coupled up, filled seal pot up, got off of LOTO.  Complete.*
    - *John Ball – Bearings are worn out on the pump.  Removed and replaced power end.  Changed the bearing housing and seal filled with glycol and pressure checked.*

51. *December 16, 2018, 80-08 pump won't come on.*
    - *GR – Pulled cutouts reset breaker, verified voltage, had the pumper start the pump.*
    - *Jimmy – Pulled cutouts.  Went up and reset breaker.  Dialed up both settings to max on breaker.  Stabbed cutouts back in.*

52. *February 26, 2019, 80-8 Cargo Pump: relocate start*
    - *WE&IN – Installed new conduit & pulled new wire, relocated start stop to zone B.*

53. *March 6, 2019, Relocate push button station.*
    - *Gabe and Bill – Relocate start stop at 80-8, run new conduit, pulled wires and terminate wires.*

ATF RE 3120.2 (10-2004)<br>For Official Use Only

Unofficial Copy Office of Harris County District Clerk

| Title of Investigation: ITC Tank Farm Fire | Investigation Number: 782035-19-0029 | Report Number: 2 |
| --- | --- | --- |

## SURVEILLANCE VIDEO:

54. Surveillance video was provided by ITC.  The footage provides a time stamp of March 17, 2019 at 10:00:45 hours.  It reveals the initial fire growth.



ITC Video Capture

55. Surveillance video was provided by Planned Parenthood.  The footage provides a time stamp of March 17, 2019 at 10:01:06 hours.  It reveals an instantaneous column of smoke indicating substantial release of product prior to ignition.



Planned Parenthood Video Capture

ATF EF 3120.2 (10-2004)
For Official Use Only

| Title of Investigation ITC Tank Farm Fire | Investigation Number 782035-19-0029 | Report Number 2 |
|---|---|---|

## OTHER RELEVANT DATA:

56. Supervisory Control and Data Acquisition (SCADA) is an electronic storage database of all activity occurring at ITC facilities. Butane was being mixed into the Naphtha of tank 80-8 on the weekend that the fire started. Information obtained by the HCFMO reveals numerous fluctuations at tank 80-8 beginning at 0934 hours and occurring up to 1004 hours. This, when coupled with the time stamp provided by video surveillance, leads investigators to conclude an approximately twenty-six minute time frame of Naphtha with Butane release until fire ignition. Fire dynamics supports the SCADA information as the initial fire plume is much taller than the tanks. Yet, alarms were not activated in the control room.

57. SCADA reveals that the internal temperature of tank 80-8 held steady at 66.2°F and did not begin to rise until two hours into the event. This information also supports a fire at the manifold rather than in or on the tank.

58. The following information was derived from ITC information provided to HCFMO on 04-02-2019; SCADA file ITC_HCFM_00000614_Confidential:

| Time | Barrels Prior | Barrels at Time | Barrels Lost | In Gallons | Time to Next Reading |
|---|---|---|---|---|---|
| 0934 | 70277.00 | 70232.84 | 44.16 | 1854.72 | 7 Minutes |
| 0941 | 70232.84 | 70188.69 | 44.15 | 1854.30 | 7 Minutes |
| 0948 | 70188.69 | 70144.53 | 44.16 | 1854.72 | 8 Minutes |
| 0956 | 70144.53 | 70100.37 | 44.16 | 1854.72 | 8 Minutes |
| 1004 | 70100.37 | 70056.22 | 44.15 | 1854.30 | |

59. In the span of thirty minutes, 220.78 Barrels of Naphtha mixed with Butane was released from the pump section of the power frame at the manifold of tank 80-08. There are 42 US gallons in a barrel. 220.78 barrels X 42 gallons = 9272.76 gallons of product release.

60. The following information was derived from ITC information provided to HCFMO on 04-01-2019; SCADA file ITC_HCFM_00000481_Confidential:

61. At 10:01:03, T080-08, pump-cargo_A stopped, uncommanded stop.

ATF EF 3120.2 (10-2004) For Official Use Only

| Title of Investigation | Investigation Number | Report Number |
|---|---|---|
| ITC Tank Farm Fire | 782035-19-0029 | 2 |

## MANUFACTURER MATERIAL SAFTEY DATA SHEETS:

62. The following information was obtained by HCFMO from ITC. Relevant data was extracted from the sheets for inclusion in the report. The actual MSDS are included as attachments to the report.

63. **Midcoast Energy, NAPHTHA**          ITC_HCFM_00000906

HAZZARD SUMMARY:  Extremely Flammable

HAZARD STATEMENTS:  Extremely flammable liquid and vapor

FLASH POINT – TYPICAL:  – 21.7°C (-7.1°F)

AUTOIGNITION TEMPERATURE: 530°F (277°C)

LOWER EXPLOSIVE LIMIT: 1.2 % (V)
UPPER EXPLOSIVE LIMIT: 6.9 % (V)

SPECIFIC GRAVITY: 0.77 (H20=1)

INITIAL BOILING POINT: 90°F (32°C)

BOILING RANGE:  90° to 400°F (32° to 204°C)

VAPOR PRESSURE: Approximately 5 to 15 psi at 100°F (38°C) (Reid Vapor Pressure)

VAPOR DENSITY (Air = 1):  3.5

PERCENT VOLATILES:  100%

CONDITIONS TO AVOID:  Avoid high temperatures, open flames, sparks, welding, smoking and other ignition sources.

HAZARDOUS REACATIONS:  Vapors may form explosive mixture with air.

64. **Enbridge™, BUTANE**          ITC_HCFM_00000741

SPECIFIC HAZARDS ARISING FROM THE CHEMICAL:  Extremely flammable gas.  The vapor/gas is heavier than air and will spread along the ground.  Gas may accumulate in low or confined areas or travel a considerable distance to a source of ignition and flashback, causing fire or explosion.

BOILING/CONDENSATION POINY:  -138°C (-216.4°F)

CRITICAL TEMPERATURE:  151.85°C (305.3°F)

FLASH POINT: Closed cup: -60°C (-76°F)

Unofficial Copy of Office of Marilyn Burgess District Clerk

| Title of Investigation | Investigation Number | Report Number |
|---|---|---|
| ITC Tank Farm Fire | 782035-19-0029 | 2 |

FLAMABILITY: Extremely flammable in the presence of the following materials or conditions: open flames, sparks and static discharge and oxidizing materials.

UPPER EXPLOSIVE/FLAMABILE LIMITS: Upper 8.4%
LOWER EXPLOSIVE/FLAMMABLE LIMITS: Lower: 1.8%

VAPOR PRESSURE: 16.3 (psig)

VAPOR DENSITY: 2.1 (air = 1)

AUTO IGNITION TEMPERATURE: 365°C (689°F)

## EXHIBITS:

65. The Harris County Fire Marshal's Office took digital photographs.

66. The Harris County Precinct #1 Constable's Office, Deputy Nick Radack, took aerial videos from a drone platform.

## ADDITIONAL INFORMATION:

67. Harris County Fire Marshal's Incident #1903-00046.

68. BATS #1.001.212.

69. A decontamination line was not utilized on this scene. The nature of the industry and the scene precluded any investigative need or value of a decontamination line upon entry into the scene. However, a decontamination line was in place upon exiting the hazardous materials scene.

70. No accelerant detecting canine team was utilized. The nature of the industry and the scene precluded any investigative need or value of a canine team.

71. Twenty four hour security was provided by the Harris County Sheriff's Office during the extended duration of the fire suppression efforts and hazardous materials remediation efforts.

72. During the course of the origin and cause investigation; the manifold and power frame of tank 80-8 were enclosed within a temporary barrier to prevent unauthorized access to the area of origin and minimize potential spoliation issues.



Unofficial Copy Office of Marilyn Burgess District Clerk

| Title of Investigation | Investigation Number | Region Number |
|---|---|---|
| ITC Tank Farm Fire | 782035-19-0029 | 2 |

## FIRE PROGRESSION TO OTHER STRUCTURES:

74. There were a total of fifteen tanks in the 80's aligned in three rows of five. This fire originated at the manifold of tank 80-8 which was the center most tank, second row, third in from either end. All fifteen tanks suffered some degree of thermal damage. Only two upon visual inspection appear to be minimally damaged and remain useable. Twelve of the tanks suffered catastrophic damage that will result in their eventual razing if not all fifteen. The fire did not extend from the original field of origin into adjacent tank farms.

## CONCLUSION:

75. Based upon the information available at this time and after conducting a systematic fire scene examination, inspecting the physical evidence, viewing fire scene video, viewing photographs, considering employee statements, considering maintenance records, and employing the scientific method by means of formulating and discarding hypotheses, it is the opinion of investigators that the area of origin is the power frame of the manifold for tank 80-8. The first fuel ignited were the vapors from the leaking liquid Naphtha which was enriched with Butane.

76. A failure occurred within the manifold power frame, somewhere between the electric motor and the impeller of the pump. This failure resulted in the release of Naphtha. Because of the civil liabilities, subrogation aspects, and spoliation issues, nothing related to the power frame was moved, touched or manipulated by investigators other than a coupling cover which could not be moved. The debris field below the power frame was not touched or moved in any way. The exact cause of failure will require forensic testing by parties other than law enforcement. Therefore, the specific or exact failure mode is currently not known. There are absolutely no indicators of an intentional criminal act for the purpose of setting a fire. Any criminal or civil penalties associated with this incident must fall under the jurisdiction of entities other than traditional fire investigation organizations. Moreover, because all mechanisms of failure within the power plant were accidental in nature, the incident classification is *ACCIDENTAL* as per NFPA 921.

## HYPOTHESES CONSIDERED AND DISCARDED:

77. In adherence to the Scientific Method, after collection of data, various hypotheses in reference to heat producing or ignition scenarios were considered as plausible causes for the fire at the Intercontinental Terminals Corporation LLC. Some of these ignition scenarios were ruled out based upon interviews. Others required fire scene processing, while others required post fire research. Discarded hypotheses of ignition scenarios include:

*Smoking Materials*

78. Smoking is not permitted on property. The hazardous and volatile nature of the chemicals and their vapors would result in dangerous situations when exposed to the act of an open flame applied to tobacco products. While on scene and ITC property in general, no discarded cigarette butts were observed. There were clearly marked and designated smoking areas with cigarette disposal units. These were away from the tank farms and pumping stations. The fire was not caused by carelessly disposed of smoking materials.

ATF F5 3134.2 (2a 2004)
For Official Use Only

Unofficial Copy/Office of Chris Daniel, District Clerk

| File of Investigation: | Investigation Number: | Report Number: |
|---|---|---|
| ITC Tank Farm Fire | 782035-19-0029 | 2 |

*Maintenance*

79. Consideration was given to maintenance having been conducted at the time of the event. Witness statements indicate that there were no scheduled maintenance requests submitted for anything related to tank 80-8 as well as there were no scheduled activities being conducted in the 80's over the weekend shift. There were some early rumors as to a welding machine in the general area of where the fire started but nothing of the sort was observed during the fire scene examination. The fire was not caused by either scheduled or unscheduled maintenance activities directly related to the weekend of the event.

*Lightning Strike*

80. A CoreLogic STRIKEnet® Report was obtained. There were no lightning strikes within a five mile radius of the structure on the day of the fire. This fire was not caused by lightning.

*Pipeline Intervention Gadgets*

81. Pipeline Intervention Gadgets, often referred to as PIGs, are utilized in the petro-chemical industry as a means of maintaining, inspecting and cleaning pipelines. Based upon several interviews, PIGs were not in use the day of the fire nor were they in use on the days leading up to the fire. The fire was not caused by a PIG or malfunction of a similar device.

*Minor Leak at a Flange or Connection*

82. Investigators considered the possibility of a relatively small leak at a pipeline connection point igniting and then growing in size to impact the tank, subsequently spreading to any vapors emanating from the ventilation points. However, a smaller leak would tend itself to easier suppression. Interviews indicate a more catastrophic event occurring based upon one witness in the vicinity hearing a loud mechanical noise followed shortly thereafter by a significant fire. SCADA data combined with the time stamp from surveillance video also do not support the growth of a smaller fire impinging upon other infrastructure and spreading the fire. The fire was not caused by a small leak that was ignited and then spreading by means of slow growth.

*Failure of Security Lighting*

83. Light fixtures in a hazardous vapors environment are required to be vapor and explosion proof. Vapors within flammable range may be ignited by the parting arc of electrical fixtures and switches when turned off. There were no light fixtures affixed to the exterior of the various tanks in the 80's. There were lights affixed to standards at various points in the 80's that were positioned between tanks. When facing the manifold of tank 80-8, there was a light standard to the left or west of that tank. Naphtha has a vapor density of 3.5 and Butane has a vapor density of 2.1, meaning the vapors are heavier than air and would follow the ground similar to a liquid. There are no indications that there were either issues with the lights or an observed failure. Had there been an issue, the naphtha vapors were well below the elevated fixtures even when accounting for diffusion in air. Also, the initial fire event was observed at the manifold which was remote from any light fixtures. The fire was not caused by a failure of the lighting fixtures in the tank farm.

ATF EF 3120.2 (10-2004)<br>For Official Use Only

Uncertified Copy of the Mary Jane Burgess District Clerk

| Title of Investigation: | Investigation Number: | Report Number: |
|---|---|---|
| ITC Tank Farm Fire | 782098-19-0029 | 2 |

*Incompatible Chemical Reaction*

84. A chemical reaction was considered as a cause for this fire. The 80's contained fifteen tanks which were identified as containing Pyrolysis Gasoline, Toluene, Base Oil, Naphtha, Xylene, and Gasoline Blend. Butane was being mixed into the Naphtha the weekend that the fire started. None of these chemicals are considered incompatible with others in the 80's and are often mixed with one another for various uses. The fire was not caused by an inadvertent chemical reaction.

*Intentionally Set Fire*

85. An intentionally set fire was considered as a potential ignition scenario. Based upon interviews, all gates were closed and locked to the 80's tank farm. There were no individuals observed by employees in or around the 80's that should not have been there. Nothing was noted on or around the manifold of tank 80-8 that would indicate criminal intent. This fire was not intentionally set.

*Electrical Distribution System*

86. The electrical distribution entrance to the 80's was at the south side near the truck manifold. Branch circuits were routed through underground conduit. All electrical service was contained in explosion/vapor proof housings. The only electrical connection at any given manifold was at the electric motor of the power frame. The large conduit and covering for the electric motor of 80-8 remained intact and with only minor thermal damage. The fire was not caused by a failure of the electrical distribution system up to the electric motor of the power frame.



Electrical Connection from Underground to Power Frame 80-8 Remains Intact Post-Fire

ATF EF 3120.2 (10-2004)
For Official Use Only

| Date of Investigation<br>ITC Tank Farm Fire | Investigation Number<br>782035-19-0029 | Report Number<br>2 |
|---|---|---|

## HYPOTHESES THAT COULD NOT BE DISCARDED:

87. Based upon witness statements and observations of the damage to the power frame, the motor was running just prior to the ignition of the fire. Further forensic testing by interested parties is necessary to determine if any of the following potential failure modes are relevant. Because future testing relates to civil and potential subrogation claims, it is out of the scope of public sector fire investigation.

88. The seal pot and coolant system connections were within inches of the pump housing. When an unidentified aspect within the power frame failed, it pulled the seal pot assembly away from the pump housing permitting a rapid release of product directly onto the ground and the power frame. It is not known if the flow of Naphtha with Butane was from tank 80-8; or residual product within the supply pipeline routed back to the ship channel.

89. Failure of the seal pot assembly could be related to improper or previously used parts utilized in the last maintenance processes. The observed pump was stamped "Gould XL TEX Pump 68146" whereas an MTX was mentioned as part of the rebuild as per work orders dated December 4, 2018. Investigators observed old parts on shelves mixed with new parts, with the old parts not necessarily labeled in any manner. If old or improper parts were utilized, it is not known if they were properly rated for the chemical exposure. The observed seal pot and bearing cover at power frame 80-8 obviously came loose, as did the mounting studs and nuts. It is not known if the nuts were under torqued and came off or if the mounting studs came free or even sheared.

90. The electric motor had thick cracks in the housing. A work order from December 16, 2018, states that the electrical breakers were "Dialed up to max both settings on breaker". The increased ampacity to the motor could result in over amperage so that the breakers would not trip upon a mechanical failure. This could manifest itself by allowing the motor to continue operating over increased friction generated at potentially failing seals and bearings. Or, after the seals came free shearing the coolant lines and subsequently pulling the shaft free from the pump housing the motor continued to run. This could generate friction, static or sparking at the failure point.

91. Potential ignition scenarios of the free flowing Naphtha enriched with Butane include frictional heat combined with the low auto ignition temperatures of the two fuels; spark from breakage of the power frame; arc from the electrical aspect of the power frame; as well as a static electrical discharge arc resulting from the free flowing and non-grounded liquid product.

## FIRE DYNAMICS:

92. Based upon SCADA data and a near instantaneous plume captured on video, a twenty-six minute time frame allowed Naphtha with Butane to free flow from the manifold of tank 80-8 into the 80-s tank yard. The initial plume is substantially higher than the tanks around it. This would be a result of a large quantity of product being released into the environment within the twenty-six minutes. The quantity of release is calculated at approximately 220.78 barrels or 9272.76 gallons. A smaller leak and release within that time frame would not have resulted in such a prominent fire plume and would have been a much more controllable fire.

Property of the Office of the Burglus District Court (watermark)

| Title of Investigation | Investigation Number | Report Number |
|---|---|---|
| ITC Tank Farm Fire | 782035-19-0029 | 2 |

## NUMBER OF FATALITIES AND/OR INJURIES:

93. There were neither injuries nor any fatalities associated with this incident.

## WEATHER:

94. Weather information for March 17, 2019, at approximately 0953 hours, was obtained via www.wunderground.com.

| Time | Temp | Dew Pt | Humidity | Pres | Visibility | Wind Dir | Wind Spd | Gust | Precip | Events |
|---|---|---|---|---|---|---|---|---|---|---|
| 9:53 AM | 62 F | 27 F | 26 % | NNE | 9 mph | 0 mph | 30.2 in | 0.0 in | 0.0 in | Mostly Cloudy |

95. A lightning strike analysis was conducted through CoreLogic / STRIKEnet®. The report reveals that there were no lightning strikes occurring on March 17, 2019 within five miles of the ITC 80's tank farm. This query is included as an attachment to this report.

## DOLLAR LOSS:

96. There was a significant monetary loss associated with this fire. No estimate of monetary loss was determined as part of the origin and cause investigation. Those figures have no direct relevance to the determination of origin and cause. Loss figures can be obtained from sources such as ITC, insurance adjusters, tax assessors, contractors and planning officials.

## INSURANCE:

97. Insurance information is available from Baker Botts, LLC which is the law firm representing ITC.

## SOURCES CONSULTED:

98. Vytenis Babrauskas, Ph.D., Ignition Handbook (Fire Science Publishers A Division of Fire Science and Technology Inc., 2003)

99. National Fire Protection Association®, Technical Committee on Fire Investigation, NFPA 921 Guide for Fire & Explosion Investigations, 2017 Edition (National Fire Protection Association, Quincy Massachusetts, 2017).

## NFPA 921 CONSIDERATIONS:

100.    4.1      Nature of Fire Investigations.  …The compilation of factual data, as well as an analysis of those facts…should rely on the systematic approach and attention to all relevant details.

101.    Every effort was made to diligently compile data as it related to the area of origin and the cause of the fire. The consensus of all investigators working at the fire scene was that the fire started at the manifold to tank 80-8.

102.   4.3      Relating Fire Investigation to the Scientific Method.  The scientific method is a principle of inquiry that forms a basis for legitimate scientific and engineering processes, including fire incident investigation.  It is applied using the following steps as outlined.



FIGURE 4.3  Use of the Scientific Method.

103.   The scientific method was followed during the course of this fire investigation.  After collecting and analyzing data, several hypotheses were developed, considered and discarded.  A final hypothesis could never be fully developed or tested by traditional law enforcement entities although the event is classified as Accidental.  The unusually large dollar loss and community impact requires that the interested parties undertake any additional and relevant testing deemed necessary as it relates to the civil impacts of the fire.

104.   4.6.2   Technical Review.  …A technical review can serve as an additional test of the various aspects of the investigator's work product.

105.   It is ATF policy that a technical review be conducted of all Certified Fire Investigator Origin and Cause reports.

106.   5.7.2.2 …a flammable gas-air mixture can auto-ignite…Open clouds of flammable gas-air mixtures can ignite on hot surfaces, with ignition occurring at lower temperatures for larger hot surface areas.

And

107.   5.7.3.3  Atomized liquids or mists … can be more easily ignited.

Unofficial Copy of Mailyn Burgess District Clerk

| Title of Investigation<br>ITC Tank Farm Fire | Investigation Number<br>782035-19-0029 | Report Number<br>2 |
|---|---|---|

108. The Auto Ignition Temperature (AIT) for NAPHTHA is 530°F and BUTANE is 689°F. Both AIT's are relatively low should friction from a faulty power frame drive up the surface temperature of the components.

109. 9.12.1.2   Common sources of static electricity include the following:
(5) Nonconductive liquids flowing through pipes or splashing, pouring or falling

110. SCADA data reveals that there was a significant free flow or loss of product prior to the fire. As the product was not contained within the designed liquid distribution system, static was likely generated from the ungrounded flow.

111. 9.12.5.1.1  With low relative humidities of approximately 30 percent or less...static accumulations are more likely.

112. As per a weather check for the time of the incident, relative humidity was below 30%, specifically at 26%.

113. 9.12.7 Investigating Static Electric Ignitions.   Often the investigation of possible static electric ignitions depends on the discovery and analysis of circumstantial evidence and the elimination of other ignition sources, rather than on physical evidence of arcing.

And

114. 9.12.7.5  ...seldom any physical evidence of the actual discharge arc...

115. One of the potential ignition scenarios is an accumulation of static electricity from the free flow of ungrounded flammable liquid. Should a discharge arc have occurred in an area within the flammable range, there will be no evidence to support the hypothesis.

116. 16.2.1  Physical evidence defined generally, is any physical or tangible item that tends to prove or disprove a particular fact or issue. Physical evidence at the fire scene may be relevant to the issues of origin, cause, spread, or the responsibility of the fire.

117. The condition of the power frame at tank 80-8 provided relevant evidence of a failure to include cracking of the electric motor and separation of the seal pot from the pump housing

118. 17.1.2  Determination of the origin of the fire involves the coordination of information derived from one or more of the following:
(1) Witness Information.
(2) Fire Patterns.
(3) Arc Mapping.
(4) Fire Dynamics.  The analysis of the fire dynamics, that is, the physics and chemistry of fire initiation and growth, and the interaction between the fire and the building's systems.

119. The above criteria were used except for arc mapping. Witness statements and early photographs place the fire originating at the manifold of tank 80-8. Fire patterns at this same manifold are markedly different than the thermal damage of other manifolds in the tank farm. Fire dynamics as well as SCADA data reveal a large loss of product just prior to the incident

ATF EF 3120.2 (10-2004)
For Official Use Only

| Title of Investigation<br>ITC Tank Farm Fire | Investigation Number<br>782035-19-0029 | Report Number<br>2 |
|---|---|---|

120.   18.3.1.6   Information should be sought from persons having knowledge about recent activities in the area of origin and what fuels should or should not have been present.

121.   Interviews yielded information of prior problems associated with the power frame of manifold 80-8. Information was also obtained about maintenance practices that potentially lacked sufficient quality control measures.

122.   19.3.2   Identify Source and Form of Heat of Ignition.   …document all heat producing items in the area of origin.

123.   As mentioned above, the heat of ignition producing aspects of this fire that were identified in the area of origin include frictional heat combined with product having a low AIT; spark from power frame breakage; arc from electrical aspect of the power frame, and/or a static arc discharge from flowing liquids.

124.   20.1.1   Accidental Fire Cause Classification.   Accidental fires involve all those for which the proven cause does not involve an intentional human act to ignite or spread fire into an area where the fire should not be.

125.   There was no data, facts, interviews, fire scene patterns, or video evidence to support an intentional criminal act of setting a fire, thus the accidental classification.

**DISPOSITION:**

126.   This fire investigation will be closed as a technical assist to the Harris County Fire Marshal's Office.


ATTACHMENTS:     Copy of CoreLogic / STRIKEnet® report
                 Copy of Midcoast Energy MSDS for Naphtha
                 Copy of Enbridge™ MSDS for Butane

2020-54452 / Court: 215 Dillard_Exhibit 2



# EXHIBIT B



## U.S. Chemical Safety and Hazard Investigation Board

### Storage Tank Fire at Intercontinental Terminals Company, LLC (ITC) Terminal

Deer Park, Texas | *Incident Date: March 17, 2019* | No. 2019-01-I-TX

# Factual Update

Published: October 30, 2019





**Storage Tank Fire at Intercontinental Terminals Company, LLC (ITC) Terminal**

Deer Park, Texas | *Incident Date: March 17, 2019* | No. 2019-01-I-TX



# U.S. Chemical Safety and Hazard Investigation Board

The U.S. Chemical Safety and Hazard Investigation Board (CSB) is an independent Federal agency whose mission is **to** ***drive chemical safety change through independent investigations to protect people and the environment.***

The CSB is a scientific investigative organization, not an enforcement or regulatory body. Established by the Clean Air Act Amendments of 1990, the CSB is responsible for determining accident causes, issuing safety recommendations, studying chemical safety issues, and evaluating the effectiveness of other government agencies involved in chemical safety. More information about the CSB is available at www.csb.gov.

The CSB makes public its actions and decisions through investigative publications, all of which may include safety recommendations when appropriate. Types of publications include:

**Investigation Reports:** formal, detailed reports on significant chemical incidents that include key findings, root causes, and safety recommendations.

**Investigation Digests:** plain-language summaries of Investigation Reports.

**Case Studies:** reports that examine fewer issues than Investigation Reports.

**Safety Bulletins:** short publications typically focused on a single safety topic.

**Hazard Investigations:** broader studies of significant chemical hazards.

**Safety Videos:** videos that animate aspects of an incident or amplify CSB safety messages.

CSB products can be freely accessed at www.csb.gov or obtained by contacting:

U.S. Chemical Safety and Hazard Investigation Board
Office of Congressional, Public, and Board Affairs
1750 Pennsylvania Ave NW, Suite 910
Washington, DC 20006
(202) 261-7600

No part of the conclusions, findings, or recommendation of the Board relating to any accidental release or the investigation thereof shall be admitted as evidence or used in any action or suit for damages arising out of any mater mentioned in such report. See 42 U.S.C. § 7412(r)(6)(G).



**U.S. Chemical Safety and Hazard Investigation Board**

**Storage Tank Fire at Intercontinental Terminals Company, LLC (ITC) Terminal**

Deer Park, Texas | Incident Date: March 17, 2019 | No. 2019-01-I-TX

# Table of Contents

ACRONYMS AND INITIALISMS ................................................................. 4

1.0   INCIDENT SUMMARY ..................................................................... 5

2.0   BACKGROUND ................................................................................ 6

   2.1   Intercontinental Terminals Company, LLC ............................... 6

   2.2   Naphtha-Butane Blending Operation ........................................ 7

3.0   INCIDENT DESCRIPTION ............................................................... 9

4.0   INCIDENT RESPONSE AND FIRE PROGRESSION ....................... 10

5.0   COMMUNITY IMPACT ................................................................... 14

6.0   POST-INCIDENT EVENTS ............................................................. 15

7.0   CSB INVESTIGATION PLANS ........................................................ 15

8.0   REFERENCES ................................................................................ 16

Unofficial Copy Office of Marilyn Burgess District Clerk



**U.S. Chemical Safety and Hazard Investigation Board**

**Storage Tank Fire at Intercontinental Terminals Company, LLC (ITC) Terminal**

Deer Park, Texas | Incident Date: March 17, 2019 | No. 2019-01-I-TX

## Acronyms and Initialisms

| | |
|---|---|
| **API** | American Petroleum Institute |
| **CIMA** | Channel Industries Mutual Aid |
| **CSB** | U.S. Chemical Safety and Hazard Investigation Board |
| **DCS** | Distributed Control System |
| **EBV** | Emergency Block Valves |
| **EIV** | Emergency Isolation Valves |
| **EPA** | Environmental Protection Agency |
| **ERT** | Emergency Response Team |
| **HCFMO** | Harris County Fire Marshal's Office |
| **ISD** | Independent School District |
| **ITC** | Intercontinental Terminals Company, LLC |
| **OSHA** | Occupational Safety and Health Administration |
| **PSI** | Pounds per square inch |
| **PSM** | Process Safety Management |
| **RMP** | Risk Management Plan |
| **ROSOV** | Remotely Operated Shutoff Valves |
| **TCEQ** | Texas Commission on Environmental Quality |
| **USCG** | U.S. Coast Guard |

Unofficial Copy Office of Marilyn Burgess District Clerk



**U.S. Chemical Safety and
Hazard Investigation Board**

**Storage Tank Fire at Intercontinental Terminals
Company, LLC (ITC) Terminal**

Deer Park, Texas | *Incident Date: March 17, 2019* | No. 2019-01-I-TX

## 1.0 Incident Summary

On Sunday, March 17, 2019, at approximately 10:00 am, a large fire erupted at the Intercontinental Terminals Company, LLC (ITC) bulk liquid storage terminal located in Deer Park, Texas (**Figure 1**). The fire originated in the vicinity of Tank 80-8, an 80,000-barrel aboveground atmospheric storage tank that held naphtha, a flammable liquid, typically used as a feedstock or blend stock for production of gasoline. ITC was unable to isolate or stop the release of naphtha product from the tank, and the fire continued to burn, intensify, and progressively involved additional tanks in the tank farm. The fire was extinguished on the morning of March 20, 2019.

The incident did not result in any injuries to either ITC personnel or emergency responders. However, the local community experienced disruptions, including several shelter-in-place[a] notifications, which prompted local schools and businesses either to close or operate under modified conditions.



**Figure 1.** ITC Fire. This photo shows the ITC fire involving tank 80-8 on March 17, 2019.  (Source: ABC13 Houston).

---

[a] A shelter-in-place is issued when it is safer for you to be sheltered indoors than for you to evacuate [20].



**U.S. Chemical Safety and Hazard Investigation Board**

**Storage Tank Fire at Intercontinental Terminals Company, LLC (ITC) Terminal**
Deer Park, Texas | Incident Date: March 17, 2019 | No. 2019-01-I-TX

## 2.0  Background

## 2.1  Intercontinental Terminals Company, LLC

Intercontinental Terminals Company, LLC (ITC), a subsidiary of Mitsui & Co. USA, Inc., is a terminal operator and storage facility that specializes in servicing the petrochemical industry [1]. The company was founded on February 24, 1972 [1]. ITC participates in the American Chemistry Council's Responsible Care® program as a Partner Company [2]. ITC currently owns and operates two terminals near Houston, Texas that service its customers along the U.S. Gulf Coast, including ITC Deer Park and ITC Pasadena.

The ITC Deer Park Terminal, where the incident occurred, is a bulk liquid storage terminal that has been servicing customers in and around Houston, Texas since 1972 (**Figure 2**) [1]. The terminal is equipped with both rail and truck access, five ship docks, ten barge docks, and multiple pipeline connections [1]. At the time of the incident the ITC Deer Park terminal contained 242 storage tanks, which equated to an overall capacity of 13.1 million barrels [1]. These storage tanks, which ranged in size from 8,000 to 160,000 barrels, were reportedly used to store petrochemical liquids and gases, fuel oil, bunker oil and distillates [1]. According to statistics provided on the company's website, the ITC Deer Park Terminal handles approximately 770 ships, 3,700 barges, 12,000 rail tank cars, and 33,600 cargo tank trucks annually, with a total throughput of roughly 144-million barrels annually [1].



**Figure 2.** ITC Deer Park Terminal Overall Plot Plan. (Source: ITC).



**U.S. Chemical Safety and
Hazard Investigation Board**

**Storage Tank Fire at Intercontinental Terminals
Company, LLC (ITC) Terminal**

Deer Park, Texas | *Incident Date: March 17, 2019* | No. 2019-01-I-TX

## 2.2 Naphtha-Butane Blending Operation

Tank 80-8 was an 80,000-barrel aboveground atmospheric storage tank. The tank went into service in 1972 and was original to the ITC Deer Park Terminal. Tank 80-8 was leased to another company for naphtha storage and for naphtha-butane blending operations. ITC injects butane into the naphtha product using external piping and equipment (piping manifold) (**Figure 3**) to increase the octane level of the fuel product.



**Figure 3.** Tank 80-8 Piping Manifold. This image taken before 2016 shows Tank 80-8 and its piping manifold. (Source: ITC).

Butane is incorporated into Tank 80-8 via truck deliveries by way of a fixed butane injection system. The butane injection system originates at the truck loading rack, located south-west of the tank farm, and terminates at an injection point in the circulation line (piping manifold) at Tank 80-8. The control system is designed so that the butane injection operation cannot be started unless the Tank 80-8 pump is turned on to ensure that product is circulating. When this condition is met, an ITC operator can open an actuator valve by pressing the ON button at the truck loading rack to allow the butane unloading to begin. The butane is unloaded from the cargo tank truck, travels through 4-inch piping, which reduces to 2-inch piping, to the product circulation line where it combines with the existing naphtha product. The pump stays on throughout the unloading activity and for several hours afterward in order facilitate the mixing of naphtha and butane (**Figure 4**). ITC did not equip the Tank 80-8 piping manifold with




**Storage Tank Fire at Intercontinental Terminals Company, LLC (ITC) Terminal**

Deer Park, Texas | *Incident Date: March 17, 2019* | No. 2019-01-I-TX

emergency or remotely operated isolation valves.[5] Such isolation valves could stop an uncontrolled release if for example, the pump or piping manifold were damaged.  Instead, to isolate equipment such as the pump, ITC operators must manually close both the Tank 80-8 supply valve to the pump and the return valve from the pump back to the tank. Under a major fire scenario resulting from a leak near this equipment, neither ITC operators nor emergency responders could access the area to close these manually operated valves.



Figure 4. Simplified schematic showing ITC's butane blending system. The arrows in the figure show the butane flow direction and the naphtha product circulation path through the piping. (Source: CSB).

The butane injection system was installed in August 2014. In January 2016, a revision was made to the system whereby ITC replaced most of the 2-inch piping with 4-inch piping to reduce the time required to offload trucks.[b]

---

[5] Emergency or remotely operated isolation valves are sometimes referred to as a remotely operated shutoff valves (ROSOVs), emergency isolation valves (EIV), or emergency block valves (EBV) [18], [17], and [19]. These valves are equipped with actuators and are configured to be quickly and reliably operated from a safe location, such as a well-sited control room [17, p. 7].

[b] Both Figure 3 and Figure   show the Tank 80-8 piping manifold before the January 2016 revision, when ITC replaced some of the 2-inch piping with 4-inch piping.



**U.S. Chemical Safety and
Hazard Investigation Board**

**Storage Tank Fire at Intercontinental Terminals
Company, LLC (ITC) Terminal**

Deer Park, Texas | Incident Date: March 17, 2019 | No. 2019-01-I-TX

## 3.0   Incident Description

On the evening of March 16, 2019, in preparation for two planned butane truck deliveries to Tank 80-8, the area operator assigned to the First & Second 80's tank farm (Operator 1) arrived at the Tank 80-8 piping manifold. Operator 1 aligned the piping manifold valves into the open or closed positions needed to prepare the pump for circulation. At approximately 6:54 pm, after confirming the valve positions were properly lined up, Operator 1 turned on the pump. The pump is situated within the Tank 80-8 piping manifold and must be manually turned on or off. After Operator 1 turned on the pump, he notified the operator at the truck loading rack (Operator 2) that the system was ready and that he could begin unloading butane. Following confirmation that the pump was operating, and the tank was lined up for receiving butane, Operator 2 initiated the unloading process at the truck loading rack, which allowed butane to flow from the truck into Tank 80-8 as shown in **Figure 4**.

The first of two scheduled butane deliveries began unloading at about 7:23 pm and was completed by about 8:15 pm, with approximately 170 barrels of butane added to Tank 80-8. The second butane delivery of roughly 193 barrels was unloaded between 9:29 pm and 10:29 pm. Following completion of these two butane deliveries, the pump remained on to circulate the product. ITC expected a ship to arrive the following day, and the company planned to transfer all the contents from Tank 80-8 to the ship.

On the morning of March 17, 2019, ITC distributed control system (DCS) data indicates a series of unanticipated changes to the monitored pump operating pressures and tank volume. These fluctuations suggest a mechanical problem developed in the pump circulation system. DCS data indicates that at approximately 7:25 am, the pump discharge pressure readings began to rise slowly; by around 8:45 am the pump discharge pressure reading had increased from 80 to 84 pounds per square inch (psi). Consistent with a naphtha product release, beginning at roughly 9:34 am, the recorded tank volume began to decrease steadily. At about the same time, the pump discharge pressure reading suddenly dropped back down to 80 psi. At about 9:45 am DCS data indicates a second sudden decrease in discharge pressure from 80 to 75 psi, and the recorded tank volume continued to decrease during this time. Between 9:34 and 10:01 am, the DCS data shows that the tank volume decreased by approximately 221 barrels. The tank farm was not equipped with a fixed gas detection system, so no alarms were activated to warn ITC personnel of a release. The reduction in tank level and volume that occurred as naphtha product released from Tank 80-8 did not trigger any alarms in the ITC control room. As a result, ITC personnel were unaware of the naphtha product release before the fire erupted.

At approximately 10:00 am, a large fire erupted in the vicinity of the Tank 80-8 piping manifold (**Figure 5**). Shortly thereafter, at 10:01 am, control system event logs indicate that the pump shut down, and then the Tank 80-8 equipment lost communication with the DCS. No further control system data for Tank 80-8 or the pump were available after this time.



**Storage Tank Fire at Intercontinental Terminals Company, LLC (ITC) Terminal**

Deer Park, Texas | *Incident Date: March 17, 2019* | No. 2019-01-I-TX



**Figure 5.** Tank 80-8 Piping Manifold. This photo shows the post-incident condition of the Tank 80-8 piping manifold. (Source: ITC).

## 4.0 Incident Response and Fire Progression

Within minutes of the fire erupting, members of the ITC Emergency Response Team (ERT) responded to the blaze. Initial response efforts focused on directing several water sources towards the Tank 80-8 piping manifold. ITC was a member of Channel Industries Mutual Aid (CIMA), a non-profit organization that combines firefighting and other emergency response capabilities of the refining and petrochemical industry in the Greater Houston Metropolitan area [3]. As a result of its CIMA membership, several neighboring companies who were also members of the CIMA organization responded to the ITC tank farm fire with emergency response resources, including personnel, and firefighting equipment and supplies.

A Unified Command was set up to oversee the coordinated response. The Unified Command included representatives from ITC, the U.S. Environmental Protection Agency (EPA), the Texas Commission on Environmental Quality (TCEQ), and the Harris County Fire Marshal's Office (HCFMO). The response also included support from other federal, state, and local officials.

Tank 80-8 was situated in the center of the facility's "First & Second 80's" tank farm (**Figure 6**), surrounded by other 80,000-barrel storage tanks. ITC was unable to stop or isolate the naphtha being released from Tank 80-8, so the fire continued to rage and intensify. On the evening of March 17, 2019, an adjacent tank west of Tank 80-8, became fully



**U.S. Chemical Safety and
Hazard Investigation Board**

**Storage Tank Fire at Intercontinental Terminals
Company, LLC (ITC) Terminal**

Deer Park, Texas | Incident Date: March 17, 2019 | No. 2019-01-I-TX

involved in the fire. Firefighters continued to apply water and firefighting foam to try to control the fire; however, wind changes caused the fire to continue to spread.



**Figure 6.** Plot Plan of Tank Farm. This image shows an excerpt from the overall plot plan for the ITC Deer Park, Texas terminal showing the location of the First and Second 80's Tank Farm.  (Source: ITC).



By the morning of March 18, 2019, four more storage tanks were on fire. All four of these tanks were located to the west of Tank 80-8. At this point ITC reached out to a third-party emergency response services provider, US Fire Pump [4], for assistance in extinguishing the fire. Two more storage tanks caught fire later that evening. Emergency responders continued their efforts to control the fire by applying water and firefighting foam.

At about 12:13 am on the morning of March 19, 2019, ITC signed a formal Emergency Response Agreement with US Fire Pump, at which time US Fire Pump began mobilizing resources from its headquarters in Holden, Louisiana to the ITC Deer Park terminal. Later that morning, due to the extreme demand, a temporary reduction in water pressure was experienced, and two more storage tanks caught fire. At approximately 6:48 am, US Fire Pump arrived on-scene. After completing an initial scene assessment, US Fire Pump developed a response plan, and commenced firefighting activities by around 1:00 pm.

By approximately 3:03 am on Wednesday, March 20, 2019, ITC, with assistance from CIMA and US Fire Pump, had successfully extinguished the tank farm fire at the ITC Deer Park terminal (**Figure 7**). The fire did not spread outside the perimeter of the First & Second 80's tank farm.

On March 22, 2019, at approximately 12:15 pm, a section of the tank farm dike wall failed, releasing a mixture of chemicals from the tanks, water, and firefighting foam to the surrounding waterways, including the Houston ship channel. Additionally, a small secondary fire erupted in the tank farm at around 3:45 pm that day, which was extinguished within a couple of hours.



**Storage Tank Fire at Intercontinental Terminals Company, LLC (ITC) Terminal**

Deer Park, Texas | *Incident Date: March 17, 2019* | No. 2019-01-I-TX



**Figure 7**. First & Second 80's Tank Farm. This photo shows the fire raging on Tuesday, March 19, 2019, and fully extinguished on Wednesday, March 20, 2019. (Source: KHOU 11 News).


**U.S. Chemical Safety and
Hazard Investigation Board**

**Storage Tank Fire at Intercontinental Terminals
Company, LLC (ITC) Terminal**

Deer Park, Texas | *Incident Date: March 17, 2019* | No. 2019-01-I-TX

# 5.0 Community Impact

The ITC incident impacted the local community [5]. These impacts included, but were not limited to the following:[a]

- Sunday, March 17, 2019
  - 11:21 am – City of Deer Park issued its first shelter-in-place [6] for a portion of the community.
  - 12:50 pm – City of Deer Park expanded the shelter-in-place to include the entire city.
  - 12:58 pm – Highway 225 closed in both directions between Beltway 8 and Independence Parkway.

- Monday, March 18, 2019
  - 6:00 am – Deer Park lifted the previous day's shelter in-in-place and reopened Highway 22.
  - School Districts closed: Deer Park Independent School District (ISD) and La Porte ISD [7].

- Wednesday, March 20, 2019
  - School Districts closed: Channelview ISD, Deer Park ISD, Galena Park ISD, La Porte ISD, Pasadena ISD, and Sheldon ISD. [8]

- Thursday, March 21, 2019
  - 4:49 am – City of Deer Park issued a second shelter-in-place due to reports of benzene and other volatile organic compounds (VOCs) within the city limits; shelter-in-place lifted at 11:40 am.
  - School Districts closed: Channelview ISD, Deer Park ISD, Galena Park ISD, La Porte ISD, Pasadena ISD, and Sheldon ISD.

- Friday, March 22, 2019
  - School Districts closed: Deer Park ISD, La Porte ISD, Pasadena ISD [9].
  - The U.S. Coast Guard (USCG) closed a seven-mile stretch of the Houston Ship Channel adjacent to the ITC Deer Park terminal following a breach in the containment wall surrounding the tank farm that allowed contaminants to enter the waterway [10].
  - Harris County Precinct Two closed eight waterfront parks [11].
  - City of La Porte closed all waterfront parks in La Porte.[b]

- Saturday, March 23, 2019
  - Independence Parkway, the San Jacinto Monument, Battleship Texas State Park, and Lynchburg Ferry crossing closed due to the detection of intermittent levels of VOCs.

---

[a] All times listed are approximate

[b] La Porte waterfront parks remained closed until April 16, 2019.



**U.S. Chemical Safety and Hazard Investigation Board**

**Storage Tank Fire at Intercontinental Terminals Company, LLC (ITC) Terminal**

Deer Park, Texas | *Incident Date: March 17, 2019* | No. 2019-01-I-TX

# 6.0 Post-Incident Events

Following the incident, the Occupational Safety and Health Administration (OSHA) issued citations to ITC that included violations of the Process Safety Management (PSM) Standard [12].[a] The PSM Standard contains minimum requirements for the management of hazards associated with processing highly hazardous chemicals. The purpose of these requirements is to prevent or minimize the consequences of any catastrophic release of these chemicals. As defined by OSHA, a "process" is defined as "any activity involving a highly hazardous chemical including any use, storage, manufacturing, handling, or the on-site movement of such chemicals, or combination of these activities."[b]

Additionally, portions of the ITC Deer Park Terminal are subject to the U.S. Environmental Protection Agency (EPA) Risk Management Plan (RMP) Rule [13]. The RMP Rule requires facilities that use extremely hazardous substances to, among other things, develop a Risk Management Plan that identifies the potential effects of a chemical accident, identifies the steps the facility is taking to prevent an incident, and spells out emergency response procedures should an incident occur.

# 7.0   CSB Investigation Plans

The CSB is continuing to conduct its investigation of this incident. Components from the Tank 80-8 piping manifold were taken to a secure storage facility, where CSB completed an initial visual inspection of the piping and pump. Further testing will be conducted. Among the areas of interest, the CSB plans to identify potential naphtha product release points and ignition sources, determine why the naphtha product release was not detected prior to ignition and why the release was not isolated post-fire. The CSB will also look into the emergency response to determine why prolonged emergency response efforts were necessary to control and ultimately extinguish the fire. To accomplish this, the CSB still needs to collect additional emergency response evidence including various incident command records, photos, videos, and drone footage.  The CSB also plans to look into the impact that this incident had on the local community. A detailed final report will be published at the conclusion of the investigation, which will include additional information, analysis, findings, and safety recommendations, as appropriate.

---

[a] 29 C.F.R. §1910.119
[b] 29 C.F.R. §1910.119(b).





**U.S. Chemical Safety and Hazard Investigation Board**

**Storage Tank Fire at Intercontinental Terminals Company, LLC (ITC) Terminal**

Deer Park, Texas | *Incident Date: March 17, 2019* | No. 2019-01-I-TX

## 8.0 References

[1] "Intercontinental Terminals Company (ITC)," [Online]. Available: https://www.iterm.com/.

[2] "ACC Responsible Care," [Online]. Available: https://responsiblecare.americanchemistry.com/.

[3] "Channel Industries Mutual Aid (CIMA) Texas," [Online]. Available: http://www.cimatexas.org.

[4] "US Fire Pump," [Online]. Available: http://www.usfirepump.com.

[5] City of Deer Park, "City of Deer Park - ITC Fire Updates," [Online]. Available: http://www.deerparktx.gov/1778/ITC-Fire.

[6] "City of Deer Park - Shelter in Place," [Online]. Available: http://www.deerparkepc.org/1722/Shelter-In-Place.

[7] "KPRC Click2Houston," 18 March 2019. [Online]. Available: https://www.click2houston.com/news/la-porte-isd-cancels-classes-wednesday-due-to-deer-park-fire.

[8] "Houston Business Journal," 20 March 2019. [Online]. Available: https://www.bizjournals.com/houston/news/2019/03/20/itc-deer-park-fire-near-houston-extinguished-some.html.

[9] "KPRC Click2Houston," 21 March 2019. [Online]. Available: https://www.click2houston.com/news/deer-park-la-porte-school-districts-to-be-closed-friday-due-to-deer-park-fire.

[10] "Houston Chronicle," 22 March 2019. [Online]. Available: https://www.houstonchronicle.com/business/bizfeed/article/Spill-at-ITC-in-Deer-Park-closes-7-mile-stretch-13709407.php.

[11] "ABC13 Houston News," 23 March 2019. [Online]. Available: https://abc13.com/clear-lake-park-closing-due-to-incidents-at-the-itc-facility-/5213359/.

[12] "U.S. Department of Labor, Occupational Safety and Health Administration (OSHA)," [Online]. Available: https://www.osha.gov/laws-regs/regulations/standardnumber/1910/1910.119.

[13] "U.S. Environmental Protection Agency (EPA)," [Online]. Available: https://www.epa.gov/rmp/risk-management-plan-rmp-rule-overview.

[14] U.S. Chemical Safety Board, "Board Order 22: Recommendations Program," [Online]. Available: https://www.csb.gov/assets/record/csb_board_order_022_final_20161.pdf.



U.S. Chemical Safety and
Hazard Investigation Board

[15] U.S. Chemical Safety Board, "Board Order 40: Investigation Program," [Online]. Available: https://www.csb.gov/assets/record/board_order_040_approved_2_14_17.pdf.

[16] "ABC13 Houston Eyewitness News," 22 March 2019. [Online]. Available: https://abc13.com/education/school-closings-due-to-itc-incident-in-deer-park/5207006/.

[17] USCSB, "Investigation Report | LPG Fire at Valero - McKee Refinery | Valero Energy Corporation | Sunray, Texas | February 16, 2007," July 2008. [Online]. Available: https://www.csb.gov/file.aspx?DocumentId=5672. [Accessed 17 August 2019].

[18] Health and Safety Executive (HSE), "Remotely Operated Shutoff Valves (ROSOVs) | HSG244," 2004. [Online]. Available: http://www.hse.gov.uk/pubns/books/hsg244.htm. [Accessed 17 August 2019].

[19] Center for Chemical Process Safety (CCPS), "Remote Isolation and Shut Off," [Online]. Available: https://www.aiche.org/ccps/topics/elements-process-safety/understand-hazard-risk/hazard-identification-and-risk-analysis/remote-isolation-and-shut. [Accessed 28 October 2019].

[20] The City of Houston, "Are You Ready? Preparing Now Keeps You Safe Tomorrow," [Online]. Available: https://www.houstontx.gov/oem/pages/preparedness/index.html. [Accessed 28 October 2019].



**Storage Tank Fire at Intercontinental Terminals Company, LLC (ITC) Terminal**

Deer Park, Texas | *Incident Date: March 17, 2019* | No. 2019-01-I-TX



# U.S. Chemical Safety and Hazard Investigation Board

Members of the U.S. Chemical Safety and Hazard Investigation Board:

Kristen Kulinowski, Ph.D.
Interim Executive Chairperson

Manuel Ehrlich
Member

Richard Engler
Member

Unofficial Copy Office of Marilyn Burgess District Clerk

2020-54452 / Court: 215

Dillard_Exhibit 3



# EXHIBIT C

**U.S. Department of Labor**  Occupational Safety and Health Administration
17625 El Camino Real
Suite 400
Houston, TX 77058



09/16/2019

Intercontinental Terminals Company LLC, dba ITC
P.O. Box 698
Deer Park, TX 77536

Dear Employer,

Enclosed you will find citations for violations of the Occupational Safety and Health Act of 1970 (the Act) which may have accompanying proposed penalties. Also enclosed is a booklet entitled, "Employer Rights and Responsibilities Following a Federal OSHA Inspection", (OSHA 3000-04R) revised 2018, which explains your rights and responsibilities under the Act. If you have any questions about the enclosed citations and penalties, I would welcome further discussions in person or by telephone. Please contact me at 281-286-0583.

You will note on page 2 of the booklet that, for violations which you do not contest, you must (1) notify this office promptly by letter that you have taken appropriate corrective action within the time set forth on the citation; and (2) pay any penalties assessed. Please inform me of the abatement steps you have taken and of their dates together with adequate supporting documentation; e.g., drawings or photographs of corrected conditions, purchase/work orders related to abatement actions, air sampling results. This information will allow us to close the case.

As indicated on page 3 of the booklet, you may request an informal conference with me during the 15-working-day notice of contest period. During such an informal conference you may present any evidence or views which you believe would support an adjustment to the citation or the penalty.

If you are considering a request for an informal conference to discuss any issues related to this Citation and Notification of Penalty, you must take care to schedule it early enough to allow time to contest after the informal conference, should you decide to do so. Please keep in mind that a written letter of intent to contest must be submitted to the Area Director within 15 working days of your receipt of the citation. The running of this contest period is not interrupted by an informal conference.

If you decide to request an informal conference, please complete the attached notice at the bottom of this letter and post it next to the Citations as soon as the time, date and the place of the informal conference have been determined. Be sure to bring to the conference with you any and all supporting documentation of existing conditions as well as of any abatement steps taken thus far. If conditions warrant, we can enter into an informal settlement agreement which amicably resolves this matter without litigation or contest.

**U.S. Department of Labor**
Occupational Safety and Health Administration
17625 El Camino Real
Suite 400
Houston, TX 77058



---

# Citation and Notification of Penalty

---

**To:**
Intercontinental Terminals Company LLC, dba ITC
and its successors
P.O. Box 698
Deer Park, TX 77536

**Inspection Number:** 1386420
**Inspection Date(s):** 03/20/2019 - 03/20/2019
**Issuance Date:** 09/16/2019

**Inspection Site:**
1943 Independence Parkway South
La Porte, TX 77571

*The violation(s) described in this Citation and Notification of Penalty is (are) alleged to have occurred on or about the day(s) the inspection was made unless otherwise indicated within the description given below.*

---

This Citation and Notification of Penalty (this Citation) describes violations of the Occupational Safety and Health Act of 1970. The penalty(ies) listed herein is (are) based on these violations. You must abate the violations referred to in this Citation by the dates listed and pay the penalties proposed, unless within 15 working days (excluding weekends and Federal holidays) from your receipt of this Citation and Notification of Penalty **you either call to schedule an informal conference (see paragraph below)** or you mail a notice of contest to the U.S. Department of Labor Area Office at the address shown above. Please refer to the enclosed booklet (OSHA 3000) which outlines your rights and responsibilities and which should be read in conjunction with this form. Issuance of this Citation does not constitute a finding that a violation of the Act has occurred unless there is a failure to contest as provided for in the Act or, if contested, unless this Citation is affirmed by the Review Commission or a court.

**Posting** - The law requires that a copy of this Citation and Notification of Penalty be posted immediately in a prominent place at or near the location of the violation(s) cited herein, or, if it is not practicable because of the nature of the employer's operations, where it will be readily observable by all affected employees. This Citation must remain posted until the violation(s) cited herein has (have) been abated, or for 3 working days (excluding weekends and Federal holidays), whichever is longer.

**Informal Conference** - An informal conference is not required. However, if you wish to have such a conference you may request one with the Area Director during the 15 working day contest period by calling 281-286-0583. During such an informal conference you may present any evidence or views which you believe would support an adjustment to the citation(s) and/or penalty(ies).

If you are considering a request for an informal conference to discuss any issues related to this Citation and Notification of Penalty, you must take care to schedule it early enough to allow time to contest after the informal conference, should you decide to do so. Please keep in mind that a written letter of intent to contest must be submitted to the Area Director within 15 working days of your receipt of this Citation. The running of this contest period is not interrupted by an informal conference.

If you decide to request an informal conference, please complete, remove and post the Notice to Employees next to this Citation and Notification of Penalty as soon as the time, date, and place of the informal conference have been determined. Be sure to bring to the conference any and all supporting documentation of existing conditions as well as any abatement steps taken thus far. If conditions warrant, we can enter into an informal settlement agreement which amicably resolves this matter without litigation or contest.

**Right to Contest** – You have the right to contest this Citation and Notification of Penalty. You may contest all citation items or only individual items. You may also contest proposed penalties and/or abatement dates without contesting the underlying violations. **Unless you inform the Area Director in writing that you intend to contest the citation(s) and/or proposed penalty(ies) within 15 working days after receipt, the citation(s) and the proposed penalty(ies) will become a final order of the Occupational Safety and Health Review Commission and may not be reviewed by any court or agency.**

**Penalty Payment** – Penalties are due within 15 working days of receipt of this notification unless contested. (See the enclosed booklet and the additional information provided related to the Debt Collection Act of 1982.) Make your check or money order payable to "DOL-OSHA". Please indicate the Inspection Number on the remittance. You can also make your payment electronically on www.pay.gov. On the left side of the pay.gov homepage, you will see an option to Search Public Forms. Type "OSHA" and click Go. From the results, click on **OSHA Penalty Payment Form**. The direct link is:

<u>https://www.pay.gov/paygov/forms/formInstance.html?agencyFormId=53090334</u>.

You will be required to enter your inspection number when making the payment. Payments can be made by credit card or Automated Clearing House (ACH) using your banking information. Payments of $25,000 or more require a Transaction ID, and also must be paid using ACH. If you require a Transaction ID, please contact the OSHA Debt Collection Team at (202) 693-2170.

OSHA does not agree to any restrictions or conditions or endorsements put on any check, money order, or electronic payment for less than the full amount due, and will process the payments as if these restrictions or conditions do not exist.

**Notification of Corrective Action** – For each violation which you do not contest, you must provide *abatement certification* to the Area Director of the OSHA office issuing the citation and identified above. This abatement certification is to be provided by letter within 10 calendar days after each abatement date. Abatement certification includes the date and method of abatement. If the citation indicates that the violation was corrected during the inspection, no abatement certification is required for that item. The abatement certification letter must be posted at the location where the violation appeared and the corrective action took place or employees must otherwise be effectively informed about abatement activities. A sample abatement certification letter is enclosed with this Citation. In addition, where the citation indicates that *abatement documentation* is necessary, evidence of the purchase or repair of equipment, photographs or video, receipts, training records, etc., verifying that abatement has occurred is required to be provided to the Area Director.

**Employer Discrimination Unlawful** – The law prohibits discrimination by an employer against an employee for filing a complaint or for exercising any rights under this Act. An employee who believes that he/she has been discriminated against may file a complaint no later than 30 days after the discrimination occurred with the U.S. Department of Labor Area Office at the address shown above.

**Employer Rights and Responsibilities** – The enclosed booklet (OSHA 3000) outlines additional employer rights and responsibilities and should be read in conjunction with this notification.

**Notice to Employees** – The law gives an employee or his/her representative the opportunity to object to any abatement date set for a violation if he/she believes the date to be unreasonable. The contest must be mailed to the U.S. Department of Labor Area Office at the address shown above and postmarked within 15 working days (excluding weekends and Federal holidays) of the receipt by the employer of this Citation and Notification of Penalty.

**Inspection Activity Data** – You should be aware that OSHA publishes information on its inspection and citation activity on the Internet under the provisions of the Electronic Freedom of Information Act. The information related to these alleged violations will be posted when our system indicates that you have received this citation. You are encouraged to review the information concerning your establishment at www.osha.gov. If you have any dispute with the accuracy of the information displayed, please contact this office.

Unofficial Copy Office of Marilyn Burgess District Clerk

**U.S. Department of Labor**
Occupational Safety and Health Administration



## NOTICE TO EMPLOYEES OF INFORMAL CONFERENCE

An informal conference has been scheduled with OSHA to discuss the citation(s) issued on

09/16/2019. The conference will be held by telephone or at the OSHA office located at 17625

El Camino Real, Suite 400, Houston, TX 77058 on _____ at

_____. Employees and/or representatives of employees have a right to attend an

informal conference.

Unofficial Copy Office of Marilyn Burgess District Clerk

## CERTIFICATION OF CORRECTIVE ACTION WORKSHEET

**Inspection Number: 1386420**

Company Name: Intercontinental Terminals Company LLC, dba ITC
Inspection Site: 1943 Independence Parkway South, La Porte, TX 77571
Issuance Date: 09/16/2019

List the specific method of correction for each item on this citation in this package that does not read "Corrected During Inspection" and return to: **U.S. Department of Labor – Occupational Safety and Health Administration, 17625 El Camino Real, Suite 400, Houston, TX 77058**

Citation Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Citation Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Citation Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Citation Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Citation Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

Citation Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____

I certify that the information contained in this document is accurate and that the affected employees and their representatives have been informed of the abatement.

_____        _____
Signature                                                        Date

_____        _____
Typed or Printed Name                                    Title

NOTE: 29 USC 666(g) whoever knowingly makes any false statements, representation or certification in any application, record, plan or other documents filed or required to be maintained pursuant to the Act shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment of not more than 6 months or both.

POSTING: A copy of completed Corrective Action Worksheet should be posted for employee review

**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number: 1386420
Inspection Date(s): 03/20/2019 - 03/20/2019
Issuance Date: 09/16/2019



**Citation and Notification of Penalty**

**Company Name:** Intercontinental Terminals Company LLC, dba ITC
**Inspection Site:** 1943 Independence Parkway South, La Porte, TX 77571

---

**Citation 1 Item 1**   Type of Violation: **Serious**

29 CFR 1910.119(d)(3)(ii): The employer did not document that equipment complies with recognized and generally accepted good engineering practices.

On or about March 17, 2019, at the Intercontinental Terminals Company, LLC facility located in Pasadena, Texas, the employer failed to document that it complied with Recognized and Generally Accepted Good Engineering Practices (RAGAGEP) such as, but not limited to NFPA 11 "Low, Medium, and high-Expansion foam systems" and NFPA 16 "Standard for the installation of Foam-Water Sprinkler and Foam-Water Spray Systems". The employer failed to ensure the foam generating equipment such as the foam-concentrate tank and pump were constructed to resist or located so that they were protected against exposure to fire.

**ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM**

Date By Which Violation Must be Abated:                                 11/01/2019
Proposed Penalty:                                                                      $13260.00

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

Citation and Notification of Penalty                          Page 6 of 11                          OSHA-2

**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number: 1386420
Inspection Date(s): 03/20/2019 - 03/20/2019
Issuance Date: 09/16/2019



**Citation and Notification of Penalty**

**Company Name:** Intercontinental Terminals Company LLC, dba ITC
**Inspection Site:** 1943 Independence Parkway South, La Porte, TX 77571

---

Citation 1 Item 2    Type of Violation: **Serious**

29 CFR 1910.119(j)(2): The employer did not implement written procedures to maintain the on-going integrity of process equipment:

On or about March 17, 2019, in the 2nd 80s tank farm, the employer failed to implement written procedures, including those outlined in the ITC Mechanical Integrity Program, to maintain the on going fitness for service of Tank 80-8 injection/recirculation piping and components. This condition exposes employees to fire hazards.

ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

Date By Which Violation Must be Abated:                                    11/01/2019
Proposed Penalty:                                                         $13260.00

*Unofficial Copy Office of Marilyn Burgess District Clerk*

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

Citation and Notification of Penalty                        Page 7 of 11                        OSHA-2

**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number: 1386420
Inspection Date(s): 03/20/2019 - 03/20/2019
Issuance Date: 09/16/2019



---

**Citation and Notification of Penalty**

**Company Name:** Intercontinental Terminals Company LLC, dba ITC
**Inspection Site:** 1943 Independence Parkway South, La Porte, TX 77571

---

<u>Citation 1 Item 3</u>    Type of Violation: **Serious**

29 CFR 1910.119(j)(4)(ii): Inspection and testing procedures did not follow recognized and generally accepted good engineering practices.

On or about March 17, 2019, and times prior thereto, at the Intercontinental Terminals Company facility located in La Porte, Texas, the employer failed to perform inspections and test in accordance with Recognized and Generally  Accepted Good Engineering Practices (RAGAGEP), such as but not limited to API 570 "Piping Inspection Code" nd API RP 574 " Inspection Practices for Piping System Components". The employer failed to perform inspection and tests on Tank 80-8 cargo pump discharge circulation piping and injection point process piping.

ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

Date By Which Violation Must be Abated:                                          11/01/2019
Proposed Penalty:                                                                           $13260.00

Unofficial Copy Office of Maringedes District Clerk

---

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

Citation and Notification of Penalty                     Page 8 of 11                                OSHA-2

**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number: 1386420
Inspection Date(s): 03/20/2019 - 03/20/2019
Issuance Date: 09/16/2019



### Citation and Notification of Penalty

**Company Name:** Intercontinental Terminals Company LLC, dba ITC
**Inspection Site:** 1943 Independence Parkway South, La Porte, TX 77571

Citation 1 Item 4    Type of Violation: **Serious**

29 CFR 1910.119(j)(5): The employer did not correct deficiencies in equipment that were outside acceptable limits:

On or about March 17, 2019, at the Intercontinental Terminals Company facility located in La Porte, Texas, the employer failed to correct deficiencies on process equipment, when process piping that was below its minimum required thickness was used to inject and mix Butane with Naphtha in order to raise the octane levels in Tank 80-8.

### ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

Date By Which Violation Must be Abated:                11/01/2019
Proposed Penalty:                                      $13260.00

**Mark R. Briggs**
Area Director

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

Citation and Notification of Penalty                Page 9 of 11                OSHA-2

**U.S. Department of Labor**
Occupational Safety and Health Administration
17625 El Camino Real
Suite 400
Houston, TX 77058



# INVOICE /
# DEBT COLLECTION NOTICE

| | |
|---|---|
| Company Name: | Intercontinental Terminals Company LLC, dba ITC |
| Inspection Site: | 1943 Independence Parkway South, La Porte, TX 77571 |
| Issuance Date: | 09/16/2019 |

| | |
|---|---|
| Summary of Penalties for Inspection Number | 1386420 |
| Citation 1, Serious | $53040.00 |
| TOTAL PROPOSED PENALTIES | $53040.00 |

To avoid additional charges, please remit payment promptly to this Area Office for the total amount of the uncontested penalties summarized above. Make your check or money order payable to: "DOL-OSHA". Please indicate OSHA's Inspection Number (indicated above) on the remittance. You can also make your payment electronically on **www.pay.gov**. On the left side of the pay.gov homepage, you will see an option to Search Public Forms. Type "OSHA" and click Go. From the results, click on **OSHA Penalty Payment Form**. The direct link is **https://www.pay.gov/paygov/forms/formInstance.html?agencyFormId=53090334**. You will be required to enter your inspection number when making the payment. Payments can be made by credit card or Automated Clearing House (ACH) using your banking information. Payments of $25,000 or more require a Transaction ID, and also must be paid using ACH. If you require a Transaction ID, please contact the OSHA Debt Collection Team at (202) 693-2170.

OSHA does not agree to any restrictions or conditions or endorsements put on any check, money order, or electronic payment for less than the full amount due, and will cash the check or money order as if these restrictions or conditions do not exist.

If a personal check is issued, it will be converted into an electronic fund transfer (EFT). This means that our bank will copy your check and use the account information on it to electronically debit your account for the amount of the check. The debit from your account will then usually occur within 24 hours and will be shown on your regular account statement. You will not receive your original check back. The bank will destroy your original check, but will keep a copy of it. If the EFT cannot be completed because of insufficient funds or closed account, the bank will attempt to make the transfer up to 2 times.

Pursuant to the Debt Collection Act of 1982 (Public Law 97-365) and regulations of the U.S. Department of Labor (29 CFR Part 20), the Occupational Safety and Health Administration is required to assess interest, delinquent charges, and administrative costs for the collection of delinquent penalty debts for violations of the Occupational Safety and Health Act.

**Interest**: Interest charges will be assessed at an annual rate determined by the Secretary of the Treasury on all penalty debt amounts not paid within one month (30 calendar days) of the date on which the debt amount becomes due and payable (penalty due date). The current interest rate is one percent (1%). Interest will accrue from the date on which the penalty amounts (as proposed or adjusted) become a final order of the Occupational Safety and Health Review Commission (that is, 15 working days from your receipt of the Citation and Notification of Penalty), unless you file a notice of contest. Interest charges will be waived if the full amount owed is paid within 30 calendar days of the final order.

**Delinquent Charges**: A debt is considered delinquent if it has not been paid within one month (30 calendar days) of the penalty due date or if a satisfactory payment arrangement has not been made. If the debt remains delinquent for more than 90 calendar days, a delinquent charge of six percent (6%) per annum will be assessed accruing from the date that the debt became delinquent.

**Administrative Costs**: Agencies of the Department of Labor are required to assess additional charges for the recovery of delinquent debts. These additional charges are administrative costs incurred by the Agency in its attempt to collect an unpaid debt. Administrative costs will be assessed for demand letters sent in an attempt to collect the unpaid debt.

_Mark R. Briggs_
Area Director

9/16/19
Date

# 2020-54452 / Court: 215

Dillard_Exhibit 4

## EXECUTIVE SUMMARY - ENFORCEMENT MATTER
**DOCKET NO.:** 2006-1017-AIR-E    **TCEQ ID:** RN100210806    **CASE NO.:** 30290
**RESPONDENT NAME:** Intercontinental Terminals Company

### ORDER TYPE:

| | | | |
|---|---|---|---|
| X 1660 AGREED ORDER | __FINDINGS AGREED ORDER | __AMENDED ORDER | __IMMI ENDA |
| __SHUTDOWN ORDER | __FINDINGS DEFAULT ORDER | __EMERGENCY ORDER | |

### CASE TYPE:

| | | | |
|---|---|---|---|
| __AGRICULTURE | X AIR | __INDUSTRIAL AND HAZARDOUS WASTE | __MUNIC |
| __OCCUPATIONAL CERTIFICATION | __PETROLEUM STORAGE TANKS | __PUBLIC WATER SUPPLY | __RADIOA |
| __MULTI-MEDIA (check all that apply) | __SEWAGE SLUDGE | __UNDERGROUND INJECTION CONTROL | __USED O |
| __USED OIL FILTER | __WATER QUALITY | | |

**SITE WHERE VIOLATION(S) OCCURRED:** Intercontinental Terminals Deer Park Terminal, 1943 Battleground Road, La Porte, Harris Co

**TYPE OF OPERATION:** Multi-product bulk liquid storage and distribution terminal

**SMALL BUSINESS:** ____ Yes   X No

**OTHER SIGNIFICANT MATTERS:** There are no complaints. There is no record of additional pending enforcement actions regarding this fa

**INTERESTED PARTIES:** No one other than the ED and the Respondent has expressed an interest in this matter.

**COMMENTS RECEIVED:** The *Texas Register* comment period expired on December 18, 2006. No comments were received.

**CONTACTS AND MAILING LIST:**
    **TCEQ Attorney/SEP Coordinator:** None
    **TCEQ Enforcement Coordinator:** Ms. Trina Grieco, Enforcement Division, Enforcement Section III, MC R-13, (210) 403-4006; Mr. S
    MC 219, (512) 239-1896
    **TCEQ Field Investigator:** Mr. Alan Mallory, Houston Regional Office, MC R-12, (713) 767-3764
    **Respondent:** Mr. Carl Holley, Environmental Health & Safety Manager, Intercontinental Terminals Company, P.O. Box 698, Deer Par
        Mr. R. L. Commander, Senior Vice President-Operations, Intercontinental Terminals Company, P.O. Box 698, Deer Park
    **Respondent's Attorney:** Not represented by counsel on this enforcement matter

Attachment: Site Compliance History

EXHIBIT A-1

RESPONDENT'S NAME: Intercontinental Terminals Company

DOCKET NO.: 2006-1017-AIR-E

**VIOLATION SUMMARY CHART:**

| VIOLATION INFORMATION | PENALTY CONSIDERATIONS | CORRECTIVE |
|---|---|---|
| **Type of Investigation:** ___ Complaint ___ Routine ___ Enforcement Follow-up __X__ Records Review | **Total Assessed:** $9,500 | **Ordering Provisions:** |
| **Date of Complaint Relating to this Case:** None | **Total Deferred:** $1,900 __X__ Expedited Settlement | The Order will require the |
| **Date of Investigation Relating to this Case:** April 20, 2006 | ___ Financial Inability to Pay | a. Within 30 days after the implement measures desig to the same cause; and |
| **Date of NOE Relating to this Case:** July 5, 2006 (NOE) | **SEP Conditional Offset:** $0 | b. Within 45 days after the written certification to den Provision a. |
| **Background Facts:** This was a routine investigation. One violation was documented. | **Total Paid to General Revenue:** $7,600 | |
| | **Site Compliance History Classification:** ___High _X_ Avg. ___Poor | |
| **AIR** | **Person Compliance History Classification:** ___High _X_ Avg. ___Poor | |
| Failed to prevent unauthorized emissions and to route all emissions from Storage Tank 50-2 to the TK 50-2 Flare, emissions point number ("EPN") FL-50-2 (Incident 71787). Specifically, 3,425 pounds of the hazardous air pollutant and highly reactive volatile organic compound 1,3-butadiene were released from the Tank 50-2 Emergency Atmospheric relief valve, EPN TANK 50-2 PSV A, during an emissions event which occurred on February 15, 2006 and lasted 4 minutes. These emissions are not authorized by the permit. Since the emissions event was avoidable, Intercontinental Terminals Company failed to meet the demonstration criteria for an affirmative defense in 30 TEX. ADMIN. CODE § 101.222 [30 TEX. ADMIN. CODE § 116.115(c), Air Permit No. 1078, Special Conditions 5 and 14 and TEX. HEALTH & SAFETY CODE § 382.085(b)]. | **Major Source:** _X_ Yes ___ No **Applicable Penalty Policy:** September 2002 | |

Attachment: Site Compliance History

EXHIBIT A-1
Policy Revision 2 (September 2002)

**TCEQ**

**Penalty Calculation Worksheet (PCW)**

PCW Revision April 25, 2006

| DATES | Assigned | 10-Jul-2006 | | | |
|---|---|---|---|---|---|
| | PCW | 14-Jul-2006 | Screening | 19-Jul-2006 | EPA Due | 01-Apr-2007 |

## RESPONDENT/FACILITY INFORMATION

| | | |
|---|---|---|
| Respondent | Intercontinental Terminals Company | |
| Reg. Ent. Ref. No. | RN100210806 | |
| Facility/Site Region | 12-Houston | Major/Minor Source | Major Source |

## CASE INFORMATION

| | | | | |
|---|---|---|---|---|
| Enf./Case ID No. | 30290 | | No. of Violations | 1 |
| Docket No. | 2006-1017-AIR-E | | Order Type | 1660 |
| Media Program(s) | Air Quality | | Enf. Coordinator | Trina Grieco |
| Multi-Media | | | EC's Team | Enforcement Team 6 |
| Admin. Penalty $ Limit Minimum | $0 | Maximum | $10,000 | |

## Penalty Calculation Section

| TOTAL BASE PENALTY (Sum of violation base penalties) | Subtotal 1 | $5,000 |
|---|---|---|

### ADJUSTMENTS (+/-) TO SUBTOTAL 1

Subtotals 2-7 are obtained by multiplying the Total Base Penalty (Subtotal 1) by the indicated percentage.

| Compliance History | 90% Enhancement | Subtotals 2, 3, & 7 | $4,500 |
|---|---|---|---|

Notes: Penalty enhancement due to 4 NOVs for same or similar violations, 17 NOVs issued for non-similar violation (this includes 12 self-reported effluent violations), and 2 agreed orders with denial of liability issued for this plant. Penalty reduction due to 2 Notice of Audit letters and 1 disclosure of violations submitted by the respondent.

| Culpability | No | 0% Enhancement | Subtotal 4 | $0 |
|---|---|---|---|---|

Notes: The Respondent does not meet culpability criteria.

| Good Faith Effort to Comply | 0% Reduction | Subtotal 5 | $0 |
|---|---|---|---|

| | Before NOV | NOV to EDPRP/Settlement Offer |
|---|---|---|
| Extraordinary | | |
| Ordinary | | |
| N/A | X | (mark with a small x) |

Notes: The Respondent does not meet the good faith criteria.

| Economic Benefit | 0% Enhancement* | Subtotal 6 | $0 |
|---|---|---|---|
| Total EB Amounts | $145 | *Capped at the Total EB $ Amount | |
| Approx. Cost of Compliance | $2,000 | | |

| SUM OF SUBTOTALS 1-7 | Final Subtotal | $9,500 |
|---|---|---|

| OTHER FACTORS AS JUSTICE MAY REQUIRE | Adjustment | $0 |
|---|---|---|

Reduces or enhances the Final Subtotal by the indicated percentage. (Enter number only; e.g. -30 for -30%.)

Notes:

| | Final Penalty Amount | $9,500 |
|---|---|---|

| STATUTORY LIMIT ADJUSTMENT | Final Assessed Penalty | $9,500 |
|---|---|---|

| DEFERRAL | 20% Reduction | Adjustment | -$1,900 |
|---|---|---|---|

Reduces the Final Assessed Penalty by the indicted percentage. (Enter number only; e.g. 20 for 20% reduction.)

Notes: A deferral is offered for expedited settlement.

| PAYABLE PENALTY | | $7,600 |
|---|---|---|

**EXHIBIT A-1**

| | | | |
|---|---|---|---|
| Screening Date | 19-Jul-2006 | **Docket No.** 2006-1017-AIR-E | **PCW** |
| **Respondent** | Intercontinental Terminals Company | *Policy Revision 2 (September 2002)* | |
| **Case ID No.** | 30290 | *PCW Revision April 25, 2006* | |
| **Reg. Ent. Reference No.** | RN100210806 | | |
| **Media [Statute]** | Air Quality | | |
| **Enf. Coordinator** | Trina Grieco | | |

## Compliance History Worksheet

>> Compliance History *Site Enhancement (Subtotal 2)*

| Component | Number of... | Enter Number Here | Adjust. |
|---|---|---|---|
| NOVs | Written NOVs with same or similar violations as those in the current enforcement action *(number of NOVs meeting criteria)* | 4 | 20% |
| | Other written NOVs | 17 | 34% |
| Orders | Any agreed final enforcement orders containing a denial of liability *(number of orders meeting criteria)* | 2 | 40% |
| | Any adjudicated final enforcement orders, agreed final enforcement orders without a denial of liability, or default orders of this state or the federal government, or any final prohibitory emergency orders issued by the commission | 0 | 0% |
| Judgments and Consent Decrees | Any non-adjudicated final court judgments or consent decrees containing a denial of liability of this state or the federal government *(number of judgements or consent decrees meeting criteria)* | 0 | 0% |
| | Any adjudicated final court judgments and default judgments, or non-adjudicated final court judgments or consent decrees without a denial of liability, of this state or the federal government | 0 | 0% |
| Convictions | Any criminal convictions of this state or the federal government *(number of counts)* | 0 | 0% |
| Emissions | Chronic excessive emissions events *(number of events)* | 0 | 0% |
| Audits | Letters notifying the executive director of an intended audit conducted under the Texas Environmental, Health, and Safety Audit Privilege Act, 74th Legislature, 1995 *(number of audits for which notices were ...)* | 2 | -2% |
| | Disclosures of violations under the Texas Environmental, Health, and Safety Audit Privilege Act, 74th Legislature, 1995 *(number of audits for which violations were disclosed)* | 1 | -2% |
| | | *Please Enter Yes or No* | |
| Other | Environmental management systems in place for one year or more | No | 0% |
| | Voluntary on-site compliance assessments conducted by the executive director under a special assistance program | No | 0% |
| | Participation in a voluntary pollution reduction program | No | 0% |
| | Early compliance with, or offer of a product that meets future state or federal government environmental requirements | No | 0% |

*Adjustment Percentage (Subtotal 2)* **90%**

>> Repeat Violator (Subtotal 3)

No

*Adjustment Percentage (Subtotal 3)* **0%**

>> Compliance History *Person Classification (Subtotal 7)*

Average Performer

*Adjustment Percentage (Subtotal 7)* **0%**

>> Compliance History Summary

**Compliance History Notes** — Penalty enhancement due to 4 NOVs for same or similar violations, 17 NOVs issued for non-similar violation (this includes 12 self-reported effluent violations), and 2 agreed orders with denial of liability issued for this plant. Penalty reduction due to 2 Notice of Audit letters and 1 disclosure of violations submitted by the respondent.

*Total Adjustment Percentage (Subtotals 2, 3, & 7)* **90%**

EXHIBIT A-1

| | | | | |
|---|---|---|---|---|
| **Screening Date** | 19-Jul-2006 | | **Docket No.** 2006-1017-AIR-E | **PCW** |
| **Respondent** | Intercontinental Terminals Company | | | *Policy Revision 2 (September 2002)* |
| **Case ID No.** | 30290 | | | *PCW Revision April 25, 2006* |
| **Reg. Ent. Reference No.** | RN100210806 | | | |
| **Media [Statute]** | Air Quality | | | |
| **Enf. Coordinator** | Trina Grieco | | | |
| **Violation Number** | 1 | | | |

| | |
|---|---|
| **Primary Rule Cite(s)** | 30 Tex. Admin. Code § 116.115(c), Air Permit No. 1078, Special Conditions 5 and 14 |
| **Secondary Rule Cite(s)** | Tex. Health & Safety Code § 382.085(b) |
| **Violation Description** | Failed to prevent unauthorized emissions and to route all emissions from Storage Tank 50-2 to the TK 50-2 Flare, emissions point number ("EPN") FL-50-2 (Incident 71787). Specifically, 3,425 pounds of the hazardous air pollutant and highly reactive volatile organic compound 1,3-butadiene were released from the Tank 50-2 Emergency Atmospheric relief valve, EPN TANK 50-2 PSV A, during an emissions event which occurred on February 15, 2006 and lasted 4 minutes. These emissions are not authorized by the permit. Since the emissions event was avoidable, Intercontinental Terminals Management Company failed to meet the demonstration criteria for an affirmative defense in 30 Tex. Admin. Code § 101.222. |

**Base Penalty** $10,000

## >> Environmental, Property and Human Health Matrix

**Harm**

| Release | Major | Moderate | Minor |
|---|---|---|---|
| Actual | | X | |
| Potential | | | |

**Percent** 50%

## >> Programmatic Matrix

| | Falsification | Major | Moderate | Minor |
|---|---|---|---|---|
| | | | | |

**Percent**

**Matrix Notes** Human health or the environment in the Houston-Galveston nonattainment area has been exposed to a significant amount of pollutants which did not exceed levels that are protective of human health or environmental receptors as a result of the violation.

**Adjustment** -$5,000

**Base Penalty Subtotal** $5,000

## Violation Events

Number of Violation Events  1          1  Number of violation days

| | |
|---|---|
| | daily |
| | monthly |
| mark only one | quarterly |
| use a small x | semiannual |
| | annual |
| | single event  X |

**Violation Base Penalty** $5,000

One single event is recommended.

## Economic Benefit (EB) for this violation     ## Statutory Limit Test

| | | | |
|---|---|---|---|
| **Estimated EB Amount** | $145 | **Violation Final Penalty Total** | $9,500 |
| | | **This violation Final Assessed Penalty (adjusted for limits)** | $9,500 |

EXHIBIT A-1

## Economic Benefit Worksheet

Respondent Intercontinental Terminals Company
Case ID No. 30290
Reg. Ent. Reference No. RN100210806
Media [Statute] Air Quality
Violation No. 1

| | | | | | | Percent Interest | Years of Depreciation |
|---|---|---|---|---|---|---|---|
| | | | | | | 5.0 | 15 |

| Item Description | Item Cost | Date Required | Final Date | Yrs | Interest Saved | Onetime Costs | EB Amount |
|---|---|---|---|---|---|---|---|
| | No commas or $ | | | | | | |

### Delayed Costs

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Equipment | | | | 0.0 | $0 | $0 | $0 |
| Buildings | | | | 0.0 | $0 | $0 | $0 |
| Other (as needed) | $2,000 | 15-Feb-2006 | 01-Mar-2007 | 1.0 | $7 | $138 | $145 |
| Engineering/construction | | | | 0.0 | $0 | $0 | $0 |
| Land | | | | 0.0 | $0 | n/a | $0 |
| Record Keeping System | | | | 0.0 | $0 | n/a | $0 |
| Training/Sampling | | | | 0.0 | $0 | n/a | $0 |
| Remediation/Disposal | | | | 0.0 | $0 | n/a | $0 |
| Permit Costs | | | | 0.0 | $0 | n/a | $0 |
| Other (as needed) | | | | 0.0 | $0 | n/a | $0 |

Notes for DELAYED costs: Estimated cost to implement measures designed to prevent the recurrence of emissions events due to the same cause. Date required based on the date of the release. Final date based on the projected compliance date.

### Avoided Costs

ANNUALIZE [1] avoided costs before entering item (except for one-time avoided costs)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Disposal | | | | 0.0 | $0 | $0 | $0 |
| Personnel | | | | 0.0 | $0 | $0 | $0 |
| Inspection/Reporting/Sampling | | | | 0.0 | $0 | $0 | $0 |
| Supplies/equipment | | | | 0.0 | $0 | $0 | $0 |
| Financial Assurance [2] | | | | 0.0 | $0 | $0 | $0 |
| ONE-TIME avoided costs [3] | | | | 0.0 | $0 | $0 | $0 |
| Other (as needed) | | | | 0.0 | $0 | $0 | $0 |

Notes for AVOIDED costs:

| Approx. Cost of Compliance | $2,000 | | | | | TOTAL | $145 |
|---|---|---|---|---|---|---|---|

EXHIBIT A-1

# Compliance History

| | | | | |
|---|---|---|---|---|
| Customer/Respondent/Owner-Operator: | CN601470222 | Intercontinental Terminals Company | Classification: AVERAGE | Rating: 1.57 |
| Regulated Entity: | RN100210806 | INTERCONTINENTAL TERMINALS DEER PARK TERMINAL | Classification: AVERAGE | Site Rating: 1.57 |

ID Number(s):

| | | |
|---|---|---|
| AIR OPERATING PERMITS | ACCOUNT NUMBER | HG0403N |
| AIR OPERATING PERMITS | PERMIT | 1061 |
| WASTEWATER | PERMIT | WQ0001984000 |
| WASTEWATER | PERMIT | TPDES0068349 |
| WASTEWATER | PERMIT | TX0068349 |
| AIR NEW SOURCE PERMITS | PERMIT | 1078 |
| AIR NEW SOURCE PERMITS | PERMIT | 1797 |
| AIR NEW SOURCE PERMITS | PERMIT | 1971 |
| AIR NEW SOURCE PERMITS | PERMIT | 2837 |
| AIR NEW SOURCE PERMITS | PERMIT | 11781 |
| AIR NEW SOURCE PERMITS | PERMIT | 13674 |
| AIR NEW SOURCE PERMITS | PERMIT | 14294 |
| AIR NEW SOURCE PERMITS | PERMIT | 14296 |
| AIR NEW SOURCE PERMITS | PERMIT | 16015 |
| AIR NEW SOURCE PERMITS | PERMIT | 10581 |
| AIR NEW SOURCE PERMITS | PERMIT | 15075 |
| AIR NEW SOURCE PERMITS | PERMIT | 22980 |
| AIR NEW SOURCE PERMITS | PERMIT | 24140 |
| AIR NEW SOURCE PERMITS | PERMIT | 24909 |
| AIR NEW SOURCE PERMITS | PERMIT | 31860 |
| AIR NEW SOURCE PERMITS | PERMIT | 35631 |
| AIR NEW SOURCE PERMITS | PERMIT | 43548 |
| AIR NEW SOURCE PERMITS | PERMIT | 44392 |
| AIR NEW SOURCE PERMITS | PERMIT | 45706 |
| AIR NEW SOURCE PERMITS | PERMIT | 47853 |
| AIR NEW SOURCE PERMITS | PERMIT | 50149 |
| AIR NEW SOURCE PERMITS | ACCOUNT NUMBER | HG0403N |
| AIR NEW SOURCE PERMITS | PERMIT | 52721 |
| AIR NEW SOURCE PERMITS | REGISTRATION | 76266 |
| AIR NEW SOURCE PERMITS | AFS NUM | 0153 |
| AIR NEW SOURCE PERMITS | PERMIT | 1078 |
| AIR NEW SOURCE PERMITS | REGISTRATION | 74105 |
| PUBLIC WATER SYSTEM/SUPPLY | REGISTRATION | 1011622 |
| VOLUNTARY CLEANUP PROGRAM | ID NUMBER | 1269 |
| INDUSTRIAL AND HAZARDOUS WASTE GENERATION | EPA ID | TXD073912974 |
| INDUSTRIAL AND HAZARDOUS WASTE GENERATION | SOLID WASTE REGISTRATION # (SWR) | 30966 |
| WATER LICENSING | LICENSE | 1011622 |
| IHW CORRECTIVE ACTION | SOLID WASTE REGISTRATION # (SWR) | 30966 |
| WASTE WATER GENERAL PERMIT | PERMIT | TXG670028 |

| | | |
|---|---|---|
| Location: | 1943 BATTLEGROUND RD, LA PORTE, TX, 77571 | Rating Date: September 01 05  Repeat Violator: N |
| TCEQ Region: | REGION 12 - HOUSTON | |
| Date Compliance History Prepared: | January 29, 2007 | |
| Agency Decision Requiring Compliance History: | Enforcement | |
| Compliance Period: | July 18, 2001 to July 18, 2006 | |

TCEQ Staff Member to Contact for Additional Information Regarding this Compliance History

| | | | |
|---|---|---|---|
| Name: | Trina Grieco | Phone: | (210) 403-4006 |

## Site Compliance History Components

| | |
|---|---|
| 1. Has the site been in existence and/or operation for the full five year compliance period? | Yes |
| 2. Has there been a (known) change in ownership of the site during the compliance period? | Yes |
| 3. If Yes, who is the current owner? | Mitsui & Co (USA) Inc. |
| | Intercontinental Terminals Management C |
| | Intercontinental Terminals Company |
| 4. if Yes, who was/were the prior owner(s)? | Mitsui & Co (USA) Inc. |

EXHIBIT A-1

5. When did the change(s) in ownership occur?

7/29/2003

## Components (Multimedia) for the Site :

A.    Final Enforcement Orders, court judgements, and consent decrees of the state of Texas and the federal government.

        Effective Date:  12/12/2002        ADMINORDER  2002-0248-AIR-E

        Classification:  Minor

        Citation:      30 TAC Chapter 101, SubChapter A 101.20(2)
                       40 CFR Part 61, Subpart V 61.242-1(d)

                       5C THC Chapter 382, SubChapter A 382.085(b)

        Description:  Failure to mark one valve and one flange next to valve No. 11 associated with tank No. 80-15 in benzene service and 3 flanges next to valve No. 6, valve No. 8 and valve No. 9, respectively, associated with Tank No. 80-20, all in benzene service.

        Classification:  Moderate

        Citation:      30 TAC Chapter 101, SubChapter A 101.20(2)
                       30 TAC Chapter 116, SubChapter B 116.115(c)

                       40 CFR Part 61, Subpart V 61.242-6(a)(1)
                       5C THC Chapter 382, SubChapter A 382.085(b)

        Rqmt Prov:  SC3E PERMIT
                      SC8 PERMIT

        Description:  Failure to install a cap, blind flange or plug on an open ended line on valve No. 1 on tank No. 80-14, in benzene service.

        Classification:  Moderate

        Citation:      30 TAC Chapter 116, SubChapter B 116.115(c)
                       5C THC Chapter 382, SubChapter A 382.085(b)

        Rqmt Prov:  SC3E PERMIT
                      SC8 PERMIT

        Description:  Failure to install a cap, blind flange or plug on open ended lines on a line next to valve No. 12 on tank No. 100-2 and a line next to valve No. 10 on tank No. 100-4, both of which are in methanol service.

        Effective Date: 11/06/2005        ADMINORDER  2005-0486-AIR-E

        Classification:  Moderate

        Citation:      30 TAC Chapter 116, SubChapter B 116.115(c)
                       5C THC Chapter 382, SubChapter A 382.085(b)

        Rqmt Prov:  Special Condition No. 1 PERMIT
        Description:  Failure to prevent 1,127 pounds of unauthorized butadiene emissions from the tank 50-2 dryer pressure relief valve during an emissions event on August 16, 2004 that lasted four minutes.

B.    Any criminal convictions of the state of Texas and the federal government.

        N/A

C.    Chronic excessive emissions events.

        N/A

D.    The approval dates of investigations. (CCEDS Inv. Track. No.)

| | | |
|---|---|---|
| 1 | 12/27/2001 | (194870) |
| 2 | 12/27/2002 | (194871) |
| 3 | 01/23/2002 | (194874) |
| 4 | 01/24/2003 | (194875) |
| 5 | 05/30/2006 | (467474) |
| 6 | 06/21/2005 | (423380) |
| 7 | 03/31/2004 | (260352) |
| 8 | 02/28/2006 | (457141) |
| 9 | 02/28/2003 | (23130) |
| 10 | 03/30/2004 | (332973) |
| 11 | 03/16/2005 | (371216) |
| 12 | 05/30/2006 | (467405) |
| 13 | 10/21/2005 | (434379) |
| 14 | 12/17/2004 | (290794) |

| 15 | 02/23/2006 | (455891) |
| 16 | 02/27/2006 | (456566) |
| 17 | 02/23/2004 | (310963) |
| 18 | 03/01/2004 | (264458) |
| 19 | 02/16/2006 | (437127) |
| 20 | 10/26/2004 | (292361) |
| 21 | 11/11/2004 | (291208) |
| 22 | 02/21/2005 | (341749) |
| 23 | 02/23/2005 | (385325) |
| 24 | 03/22/2004 | (310966) |
| 25 | 04/23/2004 | (310967) |
| 26 | 03/22/2005 | (385326) |
| 27 | 01/24/2005 | (385327) |
| 28 | 05/21/2004 | (310969) |
| 29 | 08/31/2004 | (291039) |
| 30 | 06/22/2004 | (310971) |
| 31 | 02/25/2006 | (456934) |
| 32 | 12/02/2005 | (433872) |
| 33 | 06/30/2004 | (274189) |
| 34 | 08/25/2003 | (310974) |
| 35 | 09/23/2003 | (310976) |
| 36 | 07/22/2005 | (444195) |
| 37 | 05/30/2006 | (467313) |
| 38 | 08/23/2005 | (444196) |
| 39 | 10/23/2003 | (310978) |
| 40 | 09/23/2005 | (444197) |
| 41 | 02/21/2006 | (474602) |
| 42 | 03/21/2002 | (194829) |
| 43 | 11/24/2003 | (310979) |
| 44 | 12/29/2003 | (310980) |
| 45 | 01/23/2004 | (310981) |
| 46 | 03/27/2006 | (474603) |
| 47 | 02/25/2002 | (194832) |
| 48 | 02/24/2003 | (194833) |
| 49 | 05/16/2003 | (247208) |
| 50 | 02/28/2006 | (457243) |
| 51 | 03/21/2002 | (194835) |
| 52 | 03/24/2003 | (194836) |
| 53 | 04/07/2006 | (474604) |
| 54 | 07/20/2004 | (251421) |
| 55 | 10/19/2004 | (335995) |
| 56 | 07/26/2004 | (358407) |
| 57 | 11/17/2004 | (340802) |
| 58 | 08/20/2004 | (358408) |
| 59 | 02/27/2006 | (457165) |
| 60 | 03/30/2006 | (454492) |
| 61 | 09/21/2004 | (358409) |
| 62 | 04/24/2002 | (194840) |
| 63 | 10/22/2004 | (358410) |
| 64 | 10/24/2005 | (474605) |
| 65 | 04/21/2003 | (194841) |
| 66 | 09/02/2005 | (404693) |
| 67 | 11/23/2004 | (358411) |
| 68 | 02/21/2006 | (455166) |
| 69 | 12/17/2004 | (358412) |
| 70 | 08/26/2002 | (6572) |
| 71 | 10/18/2004 | (335632) |
| 72 | 05/20/2002 | (194844) |
| 73 | 05/23/2003 | (194845) |
| 74 | 10/24/2005 | (474606) |
| 75 | 11/12/2003 | (254844) |
| 76 | 07/05/2006 | (464712) |
| 77 | 02/28/2006 | (457151) |
| 78 | 06/20/2002 | (194848) |
| 79 | 07/08/2002 | (3811) |
| 80 | 06/24/2003 | (194849) |
| 81 | 11/21/2005 | (474607) |

EXHIBIT A-1

| | | |
|---|---|---|
| 82 | 07/24/2001 | (194851) |
| 83 | 12/27/2005 | (474608) |
| 84 | 05/24/2005 | (380693) |
| 85 | 02/23/2006 | (455833) |
| 86 | 07/22/2002 | (194852) |
| 87 | 07/23/2003 | (194853) |
| 88 | 08/23/2005 | (401737) |
| 89 | 08/23/2001 | (194855) |
| 90 | 10/08/2004 | (335073) |
| 91 | 08/23/2002 | (194856) |
| 92 | 01/25/2006 | (474609) |
| 93 | 08/20/2001 | (79310) |
| 94 | 08/20/2001 | (79311) |
| 95 | 05/18/2006 | (502372) |
| 96 | 12/06/2001 | (79312) |
| 97 | 06/20/2006 | (502373) |
| 98 | 12/18/2001 | (79313) |
| 99 | 09/24/2001 | (194858) |
| 100 | 05/30/2006 | (467456) |
| 101 | 02/07/2002 | (79314) |
| 102 | 09/23/2002 | (194859) |
| 103 | 10/23/2002 | (194860) |
| 104 | 08/09/2005 | (403880) |
| 105 | 02/27/2006 | (457161) |
| 106 | 10/19/2001 | (194862) |
| 107 | 08/23/2005 | (404912) |
| 108 | 10/23/2002 | (194863) |
| 109 | 04/04/2002 | (79315) |
| 110 | 08/18/2005 | (404302) |
| 111 | 04/17/2002 | (79316) |
| 112 | 07/01/2002 | (79317) |
| 113 | 05/17/2006 | (454514) |
| 114 | 11/19/2001 | (194866) |
| 115 | 11/25/2002 | (194867) |
| 116 | 04/22/2005 | (423378) |
| 117 | 05/24/2005 | (423379) |

E.    Written notices of violations (NOV). (CCEDS Inv. Track. No.)

Dat  08/23/2002    (6572)

Self          NO                                              Classification:    Moderate

Citation:          30 TAC Chapter 290, SubChapter D 290.41(c)(1)(F)

Description:          Failure to make available sanitary control easements for the well at the time of inspection.


Dat  05/24/2005    (380693)

Self          NO                                              Classification:    Minor

Citation:          30 TAC Chapter 101, SubChapter F 101.201(g)

Description:          ITC  failed to submit the initial notification electronically using the online form on the
                     commission's secure web server.

Self          NO                                              Classification:    Moderate

Citation:          30 TAC Chapter 116, SubChapter B 116.110(a)[G]
                   5C THC Chapter 382, SubChapter A 382.085(b)

Description:          ITC  failed to prevent the increased flow, during a loading operation, into Tank 105-3.


Dat  03/30/2004    (332973)

Self          NO                                              Classification:    Moderate

Citation:          30 TAC Chapter 305, SubChapter F 305.125(1)
                   30 TAC Chapter 305, SubChapter F 305.125(17)

Description:          NON-RPT VIOS FOR MONIT PER OR PIPE

Self          NO                                              Classification:    Moderate

Citation:          30 TAC Chapter 305, SubChapter F 305.125(1)
                   30 TAC Chapter 305, SubChapter F 305.125(17)

Description:          NON-RPT VIOS FOR MONIT PER OR PIPE

Self          NO                                              Classification:    Moderate

Citation:          30 TAC Chapter 305, SubChapter F 305.125(1)
                   30 TAC Chapter 305, SubChapter F 305.125(17)

EXHIBIT A-1

Description:      NON-RPT VIOS FOR MONIT PER OR PIPE

Dat  01/31/2005      (385325)
Self          YES                                        Classification:      Moderate
Citation:          30 TAC Chapter 305, SubChapter F 305.125(1)
                   TWC Chapter 26 26.121(a)[G]
Description:      Failure to meet the limit for one or more permit parameter

Dat  03/31/2004      (310967)
Self          YES                                        Classification:      Moderate
Citation:          30 TAC Chapter 305, SubChapter F 305.125(1)
                   TWC Chapter 26 26.121(a)[G]
Description:      Failure to meet the limit for one or more permit parameter

Dat  02/28/2005      (385326)
Self          YES                                        Classification:      Moderate
Citation:          30 TAC Chapter 305, SubChapter F 305.125(1)
                   TWC Chapter 26 26.121(a)[G]
Description:      Failure to meet the limit for one or more permit parameter

Dat  12/31/2004      (385327)
Self          YES                                        Classification:      Moderate
Citation:          30 TAC Chapter 305, SubChapter F 305.125(1)
                   TWC Chapter 26 26.121(a)[G]
Description:      Failure to meet the limit for one or more permit parameter

Dat  10/21/2005      (434379)
Self          NO                                         Classification:      Moderate
Citation:          30 TAC Chapter 116, SubChapter B 116.115(b)
                   5C THC Chapter 382, SubChapter A 382.085(b)
Rqmt Prov:      PERMIT IA
Description:      ITC failed to prevent a mechanical failure which resulted in a release of 85 pounds of
                 unauthorized 1,3 butadiene emissions from an emergency atmospheric relief valve for a
                 duration of 5 minutes.

Dat  09/30/2003      (310978)
Self          YES                                        Classification:      Moderate
Citation:          30 TAC Chapter 305, SubChapter F 305.125(1)
                   TWC Chapter 26 26.121(a)[G]
Description:      Failure to meet the limit for one or more permit parameter

Dat  05/16/2003      (247208)
Self          NO                                         Classification:      Moderate
Citation:          30 TAC Chapter 305, SubChapter F 305.125(1)
Description:      NON-RPT VIOS FOR MONIT PER OR PIPE

Dat  12/31/2003      (310981)
Self          YES                                        Classification:      Moderate
Citation:          30 TAC Chapter 305, SubChapter F 305.125(1)
                   TWC Chapter 26 26.121(a)[G]
Description:      Failure to meet the limit for one or more permit parameter

Dat  09/02/2005      (404693)
Self          NO                                         Classification:      Moderate
Citation:          30 TAC Chapter 115, SubChapter C 115.212(a)(3)(B)
Description:      The RE failed to detect a leak on a transferline.
Self          NO                                         Classification:      Moderate
Citation:          30 TAC Chapter 116, SubChapter B 116.115(c)
                   5C THC Chapter 382, SubChapter A 382.085(b)
Rqmt Prov:      PERMIT IA
Description:      Failure to operated without visible liquid leaks or spills.

Dat  02/28/2003      (194836)
Self          YES                                        Classification:      Moderate
Citation:          30 TAC Chapter 305, SubChapter F 305.125(1)

TWC Chapter 26 26.121(a)[G]
Description:        Failure to meet the limit for one or more permit parameter

Dat  06/30/2004      (358407)
Self           YES                                          Classification:      Moderate
Citation:        30 TAC Chapter 305, SubChapter F 305.125(1)
                TWC Chapter 26 26.121(a)[G]
Description:        Failure to meet the limit for one or more permit parameter

Dat  12/17/2004      (290794)
Self           NO                                           Classification:      Moderate
Citation:        30 TAC Chapter 116, SubChapter B 116.115(b)(2)(F)
                5C THC Chapter 382, SubChapter A 382.085(b)
Rqmt Prov:       PERMIT IA
Description:        The company failed to prevent benzene from spilling on top of the floating roof tank during a
                railcar unloading operation.

Dat  11/30/2004      (358412)
Self           YES                                          Classification:      Moderate
Citation:        30 TAC Chapter 305, SubChapter F 305.125(1)
                TWC Chapter 26 26.121(a)[G]
Description:        Failure to meet the limit for one or more permit parameter

Dat  07/31/2002      (194856)
Self           YES                                          Classification:      Moderate
Citation:        30 TAC Chapter 305, SubChapter F 305.125(1)
                TWC Chapter 26 26.121(a)[G]
Description:        Failure to meet the limit for one or more permit parameter

Dat  02/08/2002      (79314)
Self           NO                                           Classification:      Moderate
Citation:        30 TAC Chapter 101, SubChapter A 101.20(1)
Description:        MONITORING REQ
Self           NO                                           Classification:      Moderate
Citation:        30 TAC Chapter 116, SubChapter B 116.115(c)
Rqmt Prov:       OP IA
Description:        Failure to Comply
Self           NO                                           Classification:      Moderate
Citation:        30 TAC Chapter 101, SubChapter A 101.20(2)
Description:        MONITORING REQ

Dat  08/31/2002      (194859)
Self           YES                                          Classification:      Moderate
Citation:        30 TAC Chapter 305, SubChapter F 305.125(1)
                TWC Chapter 26 26.121(a)[G]
Description:        Failure to meet the limit for one or more permit parameter

Dat  03/31/2005      (423378)
Self           YES                                          Classification:      Moderate
Citation:        30 TAC Chapter 305, SubChapter F 305.125(1)
                TWC Chapter 26 26.121(a)[G]
Description:        Failure to meet the limit for one or more permit parameter

Dat  03/29/2006      (454492)
Self           NO                                           Classification:      Minor
Citation:        30 TAC Chapter 305, SubChapter F 305.125(1)
Description:        Failure to maintain compliance with the permit effluent limits for biochemical oxygen demand
                (BOD5).
Self           NO                                           Classification:      Moderate
Citation:        30 TAC Chapter 335, SubChapter A 335.4(1)
Description:        Failure to adequately manage solid waste.

F.     Environmental audits.
       Notice of Intent Date:      10/23/2001      (35662)
       Disclosure Date:         5/7/2002  12:00:00 AM
       Viol. Classification:     Moderate
       Citation:        30 TAC Chapter 116, SubChapter B

EXHIBIT A-1

Rqmt        PERMIT  SC 3A
Description:     Failure to maintain VOC aggregate partial pressure or vapor pressure at permitted levelS OF 0.044 psia at 68 degree F.

Notice of Intent Date:     04/27/2006        (466867)
            No DOV Associated

G.      Type of environmental management systems (EMSs).

            N/A

H.      Voluntary on-site compliance assessment dates.

            N/A

I.      Participation in a voluntary pollution reduction program.

            N/A

J.      Early compliance.

            N/A

Sites Outside of Texas

            N/A

# TEXAS COMMISSION ON ENVIRONMENTAL QUALITY



| | | |
|---|---|---|
| IN THE MATTER OF AN | § | **BEFORE THE** |
| ENFORCEMENT ACTION | § | |
| CONCERNING | § | **TEXAS COMMISSION ON** |
| INTERCONTINENTAL TERMINALS | § | |
| COMPANY | § | **ENVIRONMENTAL QUALITY** |
| RN100210806 | | |

## AGREED ORDER
### DOCKET NO. 2006-1017-AIR-E

### I. JURISDICTION AND STIPULATIONS

At its _____ agenda, the Texas Commission on Environmental Quality ("the Commission" or "TCEQ") considered this agreement of the parties, resolving an enforcement action regarding Intercontinental Terminals Company ("ITC") under the authority of TEX. HEALTH & SAFETY CODE ch. 382 and TEX. WATER CODE ch. 7. The Executive Director of the TCEQ, through the Enforcement Division, and ITC appear before the Commission and together stipulate that:

1. ITC owns and operates a multi-product bulk liquid storage and distribution terminal at 1943 Battleground Road in La Porte, Harris County, Texas (the "Plant").

2. The Plant consists of one or more sources as defined in TEX. HEALTH & SAFETY CODE § 382.003(12).

3. The Commission and ITC agree that the Commission has jurisdiction to enter this Agreed Order, and that ITC is subject to the Commission's jurisdiction.

4. ITC received notice of the violations alleged in Section II ("Allegations") on or about July 10, 2006.

5. The occurrence of any violation is in dispute and the entry of this Agreed Order shall not constitute an admission by ITC of any violation alleged in Section II ("Allegations"), nor of any statute or rule.

6. An administrative penalty in the amount of Nine Thousand Five Hundred Dollars ($9,500) is assessed by the Commission in settlement of the violations alleged in Section II ("Allegations"). ITC has paid Seven Thousand Six Hundred Dollars ($7,600) of the administrative penalty and One Thousand Nine Hundred Dollars ($1,900) is deferred contingent upon ITC's timely and satisfactory compliance with all the terms of this Agreed Order. The deferred amount will be waived upon full compliance with the terms of this Agreed Order. If ITC fails to timely and satisfactorily comply with all requirements of this Agreed Order, the Executive Director may require ITC to pay all or part of the deferred penalty.

Intercontinental Terminals Company
DOCKET NO. 2006-1017-AIR-E
Page 2

7.      Any notice and procedures which might otherwise be authorized or required in this action are waived in the interest of a more timely resolution of the matter.

8.      The Executive Director of the TCEQ and ITC have agreed on a settlement of the matters alleged in this enforcement action, subject to the approval of the Commission.

9.      The Executive Director may, without further notice or hearing, refer this matter to the Office of the Attorney General of the State of Texas ("OAG") for further enforcement proceedings if the Executive Director determines that ITC has not complied with one or more of the terms or conditions in this Agreed Order.

10.     This Agreed Order shall terminate five years from its effective date or upon compliance with all the terms and conditions set forth in this Agreed Order, whichever is later.

11.     The provisions of this Agreed Order are deemed severable and, if a court of competent jurisdiction or other appropriate authority deems any provision of this Agreed Order unenforceable, the remaining provisions shall be valid and enforceable.

## II. ALLEGATIONS

As owner and operator of the Plant, ITC is alleged to have failed to prevent unauthorized emissions and to route all emissions from Storage Tank 50-2 to the TK 50-2 Flare, emissions point number ("EPN") FL-50-2 (Incident 71787), in violation of 30 TEX. ADMIN. CODE § 116.115(c), Air Permit No. 1078, Special Conditions 5 and 14 and TEX. HEALTH & SAFETY CODE § 382.085(b), as documented during a record review conducted on April 20, 2006.  Specifically, 3,425 pounds of the hazardous air pollutant and highly reactive volatile organic compound 1,3-butadiene were released from the Tank 50-2 Emergency Atmospheric relief valve, EPN TANK 50-2 PSV A, during an emissions event which occurred on February 15, 2006 and lasted 4 minutes.  These emissions are not authorized by the permit.  Since the emissions event was avoidable, Intercontinental Terminals Company failed to meet the demonstration criteria for an affirmative defense in 30 TEX. ADMIN. CODE § 101.222.

## III. DENIALS

ITC generally denies each allegation in Section II ("Allegations").

## IV. ORDERING PROVISIONS

1.      It is, therefore, ordered by the TCEQ that ITC pay an administrative penalty as set forth in Section I, Paragraph 6 above. The payment of this administrative penalty and ITC's compliance with all the terms and conditions set forth in this Agreed Order resolve only the allegations in Section II.  The Commission shall not be constrained in any manner from requiring corrective action or penalties for violations which are not raised here.  Administrative penalty payments shall be made payable to

Intercontinental Terminals Company
DOCKET NO. 2006-1017-AIR-E
Page 3

"TCEQ" and shall be sent with the notation "Re: Intercontinental Terminals Company, Docket No. 2006-1017-AIR-E" to:

> Financial Administration Division, Revenues Section
> Attention: Cashier's Office, MC 214
> Texas Commission on Environmental Quality
> P.O. Box 13088
> Austin, Texas 78711-3088

2.    It is further ordered that ITC shall undertake the following technical requirements:

a.    Within 30 days after the effective date of this Agreed Order, implement measures designed to prevent unauthorized emissions due to the same cause; and

b.    Within 45 days after the effective date of this Agreed Order, submit written certification to demonstrate compliance with Ordering Provision 2.a. as described below:

The certification shall be notarized by a State of Texas Notary Public and include the following certification language:

"I certify under penalty of law that I have personally examined and am familiar with the information submitted and all attached documents, and that based on my inquiry of those individuals immediately responsible for obtaining the information, I believe that the submitted information is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations."

The certification shall be submitted to:

> Order Compliance Team
> Enforcement Division, MC 149A
> Texas Commission on Environmental Quality
> P.O. Box 13087
> Austin, Texas  78711-3087

with a copy to:

> Manager, Air Section
> Houston Regional Office
> Texas Commission on Environmental Quality
> 5425 Polk Avenue, Suite H
> Houston, Texas 77023-1486

3.    The provisions of this Agreed Order shall apply to and be binding upon ITC. ITC is ordered to give notice of the Agreed Order to personnel who maintain day-to-day control over the Plant operations referenced in this Agreed Order.

Intercontinental Terminals Company
DOCKET NO. 2006-1017-AIR-E
Page 4

4.  If ITC fails to comply with any of the Ordering Provisions in this Agreed Order within the prescribed schedules, and that failure is caused solely by an act of God, war, strike, riot, or other catastrophe, ITC's failure to comply is not a violation of this Agreed Order. ITC shall have the burden of establishing to the Executive Director's satisfaction that such an event has occurred. ITC shall notify the Executive Director within seven days after ITC becomes aware of a delaying event and shall take all reasonable measures to mitigate and minimize any delay.

5.  The Executive Director may grant an extension of any deadline in this Agreed Order or in any plan, report, or other document submitted pursuant to this Agreed Order, upon a written and substantiated showing of good cause. All requests for extensions by ITC shall be made in writing to the Executive Director. Extensions are not effective until ITC receives written approval from the Executive Director. The determination of what constitutes good cause rests solely with the Executive Director.

6.  This Agreed Order, issued by the Commission, shall not be admissible against ITC in a civil proceeding, unless the proceeding is brought by the OAG to: (1) enforce the terms of this Agreed Order; or (2) pursue violations of a statute within the Commission's jurisdiction, or of a rule adopted or an order or permit issued by the Commission under such a statute.

7.  This agreement may be executed in multiple counterparts, which together shall constitute a single original instrument. Any executed signature page to this Agreement may be transmitted by facsimile transmission to the other parties, which shall constitute an original signature for all purposes.

8.  Under 30 TEX. ADMIN. CODE § 70.10(b), the effective date is the date of hand-delivery of the Order to ITC, or three days after the date on which the Commission mails notice of the Order to ITC, whichever is earlier. The Chief Clerk shall provide a copy of this Agreed Order to each of the parties.

Intercontinental Terminals Company
DOCKET NO. 2006-1017-AIR-E
Page 5

# SIGNATURE PAGE

TEXAS COMMISSION ON ENVIRONMENTAL QUALITY

For the Commission

_____     ___2/9/07___
For the Executive Director            Date

I, the undersigned, have read and understand the attached Agreed Order.  I am authorized to agree to the attached Agreed Order on behalf of the entity, if any, indicated below my signature, and I do agree to the terms and conditions specified therein.  I further acknowledge that the TCEQ, in accepting payment for the penalty amount, is materially relying on such representation.

I also understand that my failure to comply with the Ordering Provisions, if any, in this order and/or my failure to timely pay the penalty amount, may result in:

*   A negative impact on my compliance history;
*   Greater scrutiny of any permit applications submitted by me;
*   Referral of this case to the Attorney General's Office for contempt, injunctive relief, additional penalties, and/or attorney fees, or to a collection agency;
*   Increased penalties in any future enforcement actions against me;
*   Automatic referral to the Attorney General's Office of any future enforcement actions against me; and
*   TCEQ seeking other relief as authorized by law.

In addition, any falsification of any compliance documents may result in criminal prosecution.

_____     ___9/27/06___
Signature                            Date

R.L. COMMANDER                       Se. Vice President - Operations
Name (Printed or typed)              Title
Authorized Representative of
Intercontinental Terminals Company

Instructions: Send the original, signed Agreed Order with penalty payment to the Financial Administration Division, Revenues Section at the address in Section IV, Paragraph 1 of this Agreed Order.

# 2020-54452 / Court: 215

Dillard_Exhibit 5

November 4, 2006

Hayden & Cunningham, PLLC
Attn:   Donald T. Brennan
7750 Broadway
San Antonio, Texas 78209

Re:    Your File No. 5957-069
       Claims of ALAMO ENVIRONMENTAL, Inc. against Vaquero Pipeline Company

Dear Mr. Brennan:

This will confirm receipt of your letter of November 1, 2006 regarding the claim above and your notice of a potential mechanic's lien resulting from same. Please be advised that Intercontinental Terminals Management Company ("ITMC") is not a proper entity in this claim as it is essentially only a management company that contracts management and consultant services to Intercontinental Terminals Company ("ITC"), a Texas General Partnership, that operates a bulk chemical liquid storage facility at Deer Park, Texas. A such, ITMC does not own any real assets on which a lien may be placed.  ITC, the terminal operator, functions on property owned by Mitsui and Co. (USA) ("MITSUI"). I suggest that while future correspondence on the issue at hand continue to be addressed to me, that you change the party to other than ITMC.

To reaffirm the information I gave you over the phone several weeks ago concerning your claim, neither ITC nor MITSUI has or had an owner/contractor relationship with Vaquero Pipeline Company, LP ("VAQUERO"). As such no funds have been paid or are due to VAQUERO. There are no funds to trap nor to retain available for creditors of VAQUERO under Section 162.001 et .seq. of the Texas Property Code. VAQUERO is simply a pipeline lessee under an easement with MITSUI. The leak of phenol from VAQUERO's pipeline located in the easement has, in fact, generated ITC's own claim against VAQUERO for the environmental clean-up costs. This puts us in sympathy with your client's claim but I believe in no way makes us liable for your client's claim.

ITC/MITSUI 0001

EXHIBIT A-3

I am willing to continue our communications in an attempt to get resolution for all the parties in this unfortunate incident, but I believe your reliance on the M&M statutes are unfounded and will be unproductive. As such I request you cease this course of action against my clients. If I am missing something here that puts my clients at financial risk from your client, I would appreciate being informed.

Sincerely,


Roderick E. Lide
Attorney at Law

Cc:
Mr. Ronald D Christ
Vice President, Administration
Intercontinental Terminals Company
17 Briar Hollow, Suite 402
Houston, TX 77027

Mr. Anthony A. Guccione
Executive Vice President and General Manager
Intercontinental Terminals Company
17 Briar Hollow, Suite 402
Houston, TX 77027

Unofficial Copy Office of Marilyn Burgess District Clerk

ITC/MITSUI 0002

9/27/2019
Case 4:20-cv-03468 Document 1-5 Filed on 10/08/20 in TXSD Page 117 of 200
Case 4:20-cv-03468 Document 2646 Filed on 04/12/23 in TXSD Page 2 of 2
EXHIBIT A-5

# 2020-54452 / Court: 215

Customer Search     RE Search     ID Search     Document Search     Search Results     TCEQ Home

Query Name

# CN605446749 Affiliation with RN106119175

## Customer Information

**CN Number:** CN605446749
**Last Update Date:** 12/12/2017
**Name:** INTERCONTINENTAL TERMINALS MANAGEMENT COMPANY   View Prior Names

**Legal Name:** Intercontinental Terminals Management Company
**Customer Type:** CORPORATION

*The Customer Name displayed may be different than the Customer Name associated to the Additional IDs related to the customer. This name may be different due to ownership changes, legal name changes, or other administrative changes.*

## Affiliation Information

**Customer Role(s):** OWNER OPERATOR
**Begin Date:** 12/12/2017
**End Date:**

## Regulated Entity Information

**RN Number:** RN106119175
**Name:** INTERCONTINENTAL TERMINALS PASADENA TERMINAL   View Prior Names
**Primary Business:** BULK LIQUID STORAGE TERMINAL
**Street Address:** 1030 ETHYL ROAD, PASADENA TX 77503
**County:** HARRIS
**Nearest City:** PASADENA
**State:** TX
**Near ZIP Code:** 77503
**Physical Location:** 1030 ETHYL ROAD

## Permits, Registrations, or Other Authorizations

There is **1** program and ID for this regulated entity and customer.

### 1-1 of 1 Records

| Program | ID Type | ID Number | ID Status |
|---|---|---|---|
| ON SITE SEWAGE FACILITY | PERMIT | 1011101 | ACTIVE |

Site Help | Disclaimer | Web Policies | Accessibility | Our Compact with Texans | TCEQ Homeland Security | Contact Us | Central Registry | Search Hints | Report Data Errors
**Statewide Links:** Texas.gov | Texas Homeland Security | TRAIL Statewide Archive | Texas Veterans Portal

© 2002 - 2019 Texas Commission on Environmental Quality

EXHIBIT A-6

We, the undersigned natural persons of the age of twenty-one

2020-54452 / Court: 215

(21) years or more, at least two of whom are citizens of the State

of Texas, acting as incorporators of a corporation under the Texas

Business Corporation Act, (hereinafter referred to as the "Act"),

do hereby adopt the following Articles of Incorporation for such

corporation.

### ARTICLE I.

The name of the corporation is STEMIL, INC.

### ARTICLE II.

The period of its duration is perpetual.

### ARTICLE III.

Section 1. The purpose or purposes for which the corporation is

organized are:

(a) To engage in the business of leasing as Lessee, and
operating, a storage terminal in Harris County, Texas,
and any facilities used or useful in connection there-
with or related thereto, and in the business of load-
ing, unloading, packaging, and storing liquids and
gases at such terminal or facilities;

(b) To enter into a partnership with another corporation,
which partnership is to engage in the business of leasing
as Lessee, and operating, a storage terminal in Harris
County, Texas, and any facilities useful or used in con-
nection therewith or related thereto, and in the business
of loading, unloading, packaging, and storing liquids
and gases at such terminal or facilities, whether or not
such partnership involves sharing or delegation, with
or to such other corporation, of control over such part-
nership and businesses;

(c) To enter into or participate with any other person or
persons or corporation or corporations in any partnership

joint venture, or other association and the business or businesses in which such partnership, limited partnership, joint venture or other association may be engaged;

(d) To do everything necessary, advisable, proper or convenient for the accomplishment of any of the purposes herein set forth, and to do all other things incidental to or connected therewith, which are not forbidden by the Act, by other law or by these Articles of Incorporation.

Section 2. <u>Direction of Purposes and Exercise of Powers by Directors.</u> Subject to any limitations or restrictions imposed by the Act, by other law, or by these Articles of Incorporation, the Board of Directors is hereby authorized to direct the purposes set forth in this Article of these Articles of Incorporation and to exercise all the powers of the corporation, without previous authorization or subsequent approval by the shareholders; and all parties dealing with the corporation shall have the right to rely on any action taken by the corporation pursuant to such action by the Board of Directors.

ARTICLE IV.

The aggregate number of shares which the corporation shall have authority to issue is One Hundred Thousand (100,000) of the par value of One Dollar ($1.00) each.

ARTICLE V.

The corporation will not commence business until there is received for the issuance of its shares consideration of the value of One Thousand Dollars ($1,000.00), consisting of money, labor done or property actually delivered.

-2-

EXHIBIT A-6

Case 4:09-cv-04460 Document 264 Filed on 08/12/20 in TXSD Page 120 of 20

Harris County, Texas, 77002, and the name of its initial registered
agent at such address is John J. Feldt.

## ARTICLE VII.

The number of directors constituting the initial Board of

Directors is Three (3), and the names and addresses of the persons

who are to serve as Directors until the first annual meeting of

shareholders, or until their respective successors are elected and

qualified, are:

|  |  |
|---|---|
| STEPHEN W. MILES | 211 Briar Hill<br>Houston, Texas 77042 |
| MARILYN R. MILES | 211 Briar Hill<br>Houston, Texas 77042 |
| JOSEPH P. MAHONEY | 104 S. Randall Court<br>Gretna, Louisiana 70053 |

The right to cumulative voting in the election of Directors is

expressly prohibited.

## ARTICLE VIII.

The name and addresses of the incorporators are:

|  |  |
|---|---|
| CARLYLE W. URBAN | 606 Houston First Savings Bldg.<br>Houston, Texas 77002 |
| JOHN J. FELDT | 606 Houston First Savings Bldg.<br>Houston, Texas 77002 |
| JOEL B. COOLIDGE | 606 Houston First Savings Bldg.<br>Houston, Texas 77002 |

## ARTICLE IX.

The Board of Directors of this corporation is expressly authorized

to alter, amend, or repeal the By-Laws or to adopt new By-Laws of

ARTICLE X.

Any person who is a Director or officer, or former Director or officer of the corporation, or any person who may have served at its request as a Director or officer of another corporation in which it owns shares of capital stock, or of which it is a creditor, shall be indemnified against expenses actually and necessarily incurred by him in connection with the defense of any action, suit or proceeding in which he is made a party by reason of being, or having been, such Director or officer, except in relation to matters as to which he shall be adjudged in such action, suit or proceeding to be liable for negligence or misconduct in the performance of duty, but such indemnification shall not be deemed exclusive of any other right to which such Director or officer may be entitled, under any By-Law Agreement, vote of shareholders or otherwise.

IN WITNESS WHEREOF, we have hereto set our hands this _2nd_ day of _February_, A.D., 1972.

_____
CARLYLE W. URBAN

_____
JOHN J. FELDT

_____
JOEL R. COOLIDGE

-4-

Case 4:20-cv-03468 Document 14-2 Filed on 10/08/20 in TXSD Page 122 of 200
EXHIBIT A-8

appeared before me, CARLYLE W. URBAN, JOHN J. FELDT, and JOEL B.

COOLIDGE, who, each being by me first duly sworn, declared that

they are the persons who signed the foregoing document as Incorpor-

ators, and that the statements contained therein are true.

_Susan Pelees_

Notary Public in and for Harris County,
Texas

Case 4:20-cv-03468 Document 12-4 Filed on 10/08/20 in TXSD Page 123 of 200
Case 4:25-cv-04480 Document 264 Filed on 02/12/25 in TXSD Page 2 of 20
EXHIBIT A-7

# 2020-54452 / Court: 215

Dillard_Exhibit 8

## CAUSE NO. <u>2006-75336</u>

| | | |
|---|---|---|
| ALAMO ENVIRONMENTAL, INC. | § | IN THE DISTRICT COURT |
| D/B/A ALAMO1 | § | |
| | § | |
| VS. | § | 157ᵗʰ JUDICIAL DISTRICT |
| | § | |
| VAQUERO PIPELINE COMPANY, L.P., | § | |
| VAQUERO PIPELINE COMPANY 1, | § | |
| L.L.C., INTERCONTINENTAL | § | |
| TERMINALS MANAGEMENT | § | |
| COMPANY AND MITSUI & CO. (U.S.A.), | § | |
| INC. | § | HARRIS COUNTY, TEXAS |

### AFFIDAVIT OF ALEX SALAS

Before me the undersigned notary public personally appeared Alex Salas who after being duly sworn and deposed stated under oath: my name is Alex Salas, I am over the age of 18, of sound mind, competent to make this affidavit and every statement contained herein is true, correct and within my personal knowledge.

1.     I am the President of Alamo Environmental, Inc. d/b/a Alamo1. Alamo1 is a Texas corporation which provides services as a full service contractor that specializes in industrial construction, demolition, remediation, abatement, technical services, waste transportation, emergency response, recycling, health and safety compliance.

2.     In June 2006 , Alamo1 responded to a phenol spill which resulted form a pipeline breakage within a 12" easement leased by Vaquero but extended well beyond the easement to property owned by Mitsui and managed by ITMC. The property where the response was done is described generally as 2700 Tidal Road, La Port, Texas 77571, Harris County, Texas. The property is described legally as:

THE FOLLOWING IS A CENTERLINE DESCRIPTION OF A PROPOSED TWELVE INCH (12") PHENOL PIPELINE EXTENDING OVER, THROUGH, ALONG AND ACROSS THE RESIDUE OF 98.6698 ACRES OF LAND SITUATED IN GEORGE ROSS SURVEY A-646, HARRIS COUNTY, TEXAS, MORE PARTICULARLY DESCRIBED IN SPECIAL WARRANTY DEED FROM FLUOR CONSTRUCTORS, INC. TO MITSUI & CO. (U.S.A.), INC., RECORDED UNDER COUNTY COURT'S FILE NUMBER H826946, (FILM CODE 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) OFFICIAL PUBLIC

RECORDS OF REAL PROPERTY, HARRIS COUNTY, TEXAS AND THE RESIDUE OF 85.3667 ACRES OF LAND SITUATED IN THE GEORGE ROSS SURVEY, A-646, HARRIS COUNTY, TEXAS, MORE PARTICULARLY DESCRIBED IN CORRECTION WARRANTY DEED FROM ROLLINS PROPERTIES, INC. TO MITSUI & CO. (U.S.A.), INC. RECORDED UNDER COUNTY CLERK FILE NUMBER E892213 (FILM CODE 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), OFFICIAL PUBLIC RECORDS OF REAL PROPERTY, HARRIS COUNTY, TEXAS WITH A MEADS AND BOUNCE DESCRIPTION ATTACHED HERETO AS EXHIBIT "A".

3.    Intercontinental Terminals Management Co. operates the facility and land owned by Mitsui as described above for hire bulk liquid storage facility that stores a variety of chemicals and petro chemicals. Defendant, Intercontinental Terminals Management Co. is an agent of Mitsui & Co. (U.S.A.), Inc. wherein they provided for Mitsui among other things a systematic, proactive approach to prevention of accidental releases of hazardous chemicals. Their system includes but is not limited to the following:

    a.    A process hazard analysis;
    b.    Operating procedure;
    c.    Training;
    d.    Management of Claim;
    e.    Prestart up review;
    f.    Compliance audit; and
    g.    Accident investigation.

4.    Defendants, Vaquero Pipeline Company, L.P. and Vaquero Pipeline Company 1, LLC (hereinafter referred to as Vaquero) is the pipeline lessee under an easement with Defendant Mitsui which is attached hereto as Exhibit "B". Thus, Vaquero leases the pipeline and is managed and over seen by ITMC on land owned by Mitsui.

5.    Phenol spills pose a severe health hazard and need to be handled with extreme caution. Phenol is highly corrosive to the skin and readily absorb through it, where upon it can affect the central nervous system and cause damage to the liver and kidneys. When heated, phenol will produce flammable vapors that are highly toxic (just a few parts per million and explosive) at concentrations of three percent to ten percent in air.

6.    The remediation required of the surrounding soil which resulted from the phenol spill was substantial and went from June 2006 through November 2006. It required 24 hour a day watch and monitoring. Over $437,111.51 was spent

in disposal charges. They include incineration charges of $146,703.43 as seen in Invoice No. AH06155X1 and $186,524.48 in incineration charges as demonstrated in Invoice No. AH-06-155X3. Additionally, there is burial disposal of $25,035.48 as seen in Invoice No. AH06-155X and another $9,203.22 of burial disposal charges as seen in Invoice No. AH06-155X5. Finally, there was liquid disposal of $36,436.40 as seen in Invoice No. AH06-155X1 and an additional $33,208.50 as seen in Invoice No. AH06-155X3. Labor charges totaled $236,231.25 through September 2006 with an additional $248,119.98 in subcontractor charges from October 2006 through November 2006. Additionally, Alamo spent $161,436.25 in equipment charges. The total charges as seen on the chart attached hereto incurred by Alamo are $1,127,833.99. This includes several thousand tons of soil actually removed, disposed of and/or remediated not just in the area covered by the easement leased by Vaquero but on a ½ to 1 acre area of land actually owned by Mitsui, not subject to the lease. It was agents of Mitsui and in particular employees of Defendant, ITMC which directed every aspect of the remediation in this case. In particular, Gary Carroll, Carl Holly and individual Max, all employee of ITMC directed and controlled entrance and exit to the facilities. They further provided what material was to be removed and what depths and lengths the material was to be removed. This was all on Mitsui's land and it was Mitsui's land and not just the area of the pipeline easement which was improved. It was clear to all parties involved that Vaquero and ITMC were authorized agents of Mitsui regarding the work Alamo1 performed.

7.  As seen in the attachments, Alamo billed Vaquero each month work was performed. Alamo further provided notices to ITMC as well as Mitsui of these unpaid amounts for valuable remediation work which they knew they were receiving and which they specially requested from Alamo.

8.  Alamo timely filed Mechanic's Liens and sent notices to Mitsui and ITMC in accordance with the Texas Property Code. The Mechanic's Lien included the following:

    1.  A sworn statement of the amount claimed;
    2.  The name and last known address of the owner or reputed owner;
    3.  A general statement of the kind of work done and materials furnished by the Claimant, even though not necessary as Plaintiff was an original contractor a statement of each month in which the work was performed and materials furnished for which payment was requested;
    4.  The name and last known address of the person by whom the Claimant was employed or to whom the Claimant furnished the materials or labor;

5.      The name and last known address of the original contractor, even though it was Plaintiff;

6.      A description legally sufficient for the identification, of the property sought to be charged with the lien;

7.      The Claimant's name, mailing address and physical address;

8.      A statement identifying the date each notice of the claim was sent to the owner and the method in which it was sent.

9.      As seen in Exhibit "A" in VAQUERO's Motion for Summary Judgment, the Plaintiff and VAQUERO entered into a written contract on July 5, 2006 entitled General Services Agreement. This agreement clearly spelled out the duties and obligations of the parties. In particular, it provided that all work would be invoiced in accordance with the written proposal. That VAQUERO agreed to pay on a time and material basis in accordance with the written schedule rate attached to the contract. That VAQUERO was responsible for the work site and the site was suitable for the size and weight of all the vehicles and equipment employed by ALAMO. VAQUERO further agreed to pay each invoice within 30 days. VAQUERO further agreed in writing to pay one in a half times the hourly rate for non-standardized hours. It is clear from the fraud audit attached to VAQUERO's Motion for Summary Judgment that they never intended to perform under the written contract. For example, VAQUERO unilaterally took the following actions after ALAMO performed under the contract in direct violation of the expressed written terms:

1.      Changed the daily rental rate as stated within the contract to a monthly rate which they made up;

2.      Changed the amount of the equipment rental as stated in the contract from a daily rental rate to a monthly rental rate which again they made up;

3.      Refused to pay ALAMO's employees non-standard hour rates which it agreed to under the contract for working evening shifts and/or weekends;

4.      Changed unilaterally the hourly rate professionals were working; and

5.      Made compliance with the ITC's sign-in sheet a requirement for employees to be paid.

None of these items listed above are part of the written agreement and are directly contrary to the parties agreement. Additionally, VAQUERO has still

EXHIBIT A-7

refused to pay for over $400,000.00 in land fills/manifest charges that ALAMO has already paid to third parties.

ALAMO relied on VAQUERO living up to the written agreement when it priced, bid, and entered into the contract made the basis of this lawsuit. Had ALAMO known that VAQUERO would only pay for rates it determined in its own discretion to be reasonable and in accordance with their other requirements as set forth above, ALAMO would have never entered into the contract made the basis of this lawsuit. Thus, ALAMO asserts that VAQUERO engaged in fraud in the above referenced transaction.

Further Affiant sayeth not.

_____
**ALEX SALAS**

SUBSCRIBED AND SWORN TO BEFORE ME by the said ALEX SALAS on this the _5th_ day of January, 2009, to certify which witness my hand and seal of office.

IDA VINCENT
NOTARY PUBLIC
State of Texas
Comm. Exp. 08-09-2012

_____
Notary Public, State of Texas

5957-069 Second Affidavit of Alex Salas.wpd

5

## 2020-54452 / Court: 215

Dillard_Exhibit 9

### CAUSE NO. 2006-75336

| | | |
|---|---|---|
| ALAMO ENVIRONMENTAL, INC. | § | IN THE DISTRICT COURT |
| D/B/A ALAMO1 | § | |
| | § | |
| VS. | § | 157th JUDICIAL DISTRICT |
| | § | |
| VAQUERO PIPELINE COMPANY, L.P., | § | |
| VAQUERO PIPELINE COMPANY 1, | § | |
| L.L.C., INTERCONTINENTAL | § | |
| TERMINALS MANAGEMENT | § | |
| COMPANY AND MITSUI & CO. (U.S.A.), | § | |
| INC. | § | HARRIS COUNTY, TEXAS |

### AFFIDAVIT OF MICHAEL E. EDMONDSON

Before me the undersigned notary public personally appeared Michael E. Edmondson who after being duly sworn and deposed stated under oath: my name is Michael E. Edmondson. I am over the age of 18, of sound mind, competent to make this affidavit and every statement contained herein is true, correct and within my personal knowledge.

1.      I was hired by Vaquero Pipeline Company, L.P. as an independent broker for purposes of disposing and/or recycling hazardous and non-hazardous waste material generated by a phenol spill which resulted from a pipeline breakage within a 12' easement leased by Vaquero but extended way beyond the easement to property owned by Mitsui and managed by ITMC. The property is described generally as 2700 Tidal Rd., La Port, Texas 77571, Harris County, Texas. The property is described legally:

THE FOLLOWING IS A CENTERLINE DESCRIPTION OF A PROPOSED TWELVE INCH (12") PHENOL PIPELINE EXTENDING OVER, THROUGH, ALONG AND ACROSS THE RESIDUE OF 98.6698 ACRES OF LAND SITUATED IN GEORGE ROSS SURVEY A-646, HARRIS COUNTY, TEXAS, MORE PARTICULARLY DESCRIBED IN SPECIAL WARRANTY DEED FROM FLUOR CONSTRUCTORS, INC. TO MITSUI & CO. (U.S.A.), INC., RECORDED UNDER COUNTY COURT'S FILE NUMBER H826946, (FILM CODE 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) OFFICIAL PUBLIC RECORDS OF REAL PROPERTY, HARRIS COUNTY, TEXAS AND THE RESIDUE OF 85.3667 ACRES OF LAND SITUATED IN THE GEORGE ROSS SURVEY, A-646, HARRIS COUNTY, TEXAS. MORE PARTICULARLY DESCRIBED IN CORRECTION WARRANTY DEED FROM ROLLINS PROPERTIES, INC. TO MITSUI & CO. (U.S.A.), INC.

RECORDED UNDER COUNTY CLERK FILE NUMBER L892213 (FILM CODE 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), OFFICIAL PUBLIC RECORDS OF REAL PROPERTY, HARRIS COUNTY, TEXAS WITH A MEADS AND BOUNCE DESCRIPTION ATTACHED HERETO AS EXHIBIT "A".

2.     Intercontinental Terminals Management Co. operates the facility and land owned by Mitsui as described above for hire bulk liquid storage facility that stores a variety of chemicals and petro chemicals. Defendant, Intercontinental Terminals Management Co. is an agent of Mitsui & Co. (U.S.A.), Inc. wherein they provided for Mitsui among other things a systematic, proactive approach to prevention of accidental releases of hazardous chemicals. Their system includes but is not limited to the following:

       a.     A process hazard analysis;
       b.     Operating procedure;
       c.     Training;
       d.     Management of Claim;
       e.     Prestart up review;
       f.     Compliance audit; and
       g.     Accident investigation.

3.     Defendants, Vaquero Pipeline Company, L.P. and Vaquero Pipeline Company 1, LLC (hereinafter referred to as Vaquero) is the pipeline lessee under an easement with Defendant Mitsui which is attached hereto as Exhibit "B". Thus, Vaquero leases the pipeline and is managed and over seen by ITMC on land owned by Mitsui.

4.     I was permitted to act as an authorized agent following the June 2006 phenol spill for the following purposes:

       a.     Authorizing amendments to material profile sheets;
       b.     Signing certifications necessary to comply with the disposal and/or recyclers requirements;
       c.     Signing certifications and/or notices for compliance with land ban restrictions;
       d.     Signing waste manifest to initiate shipments to disposal and recycle facilities; and
       e.     Signing profiles and contracts to dispose and/or transport materials.

5.     Phenol spills pose a severe health hazard and need to be handled with extreme caution. Phenol is highly corrosive to the skin and readily absorb through it, where upon it can affect the central nervous system and cause damage to the

liver and kidneys. When heated, phenol will produce flammable vapors that are highly toxic (just a few parts per million and explosive) at concentrations of three percent to ten percent in air.

6.    I personally oversaw the remediation required of the surrounding soil which resulted from the phenol spill performed by Alamo from June 2006 through November 2006.

7.    The work performed by Alamo included but was not limited to removing, disposing and remediating several thousand tons of soil not just in the area covered by the 12" easement leased by Vaquero but on a half to 1 acre area of land actually owned by Mitsui not the subject of the lease. It was agents of Mitsui and in particular employees of Defendant, ITMC which directed substantial aspects of the remediation in this case. In particular, Gary Carroll, Carl Holly and an individual named Max, all employees of ITMC directed and controlled entrance and exit to the facilities. The pipeline easement and enjoining areas affected by the spill/releases were required to be remediated in accordance with the requirements set forth in the TCEQ Spill Rules (30 TAC 327). ITMC receives and reviewed all laboratory an analytical data results from sampling activities performed to delineate the extent of contamination within the pipeline easement and enjoining areas. ITMC required Alamo to submit a specific site health and safety plan, submit proof of insurance naming ITMC, implementation of area monitoring plan and a 24 hour/7 day a week site safety/monitoring plan. ITMC's staff, representatives and environmental consultants were involved daily with work activities with respect to receiving information as well as on site attendant representation during sampling events. This was all on Mitsui's land and it was Mitsui's land and not just the area of the pipeline easement which was improved. Additionally, during the remediation process there were subsequent discharges of phenol and rains which contaminated other areas not originally the subject of the remediation at the direction of Mitsui and ITMC on Mitsui's land. Vaquero and ITMC acted as authorized agents of Mitsui during this project which I witnessed as an independent broker actually hired by Vaquero.

Further Affiant sayeth not.

_Michael E. Edmondson_

_Micky Edmondson_
MICKY EDMONDSON

EXHIBIT A-8

SUBSCRIBED AND SWORN TO BEFORE ME by the said MICKY EDMONDSON
on this the **9th** day of June, 2008, to certify which witness my hand and seal of office.



GEORGETTE LUCADO
My Commission Expires
August 15, 2011

Notary Public, State of Texas

Unofficial Copy Office of Marilyn Burgess District Clerk

463-107 Affidavit of Micky Edmondson.wpd                    4

2020-54452 / Court: 215

Dillard_Exhibit 10

CAUSE NO. 2006-75336

| | | |
|---|---|---|
| ALAMO ENVIRONMENTAL, INC. § | | IN THE DISTRICT COURT |
| D/B/A ALAMO1 § | | |
| | § | |
| VS. § | 157th JUDICIAL DISTRICT | |
| | § | |
| VAQUERO PIPELINE COMPANY, L.P., § | | |
| VAQUERO PIPELINE COMPANY 1, § | | |
| L.L.C., INTERCONTINENTAL § | | |
| TERMINALS MANAGEMENT § | | |
| COMPANY AND MITSUI & CO. (U.S.A.), § | | |
| INC. § | HARRIS COUNTY, TEXAS | |

## AFFIDAVIT OF RICHARD SCHRIBER

Before me the undersigned notary public personally appeared Richard Schriber who after being duly sworn and deposed stated under oath: my name is Richard Schriber, I am over the age of 18, of sound mind, competent to make this affidavit and every statement contained herein is true, correct and within my personal knowledge.

1. I am the Project Manager of Alamo Environmental, Inc. d/b/a Alamo1. Alamo1 is a Texas corporation which provides services as a full service contractor that specializes in industrial construction, demolition, remediation, abatement, technical services, waste transportation, emergency response, recycling, health and safety compliance. I was the project manager with regard to the phenol spill made the basis of this lawsuit.

2. In June 2006 , Alamo1 responded to a phenol spill which resulted form a pipeline breakage within a 12" easement leased by Vaquero but extended well beyond the easement to property owned by Mitsui and managed by ITMC. The property where the response was done is described generally as 2700 Tidal Road, La Port, Texas 77571, Harris County, Texas. The property is described legally as:

   THE FOLLOWING IS A CENTERLINE DESCRIPTION OF A PROPOSED TWELVE INCH (12") PHENOL PIPELINE EXTENDING OVER, THROUGH, ALONG AND ACROSS THE RESIDUE OF 98.6698 ACRES OF LAND SITUATED IN GEORGE ROSS SURVEY A-646, HARRIS COUNTY, TEXAS, MORE PARTICULARLY DESCRIBED IN SPECIAL WARRANTY DEED FROM FLUOR CONSTRUCTORS, INC. TO MITSUI & CO. (U.S.A.), INC., RECORDED UNDER COUNTY COURT'S FILE NUMBER H826946, (FILM CODE 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) OFFICIAL PUBLIC RECORDS OF REAL PROPERTY, HARRIS COUNTY, TEXAS AND THE RESIDUE OF 85.3667 ACRES OF

1

LAND SITUATED IN THE GEORGE ROSS SURVEY, A-646, HARRIS COUNTY, TEXAS. MORE PARTICULARLY DESCRIBED IN CORRECTION WARRANTY DEED FROM ROLLINS PROPERTIES, INC. TO MITSUI & CO. (U.S.A.), INC. RECORDED UNDER COUNTY CLERK FILE NUMBER E892213 (FILM CODE 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), OFFICIAL PUBLIC RECORDS OF REAL PROPERTY, HARRIS COUNTY, TEXAS WITH A MEADS AND BOUNCE DESCRIPTION ATTACHED HERETO AS EXHIBIT "A".

3.  Intercontinental Terminals Management Co. operates the facility and land owned by Mitsui as described above for hire bulk liquid storage facility that stores a variety of chemicals and petro chemicals. Defendant Intercontinental Terminals Management Co. is an agent of Mitsui & Co. (U.S.A.), Inc. wherein they provided for Mitsui among other things a systematic, proactive approach to prevention of accidental releases of hazardous chemicals.   Their system includes but is not limited to the following:

    a.   A process hazard analysis;
    b.   Operating procedure;
    c.   Training;
    d.   Management of Claim;
    e.   Prestart up review;
    f.   Compliance audit; and
    g.   Accident investigation;

4.  Defendants, Vaquero Pipeline Company, L.P. and Vaquero Pipeline Company 1, LLC (hereinafter referred to as Vaquero) is the pipeline lessee under an easement with Defendant Mitsui which is attached hereto as Exhibit "B". Thus, Vaquero leases the pipeline and is managed and over seen by ITMC on land owned by Mitsui.

5.  Phenol spills pose a severe health hazard and need to be handled with extreme caution.  Phenol is highly corrosive to the skin and readily absorb through it, where upon it can affect the central nervous system and cause damage to the liver and kidneys.  When heated, phenol will produce flammable vapors that are highly toxic (just a few parts per million and explosive) at concentrations of three percent to ten percent in air.

6.  The remediation required of the surrounding soil which resulted from the phenol spill was substantial and went from June 2006 through November 2006.  It required 24 hour a day watch and monitoring.  Over $437,111.51 was spent in disposal charges.  They include incineration charges of $146,703.43 as seen in Invoice No. AH06155X1 and $186,524.48 in incineration charges as demonstrated in Invoice No. AH-06-155X3. Additionally, there is burial disposal

2

EXHIBIT A-9

of $25,035.48 as seen in Invoice No. AH06-155X and another $9,203.22 of burial disposal charges as seen in Invoice No. AH06-155X5. Finally, there was liquid disposal of $36,436.40 as seen in Invoice No. AH06-155X1 and an additional $33,208.50 as seen in Invoice No. AH06-155X3. Labor charges totaled $236,231.25 through September 2006 with an additional $248,119.98 in subcontractor charges from October 2006 through November 2006. Additionally, Alamo spent $161,436.25 in equipment charges. The total charges as seen on the chart attached hereto incurred by Alamo are $1,127,833.99. This includes several thousand tons of soil actually removed, disposed of and/or remediated not just in the area covered by the easement leased by Vaquero but on a ½ to 1 acre area of land actually owned by Mitsui, not subject to the lease. It was agents of Mitsui and in particular employees of Defendant, ITMC and the consultant, Michael E. Edmondson which directed aspects of the remediation in this case. In particular, Gary Carroll, Carl Holly and individual Max, an employee of ITMC and the consultant, Michael E. Edmondson directed and controlled entrance and exit to the facilities. Michael E. Edmondson further provided what material was to be removed and what depths and lengths the material was to be removed. This was all on Mitsui's land and it was Mitsui's land and not just the area of the pipeline easement which was improved. It was clear to all parties involved that Vaquero and ITMC were authorized agents of Mitsui regarding the work Alamo1 performed.

In fact during the course of the project there were subsequent discharges and rains which required Alamo to remediate soils not previously contaminated again at the request and direction of Mitsui's agents on Mitsui's land.

7.    As seen in the attachments, Alamo billed Vaquero each month work was performed. Alamo further provided notices to ITMC as well as Mitsui of these unpaid amounts for valuable remediation work which they knew they were receiving and which they specifically requested from Alamo1.

8.    Alamo timely filed Mechanic's Liens and sent notices to Mitsui and ITMC in accordance with the Texas Property Code. The Mechanic's Lien included the following:

1.    A sworn statement of the amount claimed;

2.    The name and last known address of the owner or reputed owner;

3.    A general statement of the kind of work done and materials furnished by the Claimant, even though not necessary as Plaintiff was an original contractor a statement of each month in which the work was performed and materials furnished for which payment was requested;

4.    The name and last known address of the person by whom the Claimant

3

was employed or to whom the Claimant furnished the materials or labor;

5.    The name and last known address of the original contractor, even though it was Plaintiff;

6.    A description legally sufficient for the identification, of the property sought to be charged with the lien;

7.    The Claimant's name, mailing address and physical address;

8.    A statement identifying the date each notice of the claim was sent to the owner and the method in which it was sent.

Further Affiant sayeth not.

_____
RICHARD SCHRIBER

SUBSCRIBED AND SWORN TO BEFORE ME by the said RICHARD SCHRIBER on this the ___9___ day of June, 2008, to certify which witness my hand and seal of office.

_____
Notary Public, State of Texas

TAMARA KAY FILLINGAME
Notary Public, State of Texas
Commission Expires 6-25-11

4

5957-069 Affidavit of Richard Schriber 1

05-102
(Rev.9-15/33)

**Texas Franchise Tax Public Information Report**
*To be filed by Corporations, Limited Liability Companies (LLC), Limited Partnerships (LP), Professional Associations (PA) and Financial Institutions*

2020-54452 / Court: 215

Dillard_Exhibit 11

191347726006

■ **Tcode** 13196 Franchise

■ **Taxpayer number**

| 1 | 7 | 4 | 1 | 7 | 0 | 6 | 4 | 6 | 0 | 1 |

■ **Report year**

| 2 | 0 | 1 | 9 |

*You have certain rights under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381.*

| Taxpayer name | Intercontinental Terminals Management Company | ○ Blacken circle if the mailing address has changed. |
| Mailing address | 2424 Hazard Street | Secretary of State (SOS) file number or Comptroller file number |
| City | Houston | State TX | ZIP code plus 4 77019 | 0030166700 |

● Blacken circle if there are currently no changes from previous year; if one is displayed, complete the applicable information in Sections A, B and C.

| Principal office | 2424 Hazard Street Houston, TX 77019 |
| Principal place of business | 2424 Hazard Street Houston, TX 77019 |

*You must report officer, director, member, general partner and manager information as of the date you complete this report.*

**Please sign below!** This report must be signed to satisfy franchise tax requirements.

1741706460119

**SECTION A** Name, title and mailing address of each officer, director, member, general partner or manager.

| Name | Stephen W Miles | Title | Pres | Director ● YES | Term expiration | m m d d y y 1 2 3 1 1 9 |
| Mailing address | 2424 Hazard Street | City | Houston | | State TX | ZIP Code 77019 |
| Name | Marilyn R Miles | Title | Treasurer | Director ● YES | Term expiration | m m d d y y 1 2 3 1 1 9 |
| Mailing address | 2424 Hazard Street | City | Houston | | State TX | ZIP Code 77019 |
| Name | Stephen W Miles Jr | Title | VP | Director ● YES | Term expiration | m m d d y y 1 2 3 1 1 9 |
| Mailing address | 2424 Hazard Street | City | Houston | | State TX | ZIP Code 77019 |

**SECTION B** Enter information for each corporation, LLC, LP, PA or financial institution, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution NONE | State of formation | Texas SOS file number, if any | Percentage of ownership |
| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |

**SECTION C** Enter information for each corporation, LLC, LP, PA or financial institution, if any, that owns an interest of 10 percent or more in this entity.

| Name of owned (parent) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |

| Registered agent and registered office currently on file *(see instructions if you need to make changes)* | *You must make a filing with the Secretary of State to change registered agent, registered office or general partner information.* |
| Agent: Norman T Reynolds | |
| Office: Three Riverway Ste 1800 | City Houston | State TX | ZIP Code 77056 |

The information on this form is required by Section 171.203 of the Tax Code for each corporation, LLC, LP, PA or financial institution that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director, member, general partner or manager and who is not currently employed by this or a related corporation, LLC, LP, PA or financial institution.

| sign here ▶ Marilyn R Miles | Title VP Manager | Date 5/8/19 | Area code and phone number (713)363-9411 |

**Texas Comptroller Official Use Only**

05-102|(Rev.9-15/33)|13196|17417064601|2019|Wed May 08 2019 09:17:19 GMT-0500 (Central Daylight Time)|9997|0|

| VE/DE ○ | PIR IND ○ |

05-102
(Rev.9-15/33)
FORM

## Texas Franchise Tax Public Information Report

*To be filed by Corporations, Limited Liability Companies (LLC), Limited Partnerships (LP), Professional Associations (PA) and Financial Institutions*

2020-544527/Court 215

Dillard_Exhibit 12

■ **Tcode** 13196 Franchise

■ **Taxpayer number**

| 1 | 7 | 4 | 1 | 8 | 6 | 4 | 3 | 4 | 6 | 0 |
|---|---|---|---|---|---|---|---|---|---|---|

■ **Report year**

| 2 | 0 | 1 | 9 |
|---|---|---|---|

**You have certain rights** under Chapter 552 and 559, Government Code, to review, request and correct information we have on file about you. Contact us at 1-800-252-1381.

| Taxpayer name | **Intercontinental Bulk Systems Inc** | ■ ◯ Blacken circle if the mailing address has changed. |
|---|---|---|

| Mailing address | **2424 Hazard Street** | | Secretary of State (SOS) file number or Comptroller file number |
|---|---|---|---|
| City | **Houston** | State **TX** | ZIP code plus 4 **77019** | **003774880** |

● Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

| Principal office | **2424 Hazard Street Houston, TX 77019** |
|---|---|
| Principal place of business | **2424 Hazard Street Houston, TX 77019** |

*You must report officer, director, member, general partner and manager information as of the date you complete this report.*

**Please sign below!** **This report must be signed to satisfy franchise tax requirements.**

1741864346019

**SECTION A** Name, title and mailing address of each officer, director, member, general partner or manager.

| Name | Title | Director | Term expiration | m m d d y y |
|---|---|---|---|---|
| **Stephen W Miles** | **Chairman** | ● YES | | 1 2 3 1 1 9 |
| Mailing address **2424 Hazard Street** | City **Houston** | State **TX** | | ZIP Code **77019** |
| **Marilyn R Miles** | **VP/Treasurer** | ● YES | | 1 2 3 1 1 9 |
| Mailing address **2424 Hazard Street** | City **Houston** | State **TX** | | ZIP Code **77019** |
| **Stephen W Miles Jr** | **President** | ● YES | | 1 2 3 1 1 9 |
| Mailing address **2424 Hazard Street** | City **Houston** | State **TX** | | ZIP Code **77019** |

**SECTION B** Enter information for each corporation, LLC, LP, PA or financial institution, if any, in which this entity owns an interest of 10 percent or more.

| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution **NONE** | State of formation | Texas SOS file number, if any | Percentage of ownership |
|---|---|---|---|
| Name of owned (subsidiary) corporation, LLC, LP, PA or financial institution | State of formation | Texas SOS file number, if any | Percentage of ownership |

**SECTION C** Enter information for each corporation , LLC, LP, PA or financial institution, if any, that owns an interest of 10 percent or more in this entity.

| Name of owned (parent) corporation, LLC, LP, PA or financial institution **Intercontinental Terminals Management Company** | State of formation **TX** | Texas SOS file number, if any **0030166700** | Percentage of ownership **100** |
|---|---|---|---|

| Registered agent and registered office currently on file *(see instructions if you need to make changes)* | *You must make a filing with the Secretary of State to change registered agent, registered office or general partner information.* |
|---|---|
| Agent: **Norman T Reynolds** | |
| Office: **Three Riverway Ste 1800** | City **Houston** | State **TX** | ZIP Code **77056** |

The information on this form is required by Section 171.203 of the Tax Code for each corporation, LLC, LP, PA or financial institution that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director, member, general partner or manager and who is not currently employed by this or a related corporation, LLC, LP, PA or financial institution.

| sign here ▶ *Marilyn R Miles* | Title **VP/Treas** | Date **5/8/19** | Area code and phone number **(713)583 9411** |
|---|---|---|---|

**Texas Comptroller Official Use Only**

05-102|(Rev.9-15/33)|13196|17418643460|2019|Wed May 08 2019 09:
22:41 GMT-0500 (Central Daylight Time)|9997|0|

| VE/DE ◯ | PIR IND ◯ |
|---|---|



2020-54452 / Count: 215

Dillard_Ex 13



Baylor's Texas Tradition - Learn to enhance public health through MPH@Baylor, in the heart of Texas　Ad …

Promoted

Baylor's MPH Online
GRE scores are not required to apply to Baylor's MPH online program.

Lawyer for 5+ years?
Get $1MM Life Insurance From $36/Month* Save Up To 41%!

Are You an Attorney?
Apply for membership to expand your business. Get more valuable customers.

## Stephen Miles · 3rd

President at ICP Management LLC

Houston, Texas Area · 158 connections · Contact info

 ICP Management LLC

 Cornell Johnson Graduate School of Management

People Also Viewed

 Aron Yellott · 3rd
EHS Manager

 Paul Dickerson · 3rd
Technical and Engineering Production Management

 Andrew Alegnani · 3rd
Independent Licensed Health & Agent at DFW Health Brokers

 Wesley Drnek · 3rd
Pipeline Controller at Midstream Integrity Services (MIS)

 Azareel H. · 3rd
Senior Product Manager at SABIC

 Tim Gaffigan · 3rd
Vice President, West Gulf Coast

 Ralph Sanchez · 3rd
IT Specialist at ITC

 Drew Spence · 3rd
Vice President, Product Supply & Marketing at HollyFrontier Corpo…

 Christopher Davis · 3rd+
Dispatch Supervisor at Texas Trans Eastern Inc

 Ryne Carwile · 3rd
Director of Project Management/Estimating at 888 SERVICES, INC.

Add new skills with these courses

 Pre-investing: Before Investing in Real Estat…
Viewers: 18,650

 Business Acumen for Project Managers

## Experience

 **President**
ICP Management LLC
2013 – Present · 7 yrs

We research and develop tank terminal infrastructure and manage existing commercial properties.

 **Intercontinental Bulk Systems, Inc.**
13 yrs 3 mos

**President**
Jan 2007 – Present · 13 yrs 3 mos

We research and develop tank terminal infrastructure and manage existing commercial properties.

**President**
Jan 2007 – Present · 13 yrs 3 mos

 **Steering Committee/Webmaster**
http://www.ForexTradersAssociation.org/
2003 – Present · 17 yrs

 **Vice President Strategic Planning Information Technology**
Intercontinental Terminals Company
Feb 1995 – Dec 2006 · 11 yrs 11 mos

Chemical and Petroleum Products tank storage services

## Education

 **Cornell Johnson Graduate School of Management**
1989 – 1990

## Skills & Endorsements

**Strategic Planning** · 4

 Endorsed by 3 of Stephen's colleagues at Intercontinental Terminals Company, LLC

Messaging



**Christina Quintero**

2020-54452 / Court: 215

---

| | |
|---|---|
| **From:** | Carlos Medina <CMedina@iterm.com> |
| **Sent:** | Friday, February 12, 2016 2:48 PM |
| **To:** | Christina Quintero |
| **Cc:** | rpena@cimaserveslp.com; vjimenez@cimaserveslp.com; 'Faraon Gonzales' |
| **Subject:** | RE: CO Request - Butane Line |

Christina; please split the change  this change order in two (2) as follows;

| Days Total | CO #1 | CO#2 |
|---|---|---|
| 4,721.40 | 4,721.40 | |
| 1,573.80 | 1,573.80 | |
| 1,602.50 | 1,602.50 | |
| 4,006.25 | 4,006.25 | |
| 2,478.10 | - | 2,478.10 |
| 2,181.75 | - | 2,181.75 |
| 16,563.80 | 11,903.95 | 4,659.85 |

*Split 2 C/O.*
*to Carlos*
*#1 $ 11,903.95*
*# 2. $ 4,659.85*
*Re-Sent to Carlos*

**Carlos H. Medina** | Engineering Manager
Intercontinental Terminals Co, LLC
1943 Independence Pkwy S. | LaPorte, TX 77571
Office: 281.884.0211 | Cell : 281.786.9511

**From:** Christina Quintero [mailto:cquintero@cimaserveslp.com]
**Sent:** Tuesday, January 19, 2016 4:25 PM
**To:** Carlos Medina
**Cc:** rpena@cimaserveslp.com; vjimenez@cimaserveslp.com; 'Faraon Gonzales'
**Subject:** CO Request - Butane Line

Good afternoon,

Please see attached Change Order Request for the Butane Line project.

Feel free to contact us if you have any questions or concerns.

Thank You,
*Christina Quintero*
Accounts Receivable
cquintero@cimaserveslp.com

CiMA SERVICES, L.P.
PO Box 0646 | South Houston, TX 77587
Office: 713-946-5053 Ext: 2798 | Fax: 832-548-8316

1



CIMA Services, L.P.
*A Full Service Industrial Company*

**SUBCONTRACTORS
REQUEST FOR
CHANGE ORDER**

| | |
|---|---|
| Request #: | **001** |

Date: _____1/19/2016_____    Request Amount: $ **11,903.95**

Customer: ITC _____
_____PO Box 698_____
_____Deer Park, TX 77536_____
_____

Project Name: Butane Injection Line _____
_____
_____
_____

Attn: Carlos Medina _____

| Purpose / Description for request: | Amount | |
|---|---|---|
| | | |
| **Butane Line Mechanical** | | |
| Downtime (12/14-12/16) | $ | 4,721.40 |
| Waiting on Operations (01/11) | $ | 1,573.80 |
| Stopped by Operations (01/16) | $ | 1,602.50 |
| Stopped by Operations (01/17) | $ | 4,006.25 |
| | | |
| TOTAL AMOUNT FOR CHANGE ORDER | $ | **11,903.95** |

| | | |
|---|---|---|
| Original Contract Amount: | $ | - |
| Net Change Order(s) Previously Authorized: | $ | - |
| Contract to be increased / decreased in the amount of: | $ | 11,903.95 |
| New Contract Amount (including this change order): | $ | 11,903.95 |

_____          _____
Customer Signature for Approval                            Date

CIMA 000002



**CIMA Services, L.P.**
*A Full Service Industrial Company*

## SUBCONTRACTORS REQUEST FOR CHANGE ORDER

Request #: **002**

Date: _____1/19/2016_____                    Request Amount: $ **4,659.85**

Customer: ITC                               Project Name: Butane Injection Line
PO Box 698
Deer Park, TX 77536

                                            Attn: Carlos Medina

| Purpose / Description for request: | Amount |
|---|---|
| | |
| **Butane Line Mechanical** | |
| Overtime Cost (01/16) | $ 2,478.10 |
| Overtime Cost (01/16) | $ 2,181.75 |
| | |
| | |
| | |
| **TOTAL AMOUNT FOR CHANGE ORDER** | **$ 4,659.85** |

| | | |
|---|---|---|
| Original Contract Amount: | $ | - |
| Net Change Order(s) Previously Authorized: | $ | - |
| Contract to be increased / decreased in the amount of: | $ | 4,659.85 |
| New Contract Amount (including this change order): | $ | 4,659.85 |

_____                    _____
Customer Signature for Approval                    Date



**CIMA Services, L.P.**
*A Full Service Industrial Company*

**SUBCONTRACTORS
REQUEST FOR
CHANGE ORDER**

Request #: **002**

Date: **1/19/2016**

Request Amount: **$ 16,563.80**

Customer: ITC
PO Box 698
Deer Park, TX 77536

Project Name: Butane Injection Line

Attn: Carlos Medina

| Purpose / Description for request | Amount |
|---|---|
| | |
| | |
| Butane Line Mechanical | $ 16,563.80 |
| (See attached spreadsheet for breakdown) | |
| | |
| | |
| | |
| **TOTAL AMOUNT FOR CHANGE ORDER** | **$ 16,563.80** |

Original Contract Amount:                                                                -
Net Change Order(s) Previously Authorized:                                     -
Contract to be increased / decreased in the amount of:              16,563.80
New Contract Amount (including this change order):                    16,563.80

*Carlos Medina*
*Csos - Rodolfo Valdo*

_____                    _____
Customer Signature for Approval                          Date

*EMAIL 1/19. 02*

Job # 1086-15-007

Buraine Line
Mechanical

Downtime waiting on fittings 12/14/-12/15 12/16

| Date | Item Description | Unit Price | Quantities | Mark-up 10% | Pricing |
|------|------------------|-----------|-----------|-------------|---------|
| | Supervisor/Sixto Garcia | $75.50 | 6 | | $453.00 |
| | Safety/Robert Richardson | $60.00 | 6 | | $360.00 |
| | Foreman/JoseAlamo | $68.15 | 6 | | $408.90 |
| | Welder/LuisPena | $62.00 | 6 | | $372.00 |
| | Welderhelper/JoseD.Trevino | $40.00 | 6 | | $240.00 |
| | Pipefitter/HenrySanchez | $62.00 | 6 | | $372.00 |
| | Helper/AgustinGarcia | $40.00 | 6 | | $240.00 |
| | Firewatch/EfrainAlamo | $35.25 | 6 | | $211.50 |
| | Welderrig/L.Pena | $44.00 | 6 | | $264.00 |
| | 15 Ton crane | $350.00 | 3 | | $1,050.00 |
| | Manlift | $250.00 | 3 | | $750.00 |
| | **TOTAL** | | | | **$4,721.40** |

Waited on Operations to clean out the line

| Date | Item Description | Unit Price | Quantities | Mark-up 10% | Pricing |
|------|------------------|-----------|-----------|-------------|---------|
| 1/11/2016 | Supervisor/Sixto Garcia | $75.50 | 2 | | $151.00 |
| | Safety/Robert Richardson | $60.00 | 2 | | $120.00 |
| | Foreman/JoseAlamo | $68.15 | 2 | | $136.30 |
| | Welder/OzielLopez | $62.00 | 2 | | $124.00 |
| | Welderhelper/JacobPerez | $40.00 | 2 | | $80.00 |
| | Pipefitter/HenrySanchez | $62.00 | 2 | | $124.00 |
| | Helper/AgustinGarcia | $40.00 | 2 | | $80.00 |
| | Firewatch/EfrainAlamo | $35.25 | 2 | | $70.50 |
| | Welderrig/O.Lopez | $44.00 | 2 | | $88.00 |
| | 15 Ton crane | $350.00 | 1 | | $350.00 |
| | Manlift | $250.00 | 1 | | $250.00 |
| | **TOTAL** | | | | **$1,573.80** |

Operations stopped us from working because they were going to fill a truck

| Date | Item Description | Unit Price | Quantities | Mark-up 10% | Pricing |
|------|------------------|-----------|-----------|-------------|---------|
| 1/16/2016 | Supervisor/Sixto Garcia | $113.25 | 2 | | $226.50 |
| | Safety/Robert Richardson | $90.00 | 2 | | $180.00 |
| | Foreman/JoseAlamo | $102.25 | 2 | | $204.50 |
| | Welder/OzielLopez | $93.00 | 2 | | $186.00 |
| | Welderhelper/JacobPerez | $60.00 | 2 | | $120.00 |
| | Rigger/JonathanChavez | $93.00 | 2 | | $186.00 |
| | Pipefitter/HenrySanchez | $93.00 | 2 | | $186.00 |
| | Helper/JoelChavez | $60.00 | 2 | | $120.00 |
| | Firewatch/EfrainAlamo | $52.75 | 2 | | $105.50 |
| | Welderrig/O.Lopez | $44.00 | 2 | | $88.00 |
| | **TOTAL** | | | | **$1,602.50** |

CIMA 000005

Operations stopped us from working because they were going to fill a truck

| Date | Item Description | Unit Price | Quantities | Mark-up 10% | Pricing |
|---|---|---|---|---|---|
| 1/17/2016 | Supervisor/Sixto Garcia | $113.25 | 5 | | $566.25 |
| | Safety/Robert Richardson | $90.00 | 5 | | $450.00 |
| | Foreman/JoseAlamo | $102.25 | 5 | | $511.25 |
| | Welder/OzielLopez | $93.00 | 5 | | $465.00 |
| | Welderhelper/JacobPerez | $60.00 | 5 | | $300.00 |
| | Rigger/JonathanChavez | $93.00 | 5 | | $465.00 |
| | Pipefitter/HenrySanchez | $93.00 | 5 | | $465.00 |
| | Helper/JoelChavez | $60.00 | 5 | | $300.00 |
| | Firewatch/EfrainAlamo | $52.75 | 5 | | $263.75 |
| | Welderrig/O.Lopez | $44.00 | 5 | | $220.00 |
| | **TOTAL** | | | | **$4,006.25** |

Cost for overtime

| Date | Item Description | Unit Price | Quantities | Mark-up 10% | Pricing |
|---|---|---|---|---|---|
| 1/16/2016 | Supervisor/Sixto Garcia | $37.75 | 6 | | $226.50 |
| | Safety/Robert Richardson | $30.00 | 6 | | $180.00 |
| | Foreman/JoseAlamo | $34.10 | 6 | | $204.60 |
| | Welder/OzielLopez | $31.00 | 6 | | $186.00 |
| | Welderhelper/Jacob Perez | $20.00 | 6 | | $120.00 |
| | Rigger/JonathanChavez | $31.00 | 6 | | $186.00 |
| | Pipefitter/HenrySanchez | $31.00 | 6 | | $186.00 |
| | Helper/JoelChavez | $20.00 | 6 | | $120.00 |
| | Firewatch/EfrainAlamo | $17.50 | 6 | | $105.00 |
| | Welderrig/O.Lopez | $44.00 | 6 | | $264.00 |
| | Tool trailer | $250.00 | 1 | | $250.00 |
| | Truck | $100.00 | 1 | | $100.00 |
| | 15 Ton crane | $350.00 | 1 | | $350.00 |
| | **TOTAL** | | | | **$2,478.10** |

Cost for overtime

| Date | Item Description | Unit Price | Quantities | Mark-up 10% | Pricing |
|---|---|---|---|---|---|
| 1/16/2016 | Supervisor/Sixto Garcia | $37.75 | 5 | | $188.75 |
| | Safety/Robert Richardson | $30.00 | 5 | | $150.00 |
| | Foreman/JoseAlamo | $34.10 | 5 | | $170.50 |
| | Welder/Oziel Lopez | $31.00 | 5 | | $155.00 |
| | Welderhelper/Jacob Perez | $20.00 | 5 | | $100.00 |
| | Rigger/JonathanChavez | $31.00 | 5 | | $155.00 |
| | Pipefitter/HenrySanchez | $31.00 | 5 | | $155.00 |
| | Helper/JoelChavez | $20.00 | 5 | | $100.00 |
| | Firewatch/EfrainAlamo | $17.50 | 5 | | $87.50 |
| | Welderrig/O.Lopez | $44.00 | 5 | | $220.00 |
| | Tool trailer | $250.00 | 1 | | $250.00 |
| | Truck | $100.00 | 1 | | $100.00 |
| | 15 Ton crane | $350.00 | 1 | | $350.00 |
| | **TOTAL** | | | | **$2,181.75** |

| | **TOTAL** | | | | **$16,563.80** |

CIMA 000006

Job # 1086-15-007 

Butaine Line
Mechanical

Downtime waiting on fittings 12/14/ 12/15 12/16

| Date | Item Description | Unit Price | Quantities | Mark-up 10% | Pricing |
|------|------------------|------------|------------|-------------|---------|
| | Supervisor/Sixto Garcia | $75.50 | 6 | | $453.00 |
| | Safety/Robert Richardson | $60.00 | 6 | | $360.00 |
| | Foreman/JoseAlamo | $68.15 | 6 | | $408.90 |
| | Welder/LuisPena | $62.00 | 6 | | $372.00 |
| | Welderhelper/JoseD.Trevino | $40.00 | 6 | | $240.00 |
| | Pipefitter/HenrySanchez | $62.00 | 6 | | $372.00 |
| | Helper/AgustinGarcia | $40.00 | 6 | | $240.00 |
| | Firewatch/EfrainAlamo | $35.25 | 6 | | $211.50 |
| | Welderrig/L.Pena | $44.00 | 6 | | $264.00 |
| | 15 Ton crane | $350.00 | 3 | | $1,050.00 |
| | Manlift | $250.00 | 3 | | $750.00 |
| | **TOTAL** | | | | **$4,721.40** |

Waited on Operations to clean out the line

| Date | Item Description | Unit Price | Quantities | Mark-up 10% | Pricing |
|------|------------------|------------|------------|-------------|---------|
| 1/11/2016 | Supervisor/Sixto Garcia | $75.50 | 2 | | $151.00 |
| | Safety/Robert Richardson | $60.00 | 2 | | $120.00 |
| | Foreman/JoseAlamo | $68.15 | 2 | | $136.30 |
| | Welder/OzielLopez | $62.00 | 2 | | $124.00 |
| | Welderhelper/JacobPerez | $40.00 | 2 | | $80.00 |
| | Pipefitter/HenrySanchez | $62.00 | 2 | | $124.00 |
| | Helper/AgustinGarcia | $40.00 | 2 | | $80.00 |
| | Firewatch/EfrainAlamo | $35.25 | 2 | | $70.50 |
| | Welderrig/O.Lopez | $44.00 | 2 | | $88.00 |
| | 15 Ton crane | $350.00 | 1 | | $350.00 |
| | Manlift | $250.00 | 1 | | $250.00 |
| | **TOTAL** | | | | **$1,573.80** |

Operations stopped us from working because they were going to fill a truck

| Date | Item Description | Unit Price | Quantities | Mark-up 10% | Pricing |
|------|------------------|------------|------------|-------------|---------|
| 1/16/2016 | Supervisor/Sixto Garcia | $113.25 | 2 | | $226.50 |
| | Safety/Robert Richardson | $90.00 | 2 | | $180.00 |
| | Foreman/JoseAlamo | $102.25 | 2 | | $204.50 |
| | Welder/OzielLopez | $93.00 | 2 | | $186.00 |
| | Welderhelper/JacobPerez | $60.00 | 2 | | $120.00 |
| | Rigger/JonathanChavez | $93.00 | 2 | | $186.00 |
| | Pipefitter/HenrySanchez | $93.00 | 2 | | $186.00 |
| | Helper/JoelChavez | $60.00 | 2 | | $120.00 |
| | Firewatch/EfrainAlamo | $52.75 | 2 | | $105.50 |
| | Welderrig/O.Lopez | $44.00 | 2 | | $88.00 |

CIMA 000007

TOTAL  $1,602.50

Operations stopped us from working because they were going to fill a truck

| Date | Item Description | Unit Price | Quantities | Mark-up 10% | Pricing |
|---|---|---|---|---|---|
| 1/17/2016 | Supervisor/Sixto Garcia | $113.25 | 5 | | $566.25 |
| | Safety/Robert Richardson | $90.00 | 5 | | $450.00 |
| | Foreman/JoseAlamo | $102.25 | 5 | | $511.25 |
| | Welder/OzielLopez | $93.00 | 5 | | $465.00 |
| | Welderhelper/JacobPerez | $60.00 | 5 | | $300.00 |
| | Rigger/JonathanChavez | $93.00 | 5 | | $465.00 |
| | Pipefitter/HenrySanchez | $93.00 | 5 | | $465.00 |
| | Helper/JoelChavez | $60.00 | 5 | | $300.00 |
| | Firewatch/EfrainAlamo | $52.75 | 5 | | $263.75 |
| | Welderrig/O.Lopez | $44.00 | 5 | | $220.00 |
| | **TOTAL** | | | | **$4,006.25** |

Cost for overtime

| Date | Item Description | Unit Price | Quantities | Mark-up 10% | Pricing |
|---|---|---|---|---|---|
| 1/16/2016 | Supervisor/Sixto Garcia | $37.75 | 6 | | $226.50 |
| | Safety/Robert Richardson | $30.00 | 6 | | $180.00 |
| | Foreman/JoseAlamo | $34.10 | 6 | | $204.60 |
| | Welder/OzielLopez | $31.00 | 6 | | $186.00 |
| | Welderhelper/Jacob Perez | $20.00 | 6 | | $120.00 |
| | Rigger/JonathanChavez | $31.00 | 6 | | $186.00 |
| | Pipefitter/HenrySanchez | $31.00 | 6 | | $186.00 |
| | Helper/JoelChavez | $20.00 | 6 | | $120.00 |
| | Firewatch/EfrainAlamo | $17.50 | 6 | | $105.00 |
| | Welderrig/O.Lopez | $44.00 | 6 | | $264.00 |
| | Tool trailer | $250.00 | 1 | | $250.00 |
| | Truck | $100.00 | 1 | | $100.00 |
| | 15 Ton crane | $350.00 | 1 | | $350.00 |
| | **TOTAL** | | | | **$2,478.10** |

Cost for overtime

| Date | Item Description | Unit Price | Quantities | Mark-up 10% | Pricing |
|---|---|---|---|---|---|
| 1/16/2016 | Supervisor/Sixto Garcia | $37.75 | 5 | | $188.75 |
| | Safety/Robert Richardson | $30.00 | 5 | | $150.00 |
| | Foreman/JoseAlamo | $34.10 | 5 | | $170.50 |
| | Welder/Oziel Lopez | $31.00 | 5 | | $155.00 |
| | Welderhelper/Jacob Perez | $20.00 | 5 | | $100.00 |
| | Rigger/JonathanChavez | $31.00 | 5 | | $155.00 |
| | Pipefitter/HenrySanchez | $31.00 | 5 | | $155.00 |
| | Helper/JoelChavez | $20.00 | 5 | | $100.00 |
| | Firewatch/EfrainAlamo | $17.50 | 5 | | $87.50 |
| | Welderrig/O.Lopez | $44.00 | 5 | | $220.00 |
| | Tool trailer | $250.00 | 1 | | $250.00 |

CIMA 000008

| | | | |
|---|---|---|---|
| Truck | $100.00 | 1 | $100.00 |
| 15 Ton crane | $350.00 | 1 | $350.00 |
| TOTAL | | | $2,181.75 |
| | | | |
| TOTAL | | | $16,563.80 |

| Object Name | R55435XX |
| Version | ITC0004 |

**INTERCONTINENTAL TERMINALS COMPANY L**
**PURCHASE ORDER**

12/2/2015
Page -      1

Order Number 362676  OS

| Shipped From | Remit To | Ship To |
|---|---|---|
| CIMA SERVICES L.P. | INTERCONTINENTAL TERMINALS COMPANY | INTERCONTINENTAL TERMINALS COMPANY LLC |
| P O BOX 0646 | P.O. BOX 698 | 2621 TIDAL ROAD |
| SOUTH HOUSTON TX 77587 | DEER PARK TX 77536 | DEER PARK TX 77536 |

**\*\*\*\*\*ACKNOWLEDGE RECEIPT OF THIS PURCHASE ORDER TO THE ITC ENGINEERING DEPARTMENT\*\*\*\*\***

**BY EMAIL TO TWOFFORD@ITERM.COM OR FAX 281-884-0238**

| Ordered | 12/2/2015 | Freight | | | Order Taken By |
| | | Carrier | | | Currency Code |
| Delivery | | | | | |

| Line | Item Number | Description | Ordered | UOM | Unit Price | PU UM | Extended Price | Job Number | Cost Code |
|---|---|---|---|---|---|---|---|---|---|
| 1.000 | | Labor, Equipment &  Consumable | | EA | 34,900.0000 | EA | 34,900.00 | 16-3109 | 0106 |
| | | 80-8 Butane Injection Line | | | | | | | |

Provide Labor, Equipment and Consumables to demo the existing 2" Butane
injection line and install a new 4" line utilizing a section of the old Aniline wash
line from 80-8 to the 80's Tank Truck Rack. Per Lump Sum proposal submitted by Valdo Jimenez.

| | | | | | Total Order | 34,900.00 |
|---|---|---|---|---|---|---|
| | | Tax Group Summary | | | | |
| 101 | | 8.250 % | | | 34,900.00 | 2,879.25 |
| | | | | | Sales Tax | Total Order |
| Term  Net 30 Days | | Tax Rate | 8.250 | | 2,879.25 | 37,779.25 |

**CIMA 000010**

# IN.ERCONTINENTAL TERMINALS CO.
## Purchase Requisition

| REQUEST DATE | REQUESTED BY | DEPT | DEPT MGR APP | ACCOUNT OR PROJECT | ORDER DATE | DUE DATE | PO NUMBER |
|---|---|---|---|---|---|---|---|
| 11/23/15 | R. Surguy | Eng. | C.Medina | 16-3109-0106 | 11/23/15 | | |

**VENDOR NUMBER**

CIMA Services L.P.

Attn: Valdo Jiminez

EMAIL  vjimenez@cimaserviceslp.com

PHONE  713-946-5053

**PROJECT MANAGER - Randy Surguy**

**Contractor - CIMA Services L.P.**
**Contact Person - Valdo Jiminez**
**Phone -  713-946-5053**

**S U P P L I E R**

**SHIP TO**

INTERCONTINENTAL TERMINALS COMPANY LLC

1943 Independence Pkwy S

La Porte, TX 77571

**MARK FOR**
INTERCONTINENTAL TERMINALS COMPANY LLC

**BILL TO**
PO BOX 698
DEER PARK, TX 77536
ATTN: ACCOUNTS PAYABLE
ap@iterm.com
281-884-0311

**SPECIAL INSTRUCTIONS**

### 80-8 Butane Injection Line

| PAGE | OF |
|---|---|
| | |

| LINE | QUANTITY | ITC/VENDOR PART NUMBER AND DESCRIPTION | UNIT PRICE | | EXTENDED PRICE |
|---|---|---|---|---|---|
| 1 | 1 | Provide Labor, Equipment and Consumables to demo the existing 2" Butane injection line and install a new 4" line utilizing a section of the old Aniline wash line from 80-8 to the 80's Tank Truck Rack. Per Lump Sum proposal submitted by Valdo Jiminez on. | $ | 34,900.00 | $    34,900.00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | TOTAL | $    34,900.00 |

PURCHASE APPROVED BY

plus taxes & freight    $    CIMA000011



CIMA Services, L.P.
A Full Service Industrial Company

# JOB SET-UP FORM

| JOB NUMBER | 1086-15-007 | SALES | VJ | ESTIMATOR | VJ | PSR | CQ |
|---|---|---|---|---|---|---|---|

| Customer Name and Billing Address | Intercontinental Terminal Co. LLC<br>PO Box 698<br>Deer Park, TX 77536<br>ATTN: ACCOUNTS PAYABLE<br>ap@iterm.com | | |
|---|---|---|---|
| Contact Name & Phone/Fax | Lee Garcia | | 281-884-0300 |
| | | Fax | P.O. # |
| Site Location (Map to site MUST be attached) | ITC<br>2621 Tidal Road<br>Deer Park, TX 77536 | | |
| Site contact/phone # | Valdo Jimenez | Phone | 832-656-1622 |
| Project Description | Butane Injection 80-8 | | |

| Start Date/Estimated Completion Date (A Copy of Project Proposal and/or Scope of work MUST be attached. | Start Date | Est. Completion Date |
|---|---|---|
| | 10/26/15 | |
| Does Site Have Water, Air, Electricity? | | |
| Under Concrete Y/N | Gated/combination? | |
| Permits/One-Call | | |

| PERSONNEL | # OF PPL NEEDED | TIME NEEDED | DESCRIPTION OF WORK TO BE PERFORMED BY THAT PERSON |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| EQUIPMENT | QTY | LENGTH NEEDED | DESCRIPTION |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

CIMA 000012

| EQUIPMENT | QTY | LENGTH NEEDED | DESCRIPTION |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

| MATERIALS | QTY | ORDERED BY | VENDOR PURCHASED/RENTED FROM |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**Misc.**

| SAFETY EQUIPMENT/MATERIALS | QTY | UNITS (pk/ea/bg) | VENDOR PURCHASED/RENTED/INVENTORY |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

| SAFETY & TRAINING REQUIREMENTS | DESCRIPTION |
|---|---|
| Are there any special training requirements or personnel clearances?  If so list them. |  |
| Hazards involved with work to be performed: |  |
| Chemicals of Concern or Chemical Last contained" |  |
| Will Subcontractors be used on the project?   ☐ Yes   ☒ No | |
| If yes, list name of contractor, point of contact and phone number: |  |
| Other Data if possible: MSDS, Lab Analysis Sheet, Manifest, etc. |  |

CIMA 000013

**Scope of Work:**

**ASSUMPTIONS/CLARIFICATIONS:**

Should you have any questions or require additional information, please contact Adam Cortez or myself at 713.946.5053.

**CIMA 000014**

| Object Name | RS5435XX |
| Version | ITC0004 |

## INTERCON...MENTAL TERMINALS COMPANY LLC
## PURCHASE ORDER

12/2/2015
Page ·    1

Order Number  362676   OS

| Shipped From | Remit To | Ship To |
|---|---|---|
| CIMA SERVICES L. P. | INTERCONTINENTAL TERMINALS COMPANY | INTERCONTINENTAL TERMINALS COMPANY LLC |
| P O BOX 0646 | P.O. BOX 698 | 2621 TIDAL ROAD |
| SOUTH HOUSTON TX 77587 | DEER PARK TX 77536 | DEER PARK TX 77536 |

1086-15-007.

### *****ACKNOWLEDGE RECEIPT OF THIS PURCHASE ORDER TO THE ITC ENGINEERING DEPARTMENT*****
### BY EMAIL TO TWOFFORD@ITERM.COM OR FAX 281-884-0238

| Ordered | 12/2/2015 | Freight | | | | Order Taken By |
| Delivery | | Carrier | | | | Currency Code |

| Line | Item Number | Description | Ordered | UOM | Unit Price | PU UM | Extended Price | Job Number | Cost Code |
|---|---|---|---|---|---|---|---|---|---|
| 1.000 | | Labor, Equipment &  Consumable | | EA | 34,900.0000 | EA | 34,900.00 | 16-3109 | 0106 |
| | | 80-8 Butane Injection Line | | | | | | | |

Provide Labor, Equipment and Consumables to demo the existing 2" Butane
injection line and install a new 4" line utilizing a section of the old Aniline wash
line from 80-8 to the 80's Tank Truck Rack. Per Lump Sum proposal submitted by Valdo Jimenez.

| | | | | Total Order | 34,900.00 |
|---|---|---|---|---|---|
| | Tax Group Summary | | | | |
| 101 | | 8.250 % | 34,900.00 | | 2,879.25 |
| | | | Sales Tax | | Total Order |
| Term  Net 30 Days | Tax Rate | 8.250 | 2,879.25 | | 37,779.25 |

**CIMA 000015**

R55435XX

## INTERCONTINENTAL TERMINALS COMPANY LLC
## PURCHASE ORDER

11/18/2015
Page -    1

\*\*\*\*\*\*\*\*\*\*REPRINT\*\*\*\*\*\*\*\*\*

Order Number    40754    OR

| Shipped From | Remit To | Ship To |
|---|---|---|
| CIMA SERVICES L. P . | INTERCONTINENTAL TERMINALS COMPANY | INTERCONTINENTAL TERMINALS COMPANY LLC |
| P O BOX 0646 | P.O. BOX 698 | 2621 TIDAL ROAD |
| SOUTH HOUSTON TX 77587 | DEER PARK TX 77536 | DEER PARK TX 77536 |

*1086-15-007*
*SubCont.(Pb)*

. \*\*\*\*\*ACKNOWLEDGE RECEIPT OF THIS PURCHASE ORDER TO THE ITC PURCHASING DEPARTMENT\*\*\*\*\*

BY EMAIL TO TWOFFORD@ITERM.COM OR FAX 281-884-0238

Ordered    11/18/2015   Freight
Carrier

Order Taken By
Currency Code

Delivery

| Line | Item Number | Description | Ordered | UOM | Unit Price | PU UM | Extended Price | Job Number | Cost Code |
|---|---|---|---|---|---|---|---|---|---|
| 1.000 | | Scaffolding | 1.0000 | EA | 7,620.0000 | EA | 7,620.00 | 104 | 02 |
| | | Upgrade to Butane System 80-8 | | | | | | | |

Total Order    7,620.00

Sales Tax    Total Order

| Term  Net 30 Days | Tax Rate | | .00 | 7,620.00 |

*No Sales Tax*

**CIMA 000016**

CIMA Services L.P.
P.O. Box 0646
South Houston, Texas 77587
Phone 713.946.5053 Fax 832.548.8316



## Pricing for Upgrades to the Butane Line at Tank 80-8 and the Truck Rack at the Tidal Road Facility in Deer Park, Texas

| CUSTOMER INFORMATION | | SITE LOCATION | |
|---|---|---|---|
| Name: | Intercontinental Terminals Co (ITC) | Name: | Intercontinental Terminals Co |
| Address: | 19436 Independence Pkwy | Address: | 2626 Tidal Road |
| City: | La Porte, Texas 77571 | City: | Deer Park, Texas 77536 |
| Contact: | Carlos Medina | Contact: | Carlos Medina |

CIMA Services, L.P. (CIMA) is pleased to present the following pricing for the demolition of a 2" butane line along with installation of a new 4" replacement line. Our scope of work includes mobilization and demobilization of personnel and equipment to the job site to perform the work. CIMA personnel will obtain work permits and perform tailgate safety meetings daily prior to starting any work.

CIMA will install up to 350 linear feet of new 4" carbon steel piping at the locations and routes observed at the site visit (80's Truck Rack and Tank 80-8 Manifold). The new 4" piping will tie into the existing 2" pipes using 4x2 welded reducers. The new piping will run on the existing sleeper racks at the tank and the existing overhead rack at the truck dock. Pricing is based on performing all elevated work using a man lift and scaffolding. Once new piping is in place, CIMA will require a one day shutdown to perform the tie-ins. Pricing is based on piping welds being 10% x-rayed and a 150# air pressure test being performed for the new line. Our pricing includes all materials and labor for painting of the piping and scaffolding for installation.

| Description | Quantity | Unit | Rate | Total |
|---|---|---|---|---|
| Butane Piping Demolition and Installation of New Piping | 1 | LSUM | $34,900.00 | $34,900.00 |
| Painting and Coatings of Materials | 1 | LSUM | $16,175.00 | $16,175.00 |
| Scaffolding to Perform Scope | 1 | LSUM | $7,620.00 | $7,620.00 |
| | | | Estimated Total | $58,695.00 |

CIMA has made the following assumptions and clarifications in preparation of the above pricing:

- CIMA assumes 10 hours per day/5 days per week;
- Any and all equipment and waste materials currently staged around the site will be removed by others prior to mobilization to the site;
- Excluded protection and/or relocation of any utility line(s); i.e., shielding of electrical power lines, etc. not included, closing of streets, traffic control or to remove lines from service;
- Pricing assumes that ITC will provide all materials (piping, fittings, bolt up, etc.);

- Excludes down time due to other contractors working in the same work area and/or any work stoppage by ITC operations or safety personnel beyond the control of CIMA Services;
- Pricing is valid for 30 days and subject to the execution of a mutually acceptable agreement.

Should you have any questions or require additional information, please contact me at 713.946.5053.

Sincerely,

*Valdo Jimenez*

CIMA 000018

CIMA Services L.P.
P.O. Box 0646
South Houston, Texas 77587
Phone 713.946.5053 Fax 832.548.8346



## Pricing for Upgrades to the Butane Line at Tank 80-8 and the Truck Rack at the Tidal Road Facility in Deer Park, Texas

| CUSTOMER INFORMATION | | SITE LOCATION | |
|---|---|---|---|
| Name: | Intercontinental Terminals Co (ITC) | Name: | Intercontinental Terminals Co |
| Address: | 19436 Independence Pkwy | Address: | 2626 Tidal Road |
| City: | La Porte, Texas 77571 | City: | Deer Park, Texas 77536 |
| Contact: | Carlos Medina | Contact: | Carlos Medina |

**CIMA Services, L.P. (CIMA)** is pleased to present the following pricing for the demolition of a 2" butane line along with installation of a new 4" replacement line. Our scope of work includes mobilization and demobilization of personnel and equipment to the job site to perform the work. CIMA personnel will obtain work permits and perform tailgate safety meetings daily prior to starting any work.

CIMA will install up to 350 linear feet of new 4" carbon steel piping at the locations and routes observed at the site visit (80's Truck Rack and Tank 80-8 Manifold). The new 4" piping will tie into the existing 2" pipes using 4x2 welded reducers. The new piping will run on the existing sleeper racks at the tank and the existing overhead rack at the truck dock. Pricing is based on performing all elevated work using a man lift and ITC provided scaffolding. Once new piping is in place, CIMA will require a one day shutdown to perform the tie-ins. Pricing is based on piping welds being 10% x-rayed and a 150# air pressure test being performed for the new line. Pipe coatings/painting, insulating, etc. is not assumed to be part of this scope of work and is excluded from our pricing.

| Description | Quantity | Unit | Total |
|---|---|---|---|
| Butane Piping Demolition and Installation of New Piping | 1 | LSUM | $34,900.00 |

CIMA has made the following assumptions and clarifications in preparation of the above pricing:

- CIMA assumes 10 hours per day/5 days per week;
- Any and all equipment and waste materials currently staged around the site will be removed by others prior to mobilization to the site;
- Excluded protection and/or relocation of any utility line(s); i.e., shielding of electrical power lines, etc. not included, closing of streets, traffic control or to remove lines from service;
- Pricing assumes that ITC will provide all materials (piping, fittings, bolt up, etc.) and scaffolding;
- CIMA assumes that scaffolding will be installed prior to our mobilization at all locations necessary;
- Excludes down time due to other contractors working in the same work area and/or any work stoppage by ITC operations or safety personnel beyond the control of CIMA Services;
- Pricing is valid for 30 days and subject to the execution of a mutually acceptable agreement.

Should you have any questions or require additional information, please contact me at 713.946.5053.

Sincerely,

*Valdo Jimenez*



**CIMA Services, LP**
PO Box 0646
South Houston, TX 77587

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/10/2016 | 6305 |

| Bill To |
|---------|
| Intercontinental Terminal Co. LLC |
| PO Box 698 |
| Deer Park, TX 77536 |
| Attn: Accounts Payable |
| ap@iterm.com |

| Ship To |
|---------|
| Intercontinental Terminals LLC |
| 2621 Tidal Road |
| Deer Park, TX 77536 |

| Sales Rep | Project | P.O. No. | Terms | Due Date |
|-----------|---------|----------|-------|----------|
| Valdo Jimenez | 1086-15-007 (MECH) ITC - Butane I... | 362676 OS | Net 30 | 4/9/2016 |

| Date | Description | Quantity | Rate | Amount |
|------|-------------|----------|------|--------|
| | Upgrade to Butane System 80-8 | | | |
| | c/o Carlos Medina | | | |
| | | | | |
| | Change Order #1 | | | |
| | Butane Line Mechanical - Downtime & Delays | 1.00 | 11,903.95 | 11,903.95T |
| | | | | |
| | Subtotal | | | 11,903.95 |

**Thank You For Your Business!**

| | |
|--|--|
| Subtotal | $11,903.95 |
| Sales Tax | $982.08 |
| **Total Invoice** | **$12,886.03** |
| Payments/Credits | $0.00 |
| **Balance Due** | $12,886.03 |

CIMA 000020

Remit to: Cima Services, L.P.  P.O. Box 0646, South Houston TX 77587  Ph - 713-946-5053   Fax - 832-548-8316



**CIMA Services, L.P.**
*A Full Service Industrial Company*

## SUBCONTRACTORS REQUEST FOR CHANGE ORDER

Request #: **001**

Date: 1/19/2016     Request Amount: $ **11,903.95**

Customer: ITC          Project Name: Butane Injection Line
PO Box 698
Deer Park, TX 77536

Attn: Carlos Medina

16-3/01-030/

| Purpose / Description for request: | | Amount |
|---|---|---|
| | | |
| **Butane Line Mechanical** | | |
| Downtime (12/14-12/16) | $ | 4,721.40 |
| Waiting on Operations (01/11) | $ | 1,573.80 |
| Stopped by Operations (01/16) | $ | 1,602.50 |
| Stopped by Operations (01/17) | $ | 4,006.25 |
| | | |
| TOTAL AMOUNT FOR CHANGE ORDER | $ | **11,903.95** |

Original Contract Amount:                                      $            -
Net Change Order(s) Previously Authorized:            $            -
Contract to be increased / decreased in the amount of:   $     11,903.95
New Contract Amount (including this change order):    $     11,903.95

_____          Feb.16.2016
Customer Signature for Approval               Date

CIMA 000021



**CIMA Services, LP**
PO Box 0646
South Houston, TX 77587

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/10/2016 | 6306 |

| Bill To |
|---------|
| Intercontinental Terminal Co. LLC |
| PO Box 698 |
| Deer Park, TX 77536 |
| Attn: Accounts Payable |
| ap@iterm.com |

| Ship To |
|---------|
| Intercontinental Terminals LLC |
| 2621 Tidal Road |
| Deer Park, TX 77536 |

| Sales Rep | Project | P.O. No. | Terms | Due Date |
|-----------|---------|----------|-------|----------|
| Valdo Jimenez | 1086-15-007 (MECH) ITC - Butane I... | 362518 OS | Net 30 | 4/9/2016 |

| Date | Description | Quantity | Rate | Amount |
|------|-------------|----------|------|--------|
| | Upgrade to Butane System 80-8 | | | |
| | c/o Carlos Medina | | | |
| | | | | |
| | Change Order #2 | | | |
| | Butane Line Mechanical - Overtime Cost | 1.00 | 4,659.85 | 4,659.85T |
| | | | | |
| | Subtotal | | | 4,659.85 |

**Thank You For Your Business!**

| | |
|---|---|
| Subtotal | $4,659.85 |
| Sales Tax | $384.44 |
| **Total Invoice** | **$5,044.29** |
| Payments/Credits | $0.00 |
| **Balance Due** | $5,044.29 |

CIMA 000022



CIMA Services, LP
PO Box 0646
South Houston, TX 77587

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/10/2016 | 6306 |

**Bill To**

Intercontinental Terminal Co. LLC
PO Box 698
Deer Park, TX 77536
Attn: Accounts Payable
ap@iterm.com

**Ship To**

Intercontinental Terminals LLC
2621 Tidal Road
Deer Park, TX 77536

362518

| Sales Rep | Project | P.O. No. | Terms | Due Date |
|-----------|---------|----------|-------|----------|
| Valdo Jimenez | 1086-15-007 (MECH) ITC - Butane I... | 362676 OS | Net 30 | 4/9/2016 |

| Date | Description | Quantity | Rate | Amount |
|------|-------------|----------|------|--------|
| | Upgrade to Butane System 80-8￼c/o Carlos Medina￼￼Change Order #2￼Butane Line Mechanical - Overtime Cost | 1.00 | 4,659.85 | 4,659.85T |
| | Subtotal | | | 4,659.85 |

**Thank You For Your Business!**

| | |
|---|---|
| Subtotal | $4,659.85 |
| Sales Tax | $384.44 |
| **Total Invoice** | **$5,044.29** |
| Payments/Credits | $0.00 |
| **Balance Due** | **$5,044.29** |

CIMA 000023



**CIMA Services, L.P.**
*A Full Service Industrial Company*

**SUBCONTRACTORS
REQUEST FOR
CHANGE ORDER**

Request #:  **002**

Date:  _1/19/2016_                    Request Amount: $  **4,659.85**

Customer: ITC                          Project Name: Butane Injection Line

PO Box 698

Deer Park, TX 77536

Attn: Carlos Medina

| Purpose / Description for request | Amount |
|---|---|
|  |  |
| **Butane Line Mechanical** |  |
| Overtime Cost (01/16) | $        2,478.10 |
| Overtime Cost (01/16) | $        2,181.75 |
|  |  |
|  |  |
|  |  |
| TOTAL AMOUNT FOR CHANGE ORDER | $        **4,659.85** |

Original Contract Amount:                                              $            -
Net Change Order(s) Previously Authorized:                            $            -
Contract to be increased / decreased in the amount of:               $        4,659.85
New Contract Amount (including this change order):                    $        4,659.85

_____                    _Feb.16.2016_
Customer Signature for Approval                                      Date

P.O. Box 0646 • South Houston, TX 77587 • Office: 713-946-5053 • Fax: 832-548-8316 • www.cimaserviceslp.com

CIMA 000024

Christina Quintero

| | |
|---|---|
| From: | Carlton (Spud) Homfeld <CHOMFELD@iterm.com> |
| Sent: | Thursday, March 10, 2016 5:56 PM |
| To: | Christina Quintero; Carlos Medina |
| Cc: | rpena@cimaserveslp.com; vjimenez@cimaserveslp.com; 'Faraon Gonzales' |
| Subject: | RE: CO Request - Butane Line |

Christina,

Request # 2 for $4,659.85 needs to be invoiced on ITC purchase order # 362518. Please call if you have any questions.

Regards,
Carlton (Spud) Homfeld
Maintenance Director
Intercontinental Terminals Company LLC
chomfeld@iterm.com
office-281-884-0367
mobile-281-380-1031

**From:** Christina Quintero [mailto:cquintero@cimaserveslp.com]
**Sent:** Thursday, March 10, 2016 11:13 AM
**To:** Carlos Medina
**Cc:** rpena@cimaserveslp.com; vjimenez@cimaserveslp.com; 'Faraon Gonzales'; Carlton (Spud) Homfeld
**Subject:** RE: CO Request - Butane Line

Good morning Carlos,

I have two change orders (attached) that have not been invoiced. Is it ok to invoice both change orders today? Also, I have original PO# as 362676. Will that be the PO # to use?

Please let me know and feel free to contact us if you have any questions.

Thanks! ☺

*Christina Quintero*
**Accounts Receivable**
cquintero@cimaserveslp.com
**CiMA SERVICES, L.P.**
**PO Box 0646 | South Houston, TX 77587**
**Office: 713-946-5053 Ext: 2798 | Fax: 832-548-8316**

**From:** Carlos Medina [mailto:CMedina@iterm.com]
**Sent:** Tuesday, February 16, 2016 11:05 AM
**To:** Christina Quintero <cquintero@cimaserveslp.com>
**Cc:** rpena@cimaserveslp.com; vjimenez@cimaserveslp.com; 'Faraon Gonzales' <fgonzales@cimaconcrete.com>;
Carlton (Spud) Homfeld <CHOMFELD@iterm.com>
**Subject:** RE: CO Request - Butane Line

CIMA 000025

Please find attached signed Change Order.

Carlos H. Medina | Engineering Manager
Intercontinental Terminals Co, LLC
1943 Independence Pkwy S. | LaPorte, TX 77571
Office: 281.884.0211 | Cell : 281.786.9511

**From:** Christina Quintero [mailto:cquintero@cimaserviceslp.com]
**Sent:** Tuesday, February 16, 2016 9:44 AM
**To:** Carlos Medina
**Cc:** rpena@cimaserviceslp.com; vjimenez@cimaserviceslp.com; 'Faraon Gonzales'
**Subject:** RE: CO Request - Butane Line

Hi Carlos,

I split the change order into two as requested. Please review attachments and let me know if you need anything else.

Thank you!


*Christina Quintero*
Accounts Receivable
cquintero@cimaserviceslp.com
CiMA SERVICES, L.P.
PO Box 0646 | South Houston, TX 77587
Office: 713-946-5053 Ext: 2798 | Fax: 832-548-8316


**From:** Carlos Medina [mailto:CMedina@iterm.com]
**Sent:** Friday, February 12, 2016 2:48 PM
**To:** Christina Quintero <cquintero@cimaserviceslp.com>
**Cc:** rpena@cimaserviceslp.com; vjimenez@cimaserviceslp.com; 'Faraon Gonzales' <fgonzales@cimaconcrete.com>
**Subject:** RE: CO Request - Butane Line

Christina; please split the change  this change order in two (2) as follows;

| Days Total | CO #1 | CO#2 |
|---|---|---|
| 4,721.40 | 4,721.40 | |
| 1,573.80 | 1,573.80 | |
| 1,602.50 | 1,602.50 | |
| 4,006.25 | 4,006.25 | |
| 2,478.10 | - | 2,478.10 |
| 2,181.75 | - | 2,181.75 |
| 16,563.80 | 11,903.95 | 4,659.85 |


**Carlos H. Medina | Engineering Manager**
Intercontinental Terminals Co, LLC
1943 Independence Pkwy S. | LaPorte, TX 77571
Office: 281.884.0211 | Cell : 281.786.9511

2

CIMA 000026

**From:** Christina Quintero [mailto:cquintero@cimaserviceslp.com]
**Sent:** Tuesday, January 19, 2016 4:25 PM
**To:** Carlos Medina
**Cc:** rpena@cimaserviceslp.com; vjimenez@cimaserviceslp.com; 'Faraon Gonzales'
**Subject:** CO Request - Butane Line

Good afternoon,

Please see attached Change Order Request for the Butane Line project.

Feel free to contact us if you have any questions or concerns.

Thank You,
*Christina Quintero*
Accounts Receivable
cquintero@cimaserviceslp.com

CiMA SERVICES, L.P.
PO Box 0646 | South Houston, TX 77587
Office: 713-946-5053 Ext: 2798 | Fax: 832-548-8316

CIMA 000027

**Christina Quintero**

| | |
|---|---|
| **From:** | Christina Quintero <cquintero@cimaserviceslp.com> |
| **Sent:** | Tuesday, February 16, 2016 9:44 AM |
| **To:** | 'Carlos Medina' |
| **Cc:** | 'rpena@cimaserviceslp.com'; 'vjimenez@cimaserviceslp.com'; 'Faraon Gonzales' |
| **Subject:** | RE: CO Request - Butane Line |
| **Attachments:** | ITC Change Order - Request 1_1086-15-007.pdf; ITC Change Order - Request 2_1086-15-007.pdf |

Hi Carlos,

I split the change order into two as requested. Please review attachments and let me know if you need anything else.

Thank you!

*Christina Quintero*
**Accounts Receivable**
cquintero@cimaserviceslp.com
CiMA SERVICES, L.P.
PO Box 0646 | South Houston, TX 77587
Office: 713-946-5053 Ext: 2798 | Fax: 832-548-8316


**From:** Carlos Medina [mailto:CMedina@iterm.com]
**Sent:** Friday, February 12, 2016 2:48 PM
**To:** Christina Quintero <cquintero@cimaserviceslp.com>
**Cc:** rpena@cimaserviceslp.com; vjimenez@cimaserviceslp.com; 'Faraon Gonzales' <fgonzales@cimaconcrete.com>
**Subject:** RE: CO Request - Butane Line

Christina; please split the change  this change order in two (2) as follows;

| Days Total | CO #1 | CO#2 |
|---|---|---|
| 4,721.40 | 4,721.40 | |
| 1,573.80 | 1,573.80 | |
| 1,602.50 | 1,602.50 | |
| 4,006.25 | 4,006.25 | |
| 2,478.10 | - | 2,478.10 |
| 2,181.75 | - | 2,181.75 |
| 16,563.80 | 11,903.95 | 4,659.85 |

**Carlos H. Medina** | Engineering Manager
Intercontinental Terminals Co, LLC
1943 Independence Pkwy S. | LaPorte, TX 77571
Office: 281.884.0211 | Cell : 281.786.9511

**From:** Christina Quintero [mailto:cquintero@cimaserviceslp.com]
**Sent:** Tuesday, January 19, 2016 4:25 PM

1

CIMA 000028

**To:** Carlos Medina
**Cc:** rpena@cimaserviceslp.com; vjimenez@cimaserviceslp.com; 'Faraon Gonzales'
**Subject:** CO Request - Butane Line

Good afternoon,

Please see attached Change Order Request for the Butane Line project.

Feel free to contact us if you have any questions or concerns.

Thank You,
*Christina Quintero*
**Accounts Receivable**
cquintero@cimaserviceslp.com

**CiMA SERVICES, L.P.**
**PO Box 0646 | South Houston, TX 77587**
**Office: 713-946-5053 Ext: 2798 | Fax: 832-548-8316**

**CIMA 000029**



CIMA Services, L.P.
A Full Service Industrial Company

**SUBCONTRACTORS**
**REQUEST FOR**
**CHANGE ORDER**

Request #: **001**

Date: 1/19/2016

Request Amount: $ **11,903.95**

Customer: ITC
PO Box 698
Deer Park, TX 77536

Project Name: Butane Injection Line

Attn: Carlos Medina

| Purpose / Description for request: | Amount |
|---|---|
| | |
| **Butane Line Mechanical** | |
| Downtime (12/14-12/16) | $ 4,721.40 |
| Waiting on Operations (01/11) | $ 1,573.80 |
| Stopped by Operations (01/16) | $ 1,602.50 |
| Stopped by Operations (01/17) | $ 4,006.25 |
| | |
| TOTAL AMOUNT FOR CHANGE ORDER | $ 11,903.95 |

| | | |
|---|---|---|
| Original Contract Amount: | $ | - |
| Net Change Order(s) Previously Authorized: | $ | - |
| Contract to be increased / decreased in the amount of: | $ | 11,903.95 |
| New Contract Amount (including this change order): | $ | 11,903.95 |

Customer Signature for Approval

Date

P.O. Box 0646 • South Houston, TX 77587 • Office: 713-946-5053 • Fax: 832-548-8316 • www.cimaservceslp.com

CIMA 000030



CiMA Services, L.P.
*A Full Service Industrial Company*

**SUBCONTRACTORS
REQUEST FOR
CHANGE ORDER**

Request #: **002**

Date: 1/19/2016

Request Amount: $ **4,659.85**

Customer: ITC
PO Box 698
Deer Park, TX 77536

Project Name: Butane Injection Line

Attn: Carlos Medina

| Purpose / Description for request: | Amount |
|---|---|
| | |
| **Butane Line Mechanical** | |
| Overtime Cost (01/16) | $ 2,478.10 |
| Overtime Cost (01/16) | $ 2,181.75 |
| | |
| | |
| | |
| TOTAL AMOUNT FOR CHANGE ORDER | $ **4,659.85** |

| | | |
|---|---|---|
| Original Contract Amount: | $ | - |
| Net Change Order(s) Previously Authorized: | $ | - |
| Contract to be increased / decreased in the amount of: | $ | 4,659.85 |
| New Contract Amount (including this change order): | $ | 4,659.85 |

_____        _____

Customer Signature for Approval                          Date



**CIMA Services, LP**
PO Box 0646
South Houston, TX 77587

# Invoice

| Date | Invoice # |
|------|-----------|
| 1/31/2016 | 6107 |

| Bill To | Ship To |
|---------|---------|
| Intercontinental Terminal Co. LLC<br>PO Box 698<br>Deer Park, TX 77536<br>Attn: Accounts Payable<br>ap@iterm.com | Intercontinental Terminals LLC<br>2621 Tidal Road<br>Deer Park, TX 77536 |

| Sales Rep | Project | P.O. No. | Terms | Due Date |
|-----------|---------|----------|-------|----------|
| Valdo Jimenez | 1086-15-007 (MECH) ITC - Butane I... | 362676 OS | Net 30 | 3/1/2016 |

| Date | Description | Quantity | Rate | Amount |
|------|-------------|----------|------|--------|
| | Upgrade to Butane System 80-8<br>Scaffold/ Manlift | | | |
| | Supervision, Labor and Equipment 100% Complete | 1.00 | 8,725.00 | 8,725.00T |
| | Subtotal | | | 8,725.00 |

## Thank You For Your Business!

| | |
|---|---|
| Subtotal | $8,725.00 |
| Sales Tax | $719.81 |
| **Total Invoice** | **$9,444.81** |
| Payments/Credits | $0.00 |
| **Balance Due** | **$9,444.81** |

CIMA 000032

Remit to: Cima Services, L.P. P.O. Box 0646, South Houston TX 77587 Ph - 713-946-5053 Fax - 832-548-8316

Date: Wednesday, November 18, 2015
Job #: 1086-15-007
Customer: ITC
Customer Contract: Lee Garcia
Customer PO: 40754 OR
Description: Scaffolding
Project Amout: $7,620.00 PO 40754 OR, $34,900.00 PO 362676 OS,
Project Tax: $628.65 + $2,879.25

| January Invoice | | Total |
|---|---|---|
| | | |
| PO 36267 OS | | |
| Upgrade to Butane System 80-8 | Bill 100% | $8,725.00 |
| Tax 8.250% | | $719.81 |
| | | |
| | *Tax 8.250%* | *$0.00* |
| | **Grand Total** | **$9,444.81** |

CIMA 000033



**CiMA**
CIMA Services, L.P.
A Full Service Industrial Company

P.O. Box 0646, South Houston TX 77587
PH: (713) 946-5053   Fax: 832-548-0316

**Work Order**

M   1243

| Customer: *ITC* | | | | | Contact: *Randy* | | |
|---|---|---|---|---|---|---|---|
| Date: *1-4-16* | | Job Site/CIMA Job #: | | | Job PO#: *100615002* | | |
| Job Complete: ☐ Yes  ☑ No | | Job Description: | | | | | |

| Craft | Employee Name | Time (30 min Lunch Mandatory) | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Time In | Time Out | Straight Time | Overtime | |
| | Jon Alonso | 6:30 | 5:00 | | | 9 |
| | Elogid Alano | 6:30 | 5:00 | | | 10 |
| | Henry Sanchez | 6:30 | 5:00 | | | 10 |
| | Jacob Perez | 6:30 | 5:00 | | | 10 |
| | Agustin Garcia | 6:30 | 6:00 | | | 11 |
| | Oziel Lopez | 6:30 | 5:00 | | | 10 |
| | Nelson Ortiz Gonzalez | 6:30 | 5:00 | | | 10 |

*Different time sheet*

| Equipment | Unit No. | Time | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Leave Yard | Arrive Plant | Leave Plant | Arrive Yard | |
| Tool Trailer | | | | | | |
| Office Trailer | | | | | | |
| Crew Truck | | | | | | |
| All Terrain Fork Lift        (lb) | | | | | | |
| Air Compressor        CFM | | | | | | |
| Vacuum Truck (           ) | | | | | | |
| Welding Machine | | | | | | |
| Cutting Torches | | | | | | |
| Man Lift        (Size) | | | | | | |
| *Pick up van* | *Agustin Garcia* | | | | | 1 |

| Safety Gear | Consumables | Misc. Equipment | | Extra Materials/Equipment  PO# |
|---|---|---|---|---|
| Slicker Suits | Spill Kit | | | |
| QC Tyvek Suits | Drinking Water (case) | | | |
| Chemical Gloves | Grinding Disk        (inches) | | | |
| APR Respirator | Welding Rods | | | |
| Breathing Air Respirator w/ 5 min | Fire Blankes | | | |
| Confined Space Kit | Duct Tape (roll) | | | |
| 4-Gas Monitor | 6ml Poly Sheeting (roll) | | | |
| Safety Harness | 6ml Poly Bags (each) | | | |
| OVA/P100 Cartridges (pair) | Face Shields | | | |
| Chemical Boots (pair) | Fuel | | | |
| Safety Life Lines | Leather Gloves | | | |
| 2-Way Radios | | | | |

**Comments:**

| Cima Services LP Employee Signature: | Customer Signature: | CIMA 000034 |
|---|---|---|

White – CIMA File Copy          Yellow – Customer          Pink – Billing



P.O. Box 0646, South Houston TX 77587
PH: (713) 946-5053  Fax: 832-540-8316

CIMA Services, L.P.
A Full Service Industrial Company

**Work Order**

M  1244

| Customer: ITC | | | | | | Contact: Randy | |
|---|---|---|---|---|---|---|---|
| Date: 1-5-16 | | Job Site/CIMA Job #: 10B6/5007 | | | | Job PO#: | |
| Job Complete. ☐ Yes ☐ No | | Job Description: | | | | | |

| Craft | Employee Name | Time (30 min Lunch Mandatory) | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Time In | Time Out | Straight Time | Overtime | |
| | Jade Alano | 6:30 | 5:00 | | | 10 |
| | Elvira Alano | 6:30 | 5:00 | | | 10 |
| | Agustin Garcia | 6:00 | 6:00 | | | 11 |
| | Juan Peña | 6:30 | 7:30 | | | 11 1/2 |
| | Henry Sanothr | 6:30 | 5:00 | | | 10 |
| | Ozid Lopez | 6:30 | 5:00 | | | 10 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Equipment | Unit No. | Time | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Leave Yard | Arrive Plant | Leave Plant | Arrive Yard | |
| Tool Trailer | | | | | | |
| Office Trailer | | | | | | |
| Crew Truck | | | | | | |
| All Terrain Fork Lift          (lb) | | | | | | |
| Air Compressor          CFM | | | | | | |
| Vacuum Truck (          ) | | | | | | |
| Welding Machine | | | | | | |
| Cutting Torches | | | | | | |
| Man Lift          (Size) | | | | | | |
| VAN  Pick up | Agustin Garcia | | | | | 1 |
| | | | | | | |
| | | | | | | |

| Safety Gear | Consumables | Misc. Equipment | Extra Materials/Equipment  PO# |
|---|---|---|---|
| Slicker Suits | Spill Kit | | |
| QC Tyvek Suits | Drinking Water (case) | | |
| Chemical Gloves | Grinding Disk          (inches) | | |
| APR Respirator | Welding Rods | | |
| Breathing Air Respirator w/ 5 min | Fire Blankes | | |
| Confined Space Kit | Duct Tape (roll) | | |
| 4-Gas Monitor | 6ml Poly Sheeting (roll) | | |
| Safety Harness | 6ml Poly Bags (each) | | |
| OVA/P100 Cartridges (pair) | Face Shields | | |
| Chemical Boots (pair) | Fuel | | |
| Safety Life Lines | Leather Gloves | | |
| 2-Way Radios | | | |

Comments:

| Cima Services LP Employee Signature | Customer Signature: | CIMA 000035 |
|---|---|---|



P.O. Box 0646, South Houston TX 77587
PH: (713) 946-5053  Fax: 832-548-8316

CIMA Services, L.P.
A full Service Industrial Company

**Work Order**

M  1240

| Customer: | | | | | | Contact: | | |
|---|---|---|---|---|---|---|---|---|
| Date: | | Job Site/CIMA Job #: | | | | Job PO#: | | |
| Job Complete: ☐ Yes ☐ No | | Job Description: | | | | | | |

| Craft | Employee Name | Time (30 min Lunch Mandatory) | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Time In | Time Out | Straight Time | Overtime | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | 8 | | | 1 hr |
| | | | | | | |
| | | | | | | |
| Reta | Iwon, Res Austin Greer | 8:30 | 5 | | | |
| | | | | | | 30 |
| | | | | | | |
| | | | | | | |

| Equipment | Unit No. | Time | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Leave Yard | Arrive Plant | Leave Plant | Arrive Yard | |
| Tool Trailer | | | | | | |
| Office Trailer | | | | | | |
| Crew Truck | | | | | | |
| All Terrain Fork Lift (lb) | | | | | | |
| Air Compressor CFM | | | | | | |
| Vacuum Truck ( | | | | | | |
| Welding Machine | | | | | | |
| Cutting Torches | | | | | | |
| Man Lift (Size) | | | | | | |
| Petro | 72 | 5 | 10 | | | 4 |

| Safety Gear | Consumables | Misc. Equipment | Extra Materials/Equipment  PO# |
|---|---|---|---|
| Slicker Suits | Spill Kit | | |
| QC Tyvek Suits | Drinking Water (case) | | |
| Chemical Gloves | Grinding Disk (inches) | | |
| APR Respirator | Welding Rods | | |
| Breathing Air Respirator w/ 5 min | Fire Blankes | | |
| Confined Space Kit | Duct Tape (roll) | | |
| 4-Gas Monitor | 6mil Poly Sheeting (roll) | | |
| Safety Harness | 6mil Poly Bags (each) | | |
| OVA/P100 Cartridges (pair) | Face Shields | | |
| Chemical Boots (pair) | Fuel | | |
| Safety Life Lines | Leather Gloves | | |
| 2-Way Radios | | | |

**Comments:**

Cima Services LP Employee
Signature

Customer
Signature:

CIMA 000036

White – CIMA File Copy    Yellow – Customer    Pink – Billing



P.O. Box 0646, South Houston TX 77587
PH: (713) 946-5053  Fax: 832-548-8316

CIMA Services, L.P.
*A Full Service Industrial Company*

**Work Order**

M 1253

| Customer: *TTC* | | | | | | Contact: *Randy* | | |
|---|---|---|---|---|---|---|---|---|
| Date: *1-17-16* | | Job Site/CIMA Job #: *108615007* | | | | Job PO#: | | |
| Job Complete:  ☐ Yes  ☐ No | | Job Description: | | | | | | |

| Craft | Employee Name | Time (30 min Lunch Mandatory) | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Time In | Time Out | Straight Time | Overtime | |
| FOREMAN | Jose Alamo | 6:00 | 5:30 | | | 11 |
| HELPER | Efrain Alamo | 6:30 | 5:00 | | | 10 |
| FITTER | Henry Sanchez | 6:00 | 5:30 | | | 11 |
| OPERATOR | Juan Peña | 6:30 | 5:00 | | | 10 |
| WELDER | Oziel Lopez | 6:30 | 5:00 | | | 10 |
| WELDER/Helper | Jacob Perez | 6:30 | 5:00 | | | 10 |
| SUPV. | Sixto Garcia | ~~7:00~~ 6:00 | 5:30 | | | ~~11~~ 11 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Equipment | Unit No. | Time | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Leave Yard | Arrive Plant | Leave Plant | Arrive Yard | |
| Tool Trailer | | | | | | |
| Office Trailer | | | | | | |
| Crew Truck | | | | | | |
| All Terrain Fork Lift        (lb) | | | | | | |
| Air Compressor        CFM | | | | | | |
| Vacuum Truck (                ) | | | | | | |
| Welding Machine | | | | | | |
| Cutting Torches | | | | | | |
| Man Lift        (Size) | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Safety Gear | Consumables | Misc. Equipment | | Extra Materials/Equipment  PO# | |
|---|---|---|---|---|---|
| Slicker Suits | Spill Kit | | | | |
| QC Tyvek Suits | Drinking Water (case) | | | | |
| Chemical Gloves | Grinding Disk        (inches) | | | | |
| APR Respirator | Welding Rods | | | | |
| Breathing Air Respirator w/ 5 min | Fire Blankes | | | | |
| Confined Space Kit | Duct Tape (roll) | | | | |
| 4-Gas Monitor | 6ml Poly Sheeting (roll) | | | | |
| Safety Harness | 6ml Poly Bags (each) | | | | |
| OVA/P100 Cartridges (pair) | Face Shields | | | | |
| Chemical Boots (pair) | Fuel | | | | |
| Safety Life Lines | Leather Gloves | | | | |
| 2-Way Radios | | | | | |

**Comments:**

| Cima Services LP Employee Signature | Customer Signature | **CIMA 000037** |
|---|---|---|



P.O. Box 0646, South Houston TX 77587
PH: (713) 946-5053  Fax: 832-548-8316

CIMA Services, L.P.
A Full Service Industrial Company

**Work Order**

M  1252

| Customer: I TC | | | | | | Contact: E Randy | |
|---|---|---|---|---|---|---|---|
| Date: 1-16-16 | | Job Site/CIMA Job #: 10B615007 | | | | Job PO#: | |
| Job Complete: ☐ Yes  ☐ No  Job Description: | | | | | | | |

| Craft | Employee Name | Time (30 min Lunch Mandatory) | | | | Total Hours | |
|---|---|---|---|---|---|---|---|
| | | Time In | Time Out | Straight Time | Overtime | | |
| | Jose Alamo | 6:00 | 3:30 | | | 9 | |
| | Jonathan Chavez | 6:30 | 3:00 | | | 8 | |
| | Joel Chavez | 6:30 | 3:00 | | | 8 | |
| | Efrain Alamo | 6:30 | 3:00 | | | 8 | |
| | Henry Sanchez | 6:00 | 3:30 | | | 9 | |
| | Oziel Lopez | 6:30 | 3:00 | | | 8 | |
| | Jacob Perez | 6:30 | 3:00 | | | 8 | |
| | Sixto Garcia | 6:00 | 3:30 | | | 9 | |
| | Juan Peña | 6:30 | 3:00 | | | 8 | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

| Equipment | Unit No. | Time | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Leave Yard | Arrive Plant | Leave Plant | Arrive Yard | |
| Tool Trailer | | | | | | |
| Office Trailer | | | | | | |
| Crew Truck | | | | | | |
| All Terrain Fork Lift          (lb) | | | | | | |
| Air Compressor          CFM | | | | | | |
| Vacuum Truck (          ) | | | | | | |
| Welding Machine | | | | | | |
| Cutting Torches | | | | | | |
| Man Lift          (Size) | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Safety Gear | Consumables | Misc. Equipment | Extra Materials/Equipment  PO# | | |
|---|---|---|---|---|---|
| Slicker Suits | Spill Kit | | | | |
| QC Tyvek Suits | Drinking Water (case) | | | | |
| Chemical Gloves | Grinding Disk          (inches) | | | | |
| APR Respirator | Welding Rods | | | | |
| Breathing Air Respirator w/ 5 min | Fire Blankes | | | | |
| Confined Space Kit | Duct Tape (roll) | | | | |
| 4-Gas Monitor | 6ml Poly Sheeting (roll) | | | | |
| Safety Harness | 6ml Poly Bags (each) | | | | |
| OVA/P100 Cartridges (pair) | Face Shields | | | | |
| Chemical Boots (pair) | Fuel | | | | |
| Safety Life Lines | Leather Gloves | | | | |
| 2-Way Radios | | | | | |

**Comments:**

| Cima Services LP Employee Signature | Customer Signature: | **CIMA 000038** |
|---|---|---|

**CIMA**

CIMA Services, L.P.
A Full Service Industrial Company

P.O. Box 0846, South Houston TX 77587
PH: (713) 946-5053  Fax: 832-548-8316

**Work Order**

M  1249

| Customer: ITC | | | | | | Contact: Randy | |
|---|---|---|---|---|---|---|---|
| Date: 1-18-16 | | Job Site/CIMA Job #: 608615 007 | | | | Job PO#: | |

Job Complete:  ☐ Yes  ☐ No   Job Description:

| Craft | Employee Name | Time (30 min Lunch Mandatory) | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Time In | Time Out | Straight Time | Overtime | |
| | Jose Alamo | 6:00 | 5:30 | | | 11 |
| | Efrain Alamo | 6:30 | 5:00 | | | 10 |
| | Henry Sanchez | 6:00 | 5:30 | | | 11 |
| | Oziel Lopez | 6:30 | 5:00 | | | 10 |
| | Jacob Perez | 6:30 | 5:00 | | | 10 |
| | Sixto Garcia | 12:00 | 5:30 | | | 5.5 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Equipment | Unit No. | Time | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Leave Yard | Arrive Plant | Leave Plant | Arrive Yard | |
| Tool Trailer | | | | | | |
| Office Trailer | | | | | | |
| Crew Truck | | | | | | |
| All Terrain Fork Lift        (lb) | | | | | | |
| Air Compressor        CFM | | | | | | |
| Vacuum Truck (        ) | | | | | | |
| Welding Machine | | | | | | |
| Cutting Torches | | | | | | |
| Man Lift        (Size) | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Safety Gear | Consumables | Misc. Equipment | Extra Materials/Equipment  PO# |
|---|---|---|---|
| Slicker Suits | Spill Kit | | |
| QC Tyvek Suits | Drinking Water (case) | | |
| Chemical Gloves | Grinding Disk        (Inches) | | |
| APR Respirator | Welding Rods | | |
| Breathing Air Respirator w/ 5 min | Fire Blankes | | |
| Confined Space Kit | Duct Tape (roll) | | |
| 4-Gas Monitor | 6ml Poly Sheeting (roll) | | |
| Safety Harness | 6ml Poly Bags (each) | | |
| OVA/P100 Cartridges (pair) | Face Shields | | |
| Chemical Boots (pair) | Fuel | | |
| Safety Life Lines | Leather Gloves | | |
| 2-Way Radios | | | |

**Comments:**

| Cima Services LP Employee Signature | Customer Signature: | CIMA 000039 |
|---|---|---|

White – CIMA File Copy        Yellow – Customer        Pink – Billing



**CiMA**
CIMA Services, L.P.
*A Full Service Industrial Company*

P.O. Box 0646, South Houston TX 77587
PH: (713) 946-5053  Fax: 832-548-8316

**Work Order**

M  1247

| Customer: ITC | | Contact: Randy |
| Date: 1-12-16 | Job Site/CIMA Job #: 108615007 | Job PO#: |
| Job Complete: ☐ Yes  ☐ No | Job Description: | |

| Craft | Employee Name | Time (30 min Lunch Mandatory) | | | | Total Hours |
| | | Time In | Time Out | Straight Time | Overtime | |
|---|---|---|---|---|---|---|
| | Jose Alemu | 6:00 | 5:30 | | | 11 |
| | Efrain Alemo | 6:30 | 5:00 | | | 10 |
| | Henry Sanchez | 6:30 | 5:00 | | | 10 |
| | Oziel Lopez | 6:30 | 5:00 | | | 10 |
| | Jacob Perez | 6:30 | 5:00 | | | 10 |
| | Juan Peña | 6:30 | 5:00 | | | 10 |
| | Sixto Garcia | 12:00 | 5:30 | | | 5.5 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Equipment | Unit No. | Time | | | | Total Hours |
| | | Leave Yard | Arrive Plant | Leave Plant | Arrive Yard | |
|---|---|---|---|---|---|---|
| Tool Trailer | | | | | | |
| Office Trailer | | | | | | |
| Crew Truck | | | | | | |
| All Terrain Fork Lift        (lb) | | | | | | |
| Air Compressor        CFM | | | | | | |
| Vacuum Truck (        ) | | | | | | |
| Welding Machine | | | | | | |
| Cutting Torches | | | | | | |
| Man Lift        (Size) | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Safety Gear | Consumables | Misc. Equipment | | Extra Materials/Equipment  PO# |
|---|---|---|---|---|
| Slicker Suits | Spill Kit | | | |
| QC Tyvek Suits | Drinking Water (case) | | | |
| Chemical Gloves | Grinding Disk        (inches) | | | |
| APR Respirator | Welding Rods | | | |
| Breathing Air Respirator w/ 5 min | Fire Blankes | | | |
| Confined Space Kit | Duct Tape (roll) | | | |
| 4-Gas Monitor | 6ml Poly Sheeting (roll) | | | |
| Safety Harness | 6ml Poly Bags (each) | | | |
| OVA/P100 Cartridges (pair) | Face Shields | | | |
| Chemical Boots (pair) | Fuel | | | |
| Safety Life Lines | Leather Gloves | | | |
| 2-Way Radios | | | | |

**Comments:**

| Cima Services LP Employee Signature | Customer Signature: | **CIMA 000040** |

CIMA 000041

# DAILY PIPE WELD RECORD

WELDER: _Luis Ma_   STENCIL: _LP_   DATE: _12-28-15_   PAGE: ____   OF: ____

—— Project
—— TX
Project No.—— 1086/5007

| LINE No.<br>DRAWING No. | WELD<br>No. | PIPE | | MATL<br>TYPE | WELD<br>PROCESS | WELD<br>TYPE | | NDE PERFORMED | | | | | | REMARKS |
| | | DIAM. | SCH. | | | B/W | S/W | VT ACC | VT REJ | RT ACC | RT REJ | MT/PT ACC | MT/PT REJ | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 4" | | | | | | | | | | | | |
| | | 4" | | | | | | | | | | | | |
| | | 4" | | | | | | | | | | | | |
| | | 2" | | | | | | | | | | | | |
| | | 2" | | | | | | | | | | | | |
| | | 2" | | | | | | | | | | | | |
| | | 1" | | | | | | | | | | | | |
| | | 2" | | | | | | | | | | | | |

REPRESENTATIVE: ____

# CIMA

**Daily Logs**

CIMA Services, L.P.
A Full Service Industrial Company

## General Information

| Name: | Jobsite: | Date: 12-28-15 |
|---|---|---|

## Fire Extinguisher Inspection

| | Yes | No | | Yes | No | | Yes / No |
|---|---|---|---|---|---|---|---|
| Serial # 401 49 481 | | | Serial # | | | Tamper indicators and seals are unbroken | |
| Tamper indicators and seals are unbroken | | ✓ | Tamper indicators and seals are unbroken | | | Operating instruction facing outward | |
| Operating instruction facing outward | ✓ | | Operating instruction facing outward | | | No Corrosion, leakage, or physical damage | |
| No Corrosion, leakage, or physical damage | ✓ | | No Corrosion, leakage, or physical damage | | | Pressure gauge is in proper range. | |
| Pressure gauge is in proper range. | ✓ | | Pressure gauge is in proper range. | | | Annual inspection tag is in place. | |
| Annual inspection tag is in place. | ✓ | | Annual inspection tag is in place. | | | Date and initial inspection tag | |
| Date and initial inspection tag | ✓ | | Date and initial inspection tag | | | Date Inspected: M____ /Y____ | |
| Date Inspected: M05 M 415 | | | Date Inspected: M____ /Y____ | | | | |

## First Aid Kits / Bloodborne Pathogen Kits

First Aid Kit Temper Seal Broken?  **YES/NO**          Bloodborne Pathogen Kit Temper Seal Broken?  **YES/NO**

## Daily Bump Log

| Bottle Serial #: | %LEL | %LEL | %LEL | %LEL | |
|---|---|---|---|---|---|
| Bottle Expiration Date: | % O₂ | % O₂ | % O2 | % O2 | |
| | H₂S PPM | H₂S PPM | H₂S PPM | H₂S PPM | |
| | CO₂ PPM | CO₂ PPM | CO₂ PPM | CO₂ PPM | Initials: |

Grade D Air: CO < 10 PPM, O2 19.5 - 23.5%, CO2 < 1000 PPM

## Fall Protection Inspections (HARNESSES, LANYARDS, SELF RETRACTING DEVICES, FALL ARREST DEVICES)

| SERIAL # | MANUFACTURED DATE | DESCRIPTION | STITCHING | HARDWARE | WEBBING | LABELS/TAGS | INITIALS |
|---|---|---|---|---|---|---|---|
| 2447279 | | | | | | | JAA |
| 2463333 | | | | | | | JAA |
| 2447168 | | | | | | | JAA |
| 2301400 | | | | | | | JAA |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

*Refer to Page 2 for Safe and Unsafe Conditions*

## Rigging Inspections ( Chain Falls, Come-alongs, Wire Rope Slings, Web/Synthetic Slings)

| SERIAL # | MANUFACTURED DATE | RATED CAPACITY | LABELS/TAGS | LOAD TEST DATE | DESCRIPTION | PASS/FAIL | INITIALS |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

*Refer to Page 2 for Safe and Unsafe Conditions*

Additional Comments:

CIMA 000042



CIMA Services, LP
PO Box 0646
South Houston, TX 77587

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/30/2015 | 5949 |

| Bill To |
|---------|
| Intercontinental Terminal Co. LLC |
| PO Box 698 |
| Deer Park, TX 77536 |
| Attn: Accounts Payable |
| ap@iterm.com |

| Ship To |
|---------|
| Intercontinental Terminals LLC |
| 2621 Tidal Road |
| Deer Park, TX 77536 |

| Sales Rep | Project | P.O. No. | Terms | Due Date |
|-----------|---------|----------|-------|----------|
| Valdo Jimenez | 1086-15-007 (MECH) ITC - Butane I... | 40754 OR | Net 30 | 1/29/2016 |

| Date | Description | Quantity | Rate | Amount |
|------|-------------|----------|------|--------|
| | Butane Injection 80-8 | | | |
| | Scaffold/ Manlift | | | |
| | | | | |
| | Scaffold/Manlift 100% Complete | 1.00 | 7,620.00 | 7,620.00T |
| | | | | |
| | Subtotal | | | 7,620.00 |

**Thank You For Your Business!**

| | |
|---|---|
| Subtotal | $7,620.00 |
| Sales Tax | $628.65 |
| **Total Invoice** | **$8,248.65** |
| Payments/Credits | $0.00 |
| **Balance Due** | **$8,248.65** |

CIMA 000043



**CIMA Services, LP**
PO Box 0646
South Houston, TX 77587

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/30/2015 | 5949 |

| Bill To |
|---------|
| Intercontinental Terminal Co. LLC<br>PO Box 698<br>Deer Park, TX 77536<br>Attn: Accounts Payable<br>ap@iterm.com |

| Ship To |
|---------|
| Intercontinental Terminals LLC<br>2621 Tidal Road<br>Deer Park, TX 77536 |

| Sales Rep | Project | P.O. No. | Terms | Due Date |
|-----------|---------|----------|-------|----------|
| Valdo Jimenez | 1086-15-007 (MECH) ITC - Butane I... | 40754 OR | Net 30 | 1/29/2016 |

| Date | Description | Quantity | Rate | Amount |
|------|-------------|----------|------|--------|
| | Butane Injection 80-8<br>Scaffold/ Manlift | | | |
| | Scaffold/Manlift 100% Complete | 1.00 | 7,620.00 | 7,620.00T |
| | Subtotal | | | 7,620.00 |

**Thank You For Your Business!**

| | |
|---|---|
| Subtotal | $7,620.00 |
| Sales Tax | $628.65 |
| **Total Invoice** | $8,248.65 |
| Payments/Credits | $0.00 |
| **Balance Due** | $8,248.65 |

CIMA 000011

| December Invoice | Job # 1086-15-007 | | Total |
|---|---|---|---|
| Scaffold/Manlift | PO 40754 OR | 100% complete | $7,620.00 |
| Supervision, Labor and Equipiment | | 75% complete | $ 26,175.00 |
| Upgrade to Butane System 80-8  PO 362676 OS | | | |
| | | Tax 8.250% | $2,788.08 |
| | | **Grand Total** | **$36,583.08** |

CIMA 000045



CIMA Services, LP
PO Box 0646
South Houston, TX 77587

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/30/2015 | 5950 |

**Bill To**

Intercontinental Terminal Co. LLC
PO Box 698
Deer Park, TX 77536
Attn: Accounts Payable
ap@iterm.com

**Ship To**

Intercontinental Terminals LLC
2621 Tidal Road
Deer Park, TX 77536

| Sales Rep | Project | P.O. No. | Terms | Due Date |
|-----------|---------|----------|-------|----------|
| Valdo Jimenez | 1086-15-007 (MECH) ITC - Butane I... | 362676 OS | Net 30 | 1/29/2016 |

| Date | Description | Quantity | Rate | Amount |
|------|-------------|----------|------|--------|
| | Upgrade to Butane System 80-8<br>Scaffold/ Manlift | | | |
| | Supervision, Labor and Equipment 75 % Complete | 1.00 | 26,175.00 | 26,175.00T |
| | Subtotal | | | 26,175.00 |

**Thank You For Your Business!**

| | |
|---|---|
| Subtotal | $26,175.00 |
| Sales Tax | $2,159.44 |
| **Total Invoice** | **$28,334.44** |
| Payments/Credits | CIMA 000030.00 |
| **Balance Due** | **$28,334.44** |

Remit to: Cima Services, LP., P.O. Box 0646, South Houston TX 77587 Ph: 713-946-5052



**CIMA Services, LP**
PO Box 0646
South Houston, TX 77587

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/30/2015 | 5950 |

| Bill To |
|---------|
| Intercontinental Terminal Co. LLC |
| PO Box 698 |
| Deer Park, TX 77536 |
| Attn: Accounts Payable |
| ap@iterm.com |

| Ship To |
|---------|
| Intercontinental Terminals LLC |
| 2621 Tidal Road |
| Deer Park, TX 77536 |

| Sales Rep | Project | P.O. No. | Terms | Due Date |
|-----------|---------|----------|-------|----------|
| Valdo Jimenez | 1086-15-007 (MECH) ITC - Butane I... | 362676 OS | Net 30 | 1/29/2016 |

| Date | Description | Quantity | Rate | Amount |
|------|-------------|----------|------|--------|
| | Upgrade to Butane System 80-8<br>Scaffold/ Manlift | | | |
| | Supervision, Labor and Equipment 75 %  Complete | 1.00 | 26,175.00 | 26,175.00T |
| | Subtotal | | | 26,175.00 |

**Thank You For Your Business!**

| | |
|---|---|
| Subtotal | $26,175.00 |
| Sales Tax | $2,159.44 |
| **Total Invoice** | **$28,334.44** |
| Payments/Credits | CIMA 000040.00 |
| **Balance Due** | **$28,334.44** |

# CIMA

CIMA Services, L.P.
A Full Service Industrial Company

P.O. Box 0646, South Houston TX 77587
PH: (713) 946-5053  Fax: 832-548-8316

**Work Order**

M   1288

| Customer: TTC | | | | Contact: | | | |
|---|---|---|---|---|---|---|---|
| Date: 12/17/15 | | Job Site/CIMA Job #: 1086-15-007 | | | Job PO#: | | |
| Job Complete: ☐ Yes  ☐ No | | Job Description: 12-36, 30-4 work on TNK piping | | | | | |

| Craft | Employee Name | Time (30 min Lunch Mandatory) | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Time In | Time Out | Straight Time | Overtime | |
| | Sixto Garcia | 6:30 | 5:30 | | | 10.5 |
| | Robert Garcia | 6:30 | 5:30 | | | 10.5 |
| | Edward Meador | 6:30 | 5:30 | | | 10 |
| | Daniel McLellan | 6:30 | 5:00 | | | 10 |
| | Waylon Prince | 6:30 | 5:00 | | | 10 |
| | Oscar Beirrera | 6:30 | 5:00 | | | 10 |
| | Jonathan Chavez | 6:30 | 5:00 | | | 10 |
| | Jose Chavez | 6:30 | 5:00 | | | 10 |
| | Jaime Dionizo | 10:30 | 2:00 | | | 7 |
| | Hiram Casas | 6:30 | 5:00 | | | 10 |
| | William Paul Jones | 6:30 | 5:00 | | | 10 |
| | Bradley Jones | 6:30 | 5:00 | | | 10 |
| | Wayne O'Conner | 6:30 | 5:00 | | | 10 |
| | Riumberto Garza | 6:30 | 5:00 | | | 10 |

| Equipment | Unit No. | Time | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Leave Yard | Arrive Plant | Leave Plant | Arrive Yard | |
| Tool Trailer | | | | | | |
| Office Trailer | | | | | | |
| Crew Truck | | | | | | |
| All Terrain Fork Lift        (lb) | | | | | | |
| Air Compressor        CFM | | | | | | |
| Vacuum Truck (          ) | | | | | | |
| Welding Machine | | | | | | |
| Cutting Torches | | | | | | |
| Man Lift          (Size) | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Safety Gear | Consumables | Misc. Equipment | | Extra Materials/Equipment  PO# | |
|---|---|---|---|---|---|
| Slicker Suits | Spill Kit | | | | |
| QC Tyvek Suits | Drinking Water (case) | | | | |
| Chemical Gloves | Grinding Disk        (inches) | | | | |
| APR Respirator | Welding Rods | | | | |
| Breathing Air Respirator w/ 5 min | Fire Blankes | | | | |
| Confined Space Kit | Duct Tape (roll) | | | | |
| 4-Gas Monitor | 6ml Poly Sheeting (roll) | | | | |
| Safety Harness | 6ml Poly Bags (each) | | | | |
| OVA/P100 Cartridges (pair) | Face Shields | | | | |
| Chemical Boots (pair) | Fuel | | | | |
| Safety Life Lines | Leather Gloves | | | | |
| 2-Way Radios | | | | | |

**Comments:**

| Cima Services LP Employee Signature | Customer Signature | **CIMA 000048** |
|---|---|---|

White – CIMA File Copy          Yellow – Customer          Pink – Billing



P.O. Box 0646, South Houston TX 77587
PH: (713) 946-5053   Fax: 832-540-8316

CIMA Services, L.P.
A Full Service Industrial Company

**Work Order**

M  1227

| Customer: ETC | | Contact: Lee Garcia |
|---|---|---|
| Date: 12-18-15 | Job Site/CIMA Job #: 158415 007 | Job PO#: |
| Job Complete: ☐ Yes ☐ No | Job Description: | |

| Craft | Employee Name | Time (30 min Lunch Mandatory) | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Time In | Time Out | Straight Time | Overtime | |
| | HENRY SANCHEZ | 6:50 | 3:00 | | | 8 |
| | Jacob Perez | 6:30 | 3:00 | | | 8 |
| | ~~Martin Lopez~~ | ~~6:30~~ | ~~3:00~~ | | | |
| | Efrain Alamo | 6:30 | 3:00 | | | 8 |
| PW | Oziel Lopez | 6:30 | 3:00 | | | 8 |
| | Jose Alamo | 6:30 | 3:00 | | | 8 |
| | Luis Peña | 6:30 | 3:00 | | | 8 |
| | David Trevino | 6:30 | 3:00 | | | 8 |
| | SIXTO GARCIA | 6:30 | ~~3:00~~ 12:00 | | | 5.5 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Equipment | Unit No. | Time | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Leave Yard | Arrive Plant | Leave Plant | Arrive Yard | |
| Tool Trailer | | | | | | |
| Office Trailer | | | | | | |
| Crew Truck | | | | | | |
| All Terrain Fork Lift        (lb) | | | | | | |
| Air Compressor         CFM | | | | | | |
| Vacuum Truck (          ) | | | | | | |
| Welding Machine | | | | | | |
| Cutting Torches | | | | | | |
| Man Lift         (Size) | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Safety Gear | Consumables | Misc. Equipment | Extra Materials/Equipment  PO# |
|---|---|---|---|
| Slicker Suits | Spill Kit | | |
| QC Tyvek Suits | Drinking Water (case) | | |
| Chemical Gloves | Grinding Disk        (inches) | | |
| APR Respirator | Welding Rods | | |
| Breathing Air Respirator w/ 5 min | Fire Blankes | | |
| Confined Space Kit | Duct Tape (roll) | | |
| 4-Gas Monitor | 6ml Poly Sheeting (roll) | | |
| Safety Harness | 6ml Poly Bags (each) | | |
| OVA/P100 Cartridges (pair) | Face Shields | | |
| Chemical Boots (pair) | Fuel | | |
| Safety Life Lines | Leather Gloves | | |
| 2-Way Radios | | | |

**Comments:**

| Cima Services LP Employee Signature | Customer Signature | CIMA 000049 |
|---|---|---|



**CiMA Services, L.P.**
A Full Service Industrial Company

P.O. Box 0646, South Houston TX 77587
PH: (713) 946-5053  Fax: 832-548-8316

**Work Order**

**M  1242**

| Customer: ITC | | | | | Contact: | | |
|---|---|---|---|---|---|---|---|
| Date: 12-21-15 | | Job Site/CIMA Job #: 109615007 | | | Job PO#: | | |
| Job Complete:  ☐ Yes  ☑ No | | Job Description: | | | | | |

| Craft | Employee Name | Time (30 min Lunch Mandatory) | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Time In | Time Out | Straight Time | Overtime | |
| | Henry Sanchez | 6:30 | 9:00 | | | 2½ |
| | Efrain Almo | 6:30 | 9:00 | | | 2½ |
| | Jose Almo | 6:30 | 9:00 | | | 2½ |
| | Agustin Garcia | 6:30 | 9:00 | | | 2½ |
| | Jacob Perz | 6:30 | 9:00 | | | 2½ |
| | Adrian Casas | 6:30 | 9:00 | | | 2½ |
| | Luis Pena | 6:30 | 9:00 | | | 2½ |
| | Jose Trevino | 6:30 | 9:00 | | | 2½ |
| | Oriel Lopez | 6:30 | 9:00 | | | 2½ |
| | Sixto Garcia | 6:30 | 12:00 | | | 5 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Equipment | Unit No. | Time | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Leave Yard | Arrive Plant | Leave Plant | Arrive Yard | |
| Tool Trailer | | | | | | |
| Office Trailer | | | | | | |
| Crew Truck | | | | | | |
| All Terrain Fork Lift        (lb) | | | | | | |
| Air Compressor        CFM | | | | | | |
| Vacuum Truck (        ) | | | | | | |
| Welding Machine | | | | | | |
| Cutting Torches | | | | | | |
| Man Lift        (Size) | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Safety Gear | Consumables | Misc. Equipment | Extra Materials/Equipment  PO# |
|---|---|---|---|
| Slicker Suits | Spill Kit | | |
| QC Tyvek Suits | Drinking Water (case) | | |
| Chemical Gloves | Grinding Disk        (inches) | | |
| APR Respirator | Welding Rods | | |
| Breathing Air Respirator w/ 5 min | Fire Blankes | | |
| Confined Space Kit | Duct Tape (roll) | | |
| 4-Gas Monitor | 6ml Poly Sheeting (roll) | | |
| Safety Harness | 6ml Poly Bags (each) | | |
| OVA/P100 Cartridges (pair) | Face Shields | | |
| Chemical Boots (pair) | Fuel | | |
| Safety Life Lines | Leather Gloves | | |
| 2-Way Radios | | | |

**Comments:**

| Cima Services LP Employee Signature | Customer Signature | CIMA 000050 |
|---|---|---|



P.O. Box 0846, South Houston TX 77587
PH: (713) 946-5053  Fax: 832-548-8316

CIMA Services, L.P.
*A Full Service Industrial Company*

**Work Order**

M   1237

| Customer: | ITC | | Contact: | |
|---|---|---|---|---|
| Date: | 12-23-15 | Job Site/CIMA Job #: 08615-007 | Job PO#: | |

| Job Complete: | ☐ Yes | ☐ No | Job Description: |
|---|---|---|---|

| Craft | Employee Name | Time (30 min Lunch Mandatory) | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Time In | Time Out | Straight Time | Overtime | |
| | Henry Schneller | 6:30 | 5:00 | | | 10 |
| | Frank Alamo | 6:30 | 5:00 | | | 10 |
| | Agustin Garcia | 6:30 | 5:00 | | | 10 |
| | Jacob Perez | 6:30 | 5:00 | | | 10 |
| | Hiram Casas | 6:30 | 5:00 | | | 10 |
| | Jose Alamo | 6:30 | 5:00 | | | 10 |
| RW | Luis Pena | 6:30 | 5:00 | | | 10 |
| WH | Jose Trevino | 6:30 | 5:00 | | | 10 |
| PL | Oziel Lopez | 6:30 | 5:00 | | | 10 |
| | Sixto Garcia | 6:30 | 12:00 | | | 5 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Equipment | Unit No. | Time | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Leave Yard | Arrive Plant | Leave Plant | Arrive Yard | |
| Tool Trailer | | | | | | |
| Office Trailer | | | | | | |
| Crew Truck | | | | | | |
| All Terrain Fork Lift        (lb) | | | | | | |
| Air Compressor        CFM | | | | | | |
| Vacuum Truck (          ) | | | | | | |
| Welding Machine | | | | | | |
| Cutting Torches | | | | | | |
| Man Lift        (Size) | | | | | | |
| | | | | | | |
| | | | | | | |

| Safety Gear | Consumables | Misc. Equipment | Extra Materials/Equipment  PO# |
|---|---|---|---|
| Slicker Suits | Spill Kit | | |
| QC Tyvek Suits | Drinking Water (case) | | |
| Chemical Gloves | Grinding Disk        (inches) | | |
| APR Respirator | Welding Rods | | |
| Breathing Air Respirator w/ 5 min | Fire Blankes | | |
| Confined Space Kit | Duct Tape (roll) | | |
| 4-Gas Monitor | 6ml Poly Sheeting (roll) | | |
| Safety Harness | 6ml Poly Bags (each) | | |
| OVA/P100 Cartridges (pair) | Face Shields | | |
| Chemical Boots (pair) | Fuel | | |
| Safety Life Lines | Leather Gloves | | |
| 2-Way Radios | | | |

**Comments:**

| Cima Services LP Employee Signature | Customer Signature | **CIMA 000051** |
|---|---|---|



P.O. Box 0846, South Houston TX 77587
PH: (713) 946-5053  Fax: 832-548-8316

CIMA Services, L.P.
A Full Service Industrial Company

**Work Order**

M 1238

| Customer: ITC | | Contact: |
|---|---|---|
| Date: 12-23-15 | Job Site/CIMA Job #: 10BB15007 | Job PO#: |
| Job Complete: ☐ Yes ☐ No | Job Description: | |

| Craft | Employee Name | Time (30 min Lunch Mandatory) | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Time In | Time Out | Straight Time | Overtime | |
| | HENRY SANCHEZ | 6:30 | 10:30 | | | 4 |
| BW | LUIS PENA | 6:30 | 10:30 | | | 4 |
| WH | Jose Trevino | 6:30 | 10:30 | | | 4 |
| RW | Oriel Lopez | 6:30 | 10:30 | | | 4 |
| | Jose Almo | 6:30 | 10:30 | | | 4 |
| | Efrain Almo | 6:30 | 10:30 | | | 4 |
| | Augustin Garcia | 6:30 | 10:30 | | | 4 |
| | Hiram Casas | 6:30 | 10:30 | | | 4 |
| | Jacobo Perez | 6:30 | 10:30 | | | 4 |
| | Sixto Garcia | 6:30 | 10:30 | | | 4 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Equipment | Unit No. | Time | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Leave Yard | Arrive Plant | Leave Plant | Arrive Yard | |
| Tool Trailer | | | | | | |
| Office Trailer | | | | | | |
| Crew Truck | | | | | | |
| All Terrain Fork Lift (lb) | | | | | | |
| Air Compressor CFM | | | | | | |
| Vacuum Truck ( ) | | | | | | |
| Welding Machine | | | | | | |
| Cutting Torches | | | | | | |
| Man Lift (Size) | | | | | | |
| | | | | | | |
| | | | | | | |

| Safety Gear | Consumables | Misc. Equipment | Extra Materials/Equipment PO# |
|---|---|---|---|
| Slicker Suits | Spill Kit | | |
| QC Tyvek Suits | Drinking Water (case) | | |
| Chemical Gloves | Grinding Disk (Inches) | | |
| APR Respirator | Welding Rods | | |
| Breathing Air Respirator w/ 5 min | Fire Blankets | | |
| Confined Space Kit | Duct Tape (roll) | | |
| 4-Gas Monitor | 6ml Poly Sheeting (roll) | | |
| Safety Harness | 6ml Poly Bags (each) | | |
| OVA/P100 Cartridges (pair) | Face Shields | | |
| Chemical Boots (pair) | Fuel | | |
| Safety Life Lines | Leather Gloves | | |
| 2-Way Radios | | | |

**Comments:**

| Cima Services LP Employee Signature | Customer Signature | **CIMA 000052** |
|---|---|---|

CiMA

**Work Order**

P.O. Box 0646, South Houston TX 77587
PH: (713) 946-5053  Fax: 832-548-8316

CIMA Services, L.P.
A Full Service Industrial Company

M    1228

| Customer: TTC | | | | | Contact: Joe Garcia | | |
|---|---|---|---|---|---|---|---|
| Date: 12-31-5 | | Job Site/CIMA Job #: | | | Job PO#: | | |
| Job Complete: ☐ Yes ☐ No | | Job Description: | | | | | |

| Craft | Employee Name | Time (30 min Lunch Mandatory) | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Time In | Time Out | Straight Time | Overtime | |
| | Noum Smith | 6:30 | | | | |
| | Austin Garcia | 6:30 | | | | |
| | Hiram Casas | 6:30 | | | | |
| | Jacob Perez | 6:30 | | | | |
| | Erin Adams | 6:30 | | | | |
| PW | Luis Perez | 6:30 | | | | |
| PF Helper | Robert Garcia | 6:30 | | | | |
| WH | Jose Trevino | 6:30 | | | | |
| RW | Oziel Lopez | 6:30 | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| Equipment | Unit No. | Time | | | | Total Hours |
|---|---|---|---|---|---|---|
| | | Leave Yard | Arrive Plant | Leave Plant | Arrive Yard | |
| Tool Trailer | | | | | | |
| Office Trailer | | | | | | |
| Crew Truck | | | | | | |
| All Terrain Fork Lift        (lb) | | | | | | |
| Air Compressor        CFM | | | | | | |
| Vacuum Truck (        ) | | | | | | |
| Welding Machine | | | | | | |
| Cutting Torches | | | | | | |
| Man Lift        (Size) | | | | | | |
| | | | | | | |
| | | | | | | |

| Safety Gear | Consumables | Misc. Equipment | Extra Materials/Equipment  PO# |
|---|---|---|---|
| Slicker Suits | Spill Kit | | |
| QC Tyvek Suits | Drinking Water (case) | | |
| Chemical Gloves | Grinding Disk        (inches) | | |
| APR Respirator | Welding Rods | | |
| Breathing Air Respirator w/ 5 min | Fire Blankes | | |
| Confined Space Kit | Duct Tape (roll) | | |
| 4-Gas Monitor | 6ml Poly Sheeting (roll) | | |
| Safety Harness | 6ml Poly Bags (each) | | |
| OVA/P100 Cartridges (pair) | Face Shields | | |
| Chemical Boots (pair) | Fuel | | |
| Safety Life Lines | Leather Gloves | | |
| 2-Way Radios | | | |

**Comments:**

| Cima Services LP Employee Signature: | Customer Signature: | CIMA 000053 |
|---|---|---|

White – CIMA File Copy        Yellow – Customer        Pink – Billing

# EXHIBIT A-2

CAUSE NO. 2020-54452

| | | |
|---|---|---|
| GARRY DILLARD, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| INTERCONTINENTAL TERMINALS | § | |
| COMPANY LLC, INTERCONTINENTAL | § | |
| TERMINALS MANAGEMENT | § | |
| COMPANY, and CIMA SERVICES, LP | § | |
| | § | |
| Defendants. | § | 215th JUDICIAL DISTRICT |

**DEFENDANT INTERCONTINENTAL TERMINALS COMPANY LLC'S
MOTION TO TRANSFER VENUE AND, SUBJECT THERETO,
<u>ORIGINAL ANSWER</u>**

       Defendant Intercontinental Terminals Company LLC ("Defendant") files its Motion to Transfer Venue and, subject thereto, Original Answer to Plaintiff's Original Petition, Jury Demand, and Requests for Disclosure (the "Petition").

## I.      Motion to Transfer Venue

       Pursuant to Rule 257 of the Texas Rules of Civil Procedure, Defendant respectfully requests that venue for this action be transferred from Harris County to another county of proper venue under the Texas Civil Practice and Remedies Code.  Defendant will supplement the record with a brief in support of its motion and necessary affidavit upon completion of sufficient discovery.

## II.      General Denial

       Pursuant to Rule 92 of the Texas Rules of Civil Procedure, Defendant generally denies the allegations and claims set forth in Plaintiff's Petition and demands strict proof thereof by a preponderance of the credible evidence, as required by the Constitution and laws of the State of Texas.

### III.    Affirmative Defenses

1.      Plaintiff fails to state a claim upon which relief can be granted.

2.      Plaintiff's claim are barred because Plaintiff lacks standing to bring, in whole or in part, the claims alleged in the Petition.

3.      Defendant asserts the defense of contributory or comparative negligence to the extent that the damages and injuries alleged in Plaintiff's Petition were legally and proximately caused, in whole or in part, by the negligence, fault, negligence per se, and other culpable conduct of other persons or parties who failed to exercise the requisite degree of care and caution, entitling Defendant to have the Court and jury apply the doctrine of comparative negligence established by Tex. Civ. Prac. & Rem. Code § 33.001 *et seq.* to reduce any judgment against it by the degree of negligence or fault attributable to any other person or party.

4.      Defendant asserts the defense of superseding or intervening cause to the extent that the damages and injuries alleged in Plaintiff's Petition were legally and proximately caused by separate and independent events or agencies that were not the result of Defendant's actions or reasonably foreseeable to Defendant or within its control.

5.      Defendant denies that the alleged injuries of Plaintiff were proximately caused by any alleged act or omission of Defendant.

6.      As an affirmative defense, the evidence may show that one or more claims of Plaintiff are barred in whole or in part by the failure to mitigate damages.

7.      As an affirmative defense, the evidence may show that one or more of Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

8.      All conduct and activities of Defendant, as alleged in the Petition, conformed to applicable statutes, government regulations, government-issued permits, and industry standards based upon the state of knowledge at the time alleged in the Petition and/or

2

were taken at the specific direction of or in conjunction with or with approval or ratification by federal, state, and/or local governmental authorities.

9.      Alternatively, should any amount be cast against Defendant in judgment, Defendant is entitled to a credit and off-set for any and all payments made to Plaintiff for any purpose arising out of the incident and/or claims made the subject of this litigation, including, but not limited to, settlement credits.

10.      Defendant denies any liability for punitive or exemplary damages.  In any event, Plaintiff's claims for exemplary damages are limited by Tex. Civ. Prac. & Rem. Code § 41.008.

11.      Defendant denies any liability for punitive or exemplary damages.  In any event, Plaintiff's claim for punitive damages against Defendant cannot be sustained because an award of punitive damages under Texas law without proof of every element beyond a reasonable doubt would violate Defendant's rights under Amendments IV, V, VI, and XIV of the United States Constitution and under Sections 9, 10, 14, and 19 of Article I of the Texas Constitution.

12.      Defendant denies any liability for punitive or exemplary damages.  In any event, Plaintiff's claims for punitive damages against Defendant cannot be sustained because an award of punitive damages under Texas law by a jury that (1) is not provided any standard of sufficient clarity for determining the appropriateness or the appropriate size of any punitive damages award; (2) is not instructed on the limits of punitive damages imposed by the applicable principles of deterrence and punishment; (3) is not expressly prohibited from awarding punitive damages or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics; (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and

does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible; and (5) is not subject to judicial review on the basis of objective standards, would violate Defendant's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by Section 19 of Article I of the Texas Constitution.

13.     Defendant denies any liability for punitive or exemplary damages.  In any event, a punitive damages award would violate the prohibition against excessive fines contained in the Eighth Amendment to the United States Constitution, as embodied in the due process clause of the Fourteenth Amendment to that Constitution, and Article I, § 19 of the Texas Constitution.

14.     Defendant reserves the right to assert other affirmative defenses, cross-claims, and designations of responsible third parties as discovery proceeds.

### IV.     Right to Amend

Defendant reserves the right to amend this Answer.

### V.     Request for Jury

Defendant requests a trial by jury and will pay the required fee in accordance with the deadlines imposed by the Texas Rules of Civil Procedure.

### VI.     Prayer

Defendant requests that this Court, after trial or final hearing of this case, enter judgment in Defendant's favor, that Plaintiff take nothing by reason of this suit, and that the Court award Defendant its costs of court and expenses and all other relief to which it is entitled.

Respectfully submitted,

BAKER BOTTS L.L.P.

By:  _/s/ Russell C. Lewis_
   Russell C. Lewis
   Texas Bar No. 24036968
   Michael S. Goldberg
   Texas Bar No. 08075800
   Benjamin Gonsoulin
   Texas Bar No. 24099682
   Kelly Hanen
   Texas Bar No. 24101862
   Elizabeth Furlow
   Texas Bar No. 24109899
   One Shell Plaza
   910 Louisiana Street
   Houston, Texas 77002-4995
   Telephone:  (713) 229-1767
   Facsimile:  (713) 229-2867
   russell.lewis@bakerbotts.com
   michael.goldberg@bakerbotts.com
   ben.gonsoulin@bakerbotts.com
   kelly.hanen@bakerbotts.com
   elizabeth.furlow@bakerbotts.com

PHELPS DUNBAR LLP

By: _/s/ Ivan M. Rodriguez_____
       Ivan M. Rodriguez
       Texas Bar No. 24058977
       Marc G. Matthews
       Texas Bar No. 24055921
       J. Alan Harrell
       Texas Bar No. 24114609
       500 Dallas, Suite 1300
       Houston, Texas  77002
       Telephone:  (713) 626-1386
       Telecopier:  (713) 626-1388
       ivan.rodriguez@phelps.com
       marc.matthews@phelps.com
       alan.harrell@phelps.com

ATTORNEYS FOR DEFENDANT
INTERCONTINENTAL TERMINALS
COMPANY LLC

## CERTIFICATE OF SERVICE

This certifies that a copy of the above and foregoing was sent by electronic mail to the following counsel of record on this 8th day of October 2020:

William R. Ogden
Farrar & Ball, L.L.P.
1117 Herkimer Street
Houston, TX 77008
Telephone: (713) 221-8300
Facsimile: (713) 221-8301
Email: bill@fbtrial.com

Chance A. McMillan
McMillan Firm, P.L.C.
440 Louisiana, Ste. 1200
Houston, TX 77002-1691
Telephone: (281) 888-2131
Facsimile: (832) 831-2175
cam@mcmillanfirm.com

*/s/ Russell C. Lewis*
Russell C. Lewis